## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:21-cr-537 (JMC) |
| | ) | |
| PAUL RUSSELL JOHNSON, | ) | Trial:  October 23, 2023 |
| | ) | |
| Defendant. | ) | |

## PAUL RUSSELL JOHNSON'S TRIAL MEMORANDUM

Paul Russell Johnson, by counsel, files this Trial Memorandum to: i) address certain legal issues that are likely to arise at trial; and ii) identify the elements of the offenses that must be proven with respect to the charges against Mr. Johnson.  This Memorandum addresses each of the nine counts with which Mr. Johnson is charged in the Fourth Superseding Indictment (ECF No. 245), specifically, Counts 1-3 and 5-10 (Mr. Johnson is not charged in Counts Four or Eleven through Fifteen).

As an initial matter, it is important to note that while many of the Counts charge the defendants with engaging in the same offense, they are *not* charged with conspiring in any of the Counts in the Indictment (indeed, Mr. Johnson did not then, and does not now, know any of his co-defendants).  Accordingly, each defendant's conduct with respect to each Count must be judged individually to determine whether that defendant's own conduct satisfies all elements of the offense charged (or, in some

cases, all elements of attempting to commit, or aiding and abetting another in the commission of, the offense charged).[1]

## I.  Legal Issues that Are Likely to Arise at Trial

### A.  The Government's Compilation Video Exhibits Are Inadmissible

Mr. Johnson has objected to the admission in whole of "compilation videos" noticed by the government as exhibits.  *See* ECF No. 278 at 1-2.  Those videos contain hours of inadmissible evidence, such as documentary-style narration that constitutes rank hearsay.  *Id.*  While Mr. Johnson does not object to the government identifying snippets from those videos and admitting them in evidence—provided that those snippets are relevant and not inadmissible on hearsay or other grounds—the government still has not tailored their notice to specifically identify relevant portions of video (even though trial is now days away, and its deadline to identify exhibits passed weeks ago).

In response to Mr. Johnson's motion to exclude the remainder of the compilation videos, the government makes no claim that those portions are admissible.  *See* ECF No. 288 at 3.  It has nonetheless argued that the entirety of the videos should be admitted in evidence—again, not contending that they are admissible—unless the defense identifies, minute by minute, which portions it claims to be inadmissible.  *Id.*  The burden of proof regarding admissibility of evidence,

---

[1] To that end, any statements of non-testifying codefendants admitted at trial should not be used as substantive evidence against Mr. Johnson.  *See* Fed. R. Evid. 801 & 802. Further, evidence of acts of codefendants which have no bearing on what Mr. Johnson did or did not do on January 6th are irrelevant.  *See* Fed. R. Evid. 410 & 402. Such acts should not be used as substantive evidence against Mr. Johnson.

however, falls upon the party seeking admission of the evidence. *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1004 (9th Cir. 2002) (citing cases). The government's position seeks to invert that burden, arguing that if the government identifies (or simply posits the existence of) a few admissible snippets from the compilation videos, it should be permitted to submit to the factfinder the entirety of the videos—without even contending that the remaining portions are admissible—absent the defense establishing the inadmissibility of the remainder.

At bottom, neither party should be permitted to admit inadmissible evidence in a trial simply because it has inundated the other side with so much inadmissible evidence that it overwhelms the opponent's capacity to object. For these reasons, as well as those argued in Mr. Johnson's objection (ECF No. 278 at 1-2), the government should be permitted to admit in evidence only those portions of the compilation videos that it can show to be admissible.

**B. Treating Physician Testimony Adduced by the Government Should be Limited to Fact Testimony Since the Government Has Not Identified Any Expert Witnesses**

In support of its burden to show bodily injury with respect to some of the charges, the government has notified the defense that it will call upon at least one treating physician. It has not identified any physician, however, as an expert witness. Accordingly, the testimony of the treating physician should be limited to fact testimony, specifically: i) statements made to the physician by the patient for purposes of seeking a medical diagnosis or treatment, which are admissible under a hearsay exception (Fed. R. Evid. 803(4)); and ii) facts (if known to the physician)

necessary to admit the patient's medical records in evidence as business records pursuant to Fed. R. Evid. 803(6).

To the extent the government seeks to adduce testimony from the physician (or physicians) beyond those narrow areas, it is inadmissible.  *See, e.g., Daniels v. District of Columbia*, 15 F.Supp.3d 62, 69 (BAH) (a treating physician who testifies as to her diagnosis and treatment of the patient is still giving expert testimony, and therefore "may not, unless qualified as an expert, testify regarding her opinions 'based on scientific, technical, or specialized knowledge'"); *McGinn v. Georgetown Visitation Preparatory Sch.*, No. 18-cv-0069 (RMM), 2019 WL 12517086, at *4 (D.D.C. July 30, 2019) (excluding non-expert treating physician testimony where the proffered testimony was about the plaintiff's "injuries, surgeries and physical therapies required to treat her injuries, and the future permanency of her injuries," because such testimony "squarely qualifies as expert testimony pursuant to Rule 702").[2]  As the *Daniels* court explained, "[t]estimony as to the diagnosis and treatment of a patient, and the reasons therefore, is beyond the ability of the average lay witness' competency and is necessarily based on 'the expert's scientific, technical, or other specialized knowledge,' in the form of the doctors' medical training and experience."  15 F.Supp.3d at 70.

---

[2] *Daniels* and *McGinn* are both civil cases and relate in part to the expert disclosure requirements of Fed. R. Civ. P. 26, which are slightly different than the expert-witness disclosure requirements in criminal cases.  The propositions cited above, however, relate to admissibility of the witnesses' testimony under Fed. R. Evid. 702, which applies equally in the civil and criminal context.

Accordingly, the government should be precluded from eliciting from the physician witness (or witnesses) anything other than the patient's statements that were made for purposes of diagnosis or treatment and the foundation for business-record admissibility of the patient's medical records.

## C.  Count Ten, Which Charges Obstruction of Justice Pursuant to 18 U.S.C. § 1512(c), Should be Dismissed

Mr. Johnson's Motion to Dismiss Count Ten (ECF No. 202) remains pending. For the reasons stated there, the obstruction-of-justice count should be dismissed.  To summarize, Supreme Court precedent (specifically, *Begay v. United States*, 553 U.S. 137 (2008), and *Yates v. United States*, 574 U.S. 528 (2015)) compel this Court to limit the *actus reus* criminalized by § 1512(c)(2) to acts "with respect to a document, record, or other object [undertaken] to corruptly obstruct, impede or influence an official proceeding."[3]  The allegedly obstructive conduct in this case is separately criminalized and wholly unrelated to the evidence-destruction crimes at which the obstruction statutes are directed.  *See Yates*, 574 U.S. at 535-36 (noting, with respect to a related obstruction provision of the Sarbanes-Oxley Act, that the "principal evil motivating its passage" was "corporate document-shredding to hide evidence of financial wrongdoing," and limiting the § 1519 obstruction offense to effect that

---

[3]  This limitation on § 1512(c)(2) was adopted by Judge Nichols in *United States v. Miller*, 589 F.Supp.3d 60, 78 (D.D.C. 2022), which was reversed by the D.C. Circuit in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023).  That decision has been stayed and appealed to the Supreme Court, and a petition for Certiorari is now pending. *See* Supreme Court No. 23-5572.  Even if the Court declines to adopt Judge Nichols's conclusion about the scope of the *actus reus* required to violate § 1512(c)(2), it should find the statute unconstitutionally vague or narrow the statute pursuant to the rule of lenity.  *See* ECF No. 202 at 13-21.

Congressional purpose even though its plain language could have supported the broad reading the government requested). Accordingly, § 1512(c) should be similarly limited to exclude conduct such as that charged here, which has nothing to do with document shredding or evidence destruction.

## II. Elements of the Offenses Charged Against Mr. Johnson

### A. Count One (Civil Disorder in Violation of 18 U.S.C. § 231(a)(3), 2)

In Count One, the government alleges that Mr. Johnson committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his/her duties, incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

The Court must find Mr. Johnson not guilty of this offense unless it finds that the government proved each of the following elements beyond a reasonable doubt:

> **First**: that Mr. Johnson knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.
>
> **Second:** that at the time of the act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.
>
> **Third:** that the civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

In order to find the defendant guilty of this offense, the Court must identify at least one specific officer who was the intended victim of the defendant's acts of obstruction, impediment, or interference.[4]

### <u>Definitions</u>

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, the Court may consider all of the evidence, including what the defendant did or said.

The term "civil disorder" means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual.

The term "commerce" means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia.

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.[5]

---

[4] *See United States v. GossJankowsi*, 1:21-cr-123 (PLF), Final Jury Instructions (ECF No. 166) at 22.

[5] *Id.* at 23.

**<u>Attempt</u>**

In Count Three, Mr. Johnson is also charged with attempt to commit the crime of Civil Disorder. The Court must find him not guilty of attempt to commit Civil Disorder unless the government proves beyond a reasonable doubt each of the following elements:

> **First**: that Mr. Johnson intended to commit the crime of obstructing officers during a civil disorder.

> **Second:** that Mr. Johnson took a substantial step toward committing obstructing officers during a civil disorder, which strongly corroborates or confirms that he intended to commit that crime.

With respect to the first element, the Court may not find a defendant guilty of attempt merely because he thought about it. The Court must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, the Court may not find a defendant guilty of attempt merely because he made some plans to or some preparation for committing that crime. Instead, the Court must find that the defendant took some firm, clear, undeniable action to accomplish his intent to commit obstruction of officers during a civil disorder. However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to commit the crime.[6]

---

[6] *Id.* at 24.

## Aiding and Abetting[7]

A person may be guilty of an offense because he personally committed the offense himself or because he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal. To be convicted as an accomplice, a defendant must be proven to have had advance knowledge that the offense charged was going to be committed, or with contemporaneous knowledge that it was being committed, and, with that knowledge, he must have committed an act to further the offense.[8]

In this case, the government alleged that Mr. Johnson aided and abetted others to commit Civil Disorder as charged in the indictment. The Court may not find Mr. Johnson guilty of civil disorder because he aided and abetted the commission of this offense unless it finds that the government proved beyond a reasonable doubt each of the following five elements of aiding-and-abetting liability:

**First:** that others committed the offense charged by committing each of the elements of the offense charged.

**Second:** that Mr. Johnson knew that the offense charged was  going  to  be committed or was being committed by others.

**Third:** that Mr. Johnson performed an act or acts in furtherance of the offense.

---

[7] 18 U.S.C. § 2(a); Third Circuit Model Jury Instructions 7.02; *See also United States v. Riley Williams*, 21-cr-618 (ABJ), Final Jury Instructions, ECF No. 122 at 29-31; *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Final Jury Instructions, ECF No. 84 at 29-30.

[8] *See Rosemond v. United States*, 572 U.S. 65, 81-82 (2014) ("The District Court erred…because it did not explain that Rosemond needed advance knowledge of a firearm's presence.").

**Fourth**: that Mr. Johnson knowingly performed an act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the specific offense charged.

**Fifth:** that Mr. Johnson did that act or acts with the intent that others commit the offense charged.[9]

Further, some affirmative conduct by Mr. Johnson in planning or carrying out the crime is necessary.  Mere presence at the place and time the crime was committed is not by itself sufficient to establish guilt.  Evidence that Mr. Johnson merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough to find him guilty as an aider and abettor.[10]

### B.   Counts Two and Three (Assaulting, Resisting or Impeding Certain Officers Using a Dangerous Weapon and Resulting in Bodily Injury in Violation of 18 U.S.C. § 111(a)(1) & (b), 2)

Counts Two and Three each charge assaulting, resisting or impeding certain officers using a deadly or dangerous weapon and inflicting bodily injury, as well as the lesser included offenses of assaulting, resisting or impeding certain officers (without either using a dangerous weapon or inflicting bodily injury).  The two counts are identical, except that Count Two alleges those offenses with respect to Capitol Police Officer C.E., while Count Three alleges those offenses with respect to Capitol Police Officer D.C.  With respect to each Count, the Court can convict of the greater

---

[9] *See United States v. GossJankowsi*, 1:21-cr-123 (PLF), Final Jury Instructions (ECF No. 166) at 27.

[10]  *Id.*

offense (18 U.S.C. § 111(a)(1) and (b)(2), a felony with a 20 year maximum penalty) if the government proves all other elements and that Mr. Johnson either used a dangerous weapon or inflicted bodily injury.  Alternatively, the Court can convict of the lesser offense on each Count (18 U.S.C. § 111(a), a felony with an 8 year maximum penalty) if the government proves all other elements and proves that the offense either involved physical contact with the victim or was committed with the intent to commit another felony.

With respect to the elements that are common to all versions of the offense, the government must prove each of the following four elements beyond a reasonable doubt:

> **First:** that Mr. Johnson forcibly assaulted, resisted, opposed, impeded, intimated, or interfered with the officer (C.E. in Count Two; D.C. in Count Three).
>
> **Second:** that Mr. Johnson did such acts voluntarily and intentionally.
>
> **Third:** that the person Mr. Johnson assaulted, resisted, opposed, impeded, intimated, or interfered with, was an officer or employee of the United States or of any agency in any branch of the United States government.
>
> **Fourth:** that the officer was engaged in or on account of the performance of his official duties when Mr. Johnson acted.[11]

In addition, in order to establish a violation of the greater offense of violating § 111(b), the government must prove beyond a reasonable doubt:

---

[11] *Id.* at 29.

**Fifth:** that Mr. Johnson used a deadly or dangerous weapon in the commission of the offense and/or inflicted bodily injury upon Officer C.E. (Count Two) or D.C. (Count Three).[12]

## Definitions

A person acts "forcibly" if he uses force, attempts to use force, or threatens to use force against the officer.  A threat to use force at some unspecified time in the future is not sufficient to establish that a defendant acted forcibly.[13]

The term "assault" means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so.  A finding that one used force (or attempted or threatened to use it) is not the same as a finding that the defendant attempted or threatened to inflict injury.  In order to find that the defendant committed an "assault," the Court must find beyond a reasonable doubt that the defendant acted forcibly, and that the defendant intended to inflict or intended to threaten injury.[14]

The terms "resist," "oppose," "impede," "intimidate," and "interfere with" carry their everyday ordinary meanings.  However, all of these acts are modified by the

---

[12] *See* 18 U.S.C. § 111(a)(1), (b); *see also* Fourth Superseding Indictment, Counts Two and Three.

[13] *See United States v. GossJankowsi*, 1:21-cr-123 (PLF), Final Jury Instructions (ECF No. 166) at 31.

[14] *Id.*

word "forcibly." Thus, the Court may not find the defendant guilty unless the government proves beyond a reasonable doubt that he acted forcibly.[15]

An object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant used it in a way that is likely to endanger life or inflict great bodily harm. In determining whether the object is a "deadly or dangerous weapon," you may consider both the physical capabilities of the object used and the manner in which the object is used.[16]

The term "serious bodily injury" means bodily injury which involves a substantial risk of death; extreme physical pain; protracted and obvious

---

[15] *Id.*

[16] *See United States v. Klein*, 533 F. Supp. 3d 1, 12 n.6 (D.D.C. 2021) ("for purposes of § 111(b), courts have held that a dangerous weapon is any 'object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict great bodily harm.'"); *United States v. Chansley*, 525 F. Supp. 3d 151, 161-62 (D.D.C. 2021) ("As used in Sections 111 and 113, courts have consistently defined 'dangerous weapon' as an object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict great bodily harm"); *see also United States v. Goss-Jankowsi*, 1:21-cr-123 (PLF), Final Jury Instructions (ECF No. 166) at 31.

The definition in the text excludes as irrelevant the first sub-part of the definition used in *Klein*, *Chansley,* and *Goss-Jankowski* (which relates to "inherently dangerous" weapons, in which the design of the object is such that in its ordinary use it is likely to cause serious bodily injury or death). For example, a loaded gun is "inherently dangerous." In this case, Counts Two and Three identify the deadly or dangerous weapon as "a metal crowd control barrier" (specifically, a bike rack). Accordingly, it does not appear that there will be any claim that the item is an "inherently dangerous" weapon like a firearm. Rather, the issue will turn on whether a bike rack is capable of causing serious bodily injury or death, and whether Mr. Johnson used it in a manner likely to do so.

disfigurement; or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.[17]

The term "inflict" means to be the direct physical cause of an injury. *See United States v. Zabawa*, 719 F.3d 555, 560 (6th Cir. 2013) ("'inflict' refers to physical, not proximate, causation," such that "[t]he person whose action was the direct physical cause of [the injury] . . . is the person who inflicted it for purposes of § 111(b)"); *see also Gray v. United States*, 980 F.3d 264, 267 (2d Cir. 2020) (same, quoting *Zabawa*); *United States v. Jackson*, 310 F.3d 554, 557 (7th Cir. 2002) ("'inflict' is more restrictive than 'cause,'" and connotes an injury directly caused by the defendant's application of force to an officer, rather than merely as a result of the defendant's conduct); *United States v. Garcia-Camacho*, 122 F.3d 1265, 1269 (9th Cir. 1997) (appellant's conduct "inflicted" bodily injury for purposes of § 111(b) because it "directly cause[d]" the agent's injury); *United States v. Owens*, 541 F.Supp.3d 102, 114 (D.D.C. 2021) (BAH) (observing that it is "challenging" to draw a "causal relationship" for purposes of § 111(b) between officer's injury and defendant's conduct due to the "sheer variety" of events that may have caused officer's injury).

The term "bodily injury" means an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought.[18]

---

[17] *See United States v. Schwartz*, 1:21-cr-178 (APM), Jury Instructions (ECF No. 172) at 16; *see also* 18 U.S.C. § 1365(h)(3) (defining "serious bodily injury" with respect to product tampering offense).

[18] Fifth Circuit Pattern Jury Instruction (Criminal) § 2.07 (2019) ("The term "bodily injury" [in § 111(b)] means an injury that is painful and obvious, or an injury for which medical attention would ordinarily be sought."); Tenth Circuit Pattern Jury Instructions (Criminal) § 2.09 (same); U.S.S.G. § 1B1.1 App. Note (B) (same). *See*

**Aiding and Abetting**

Finally, with respect to both Counts Two and Three, the government has alleged liability as both a principal and an aider and abettor.  Accordingly, if the Court finds that Mr. Johnson did not commit the offense as a principal, the Court can find him guilty as an accomplice, but only if it establishes all elements of aiding-and-abetting liability set forth in Section I, *supra*, including advance or contemporaneous knowledge that the offense was being committed and the intentional commission of an act in furtherance of its commission.

**Lesser Offense**

In the event the Court does not find a violation of § 111(b) with respect to Counts Two and/or Three (by using a deadly or dangerous weapon or inflicting bodily injury), the government must prove (in order to establish a violation of the lesser

---

*also* Black's Law Dictionary (11th ed. 2019) (defining "bodily injury" [in sub-definition within the definition of "injury"] as "Physical damage to a person's body.")  *Accord Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012) ("When a term goes undefined in a statute, we give the term its ordinary meaning."); *Petit v. United States Dep't of Educ.*, 675 F.3d 769, 781 (D.C. Cir. 2012) (same).

In other cases, the government has argued for the statutory definition of "bodily injury" found in a different federal statute, 18 U.S.C. § 1365(h)(4), which includes "any . . . injury to the body, no matter how temporary."  The term "bodily injury," however, is undefined in the statute at issue here (18 U.S.C. § 111(b)), and it makes little sense to import a definition that would permit a de minimis injury—imagine a pinch that does not break the skin but leaves a mark that lasts a few seconds—to elevate an offense to a felony with a 20-year maximum prison sentence. In the consumer-product statute from which that definition is drawn, the relevant conduct becomes a felony (and then with a ten-year maximum sentence) only when committed with "extreme indifference" to the risk caused by the offense conduct.  The Fifth and Tenth Circuit Pattern Instructions cited here, which are broader than "serious bodily injury," but exclude de minimis injuries, appropriately reflect the language, structure, and purpose of 18 U.S.C. § 111(b).

felony offense charged in Counts Two and Three) the four elements set forth above, and either that the offense involved physical contact with the victim or was committed with the intent to commit another felony.[19]

### C. Count Five (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon in Violation of 18 U.S.C. § 1752(a)(1) & (b)(1)(A))

Count Five charges the defendant with entering or remaining in a restricted building or grounds, and using or carrying a deadly or dangerous weapon during and in relation to the offense.  The government must prove each of the following elements beyond a reasonable doubt to convict Mr. Johnson of this offense:

> **First:** that Mr. Johnson entered or remained in a restricted building or grounds without lawful authority to do so;

> **Second:** that Mr. Johnson knew that the building or grounds was restricted and he knew he lacked lawful authority to enter or remain there.[20]

> **Third:** that Mr. Johnson knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.[21]

---

[19]  *See* 18 U.S.C. § 111(a)(1).  In the event the Court finds that Mr. Johnson committed the initial four elements identified above but none of the aggravating elements (use of a dangerous weapon, infliction of injury, contact with a victim or intent to commit another felony), he would be guilty of misdemeanor simple assault, punishable by no more than one year.  *See* 18 U.S.C. § 111(a)(1).  Mr. Johnson anticipates, however, that the dispute at trial will be over which felony applies to the charged conduct, not whether it is a misdemeanor or felony.

[20]  *See United States v. Reffitt*, 1:21-cr-32 (DLF), Final Jury Instructions (ECF No. 119) at 30.

[21]  *Id.* (modified from "firearm" to "deadly or dangerous weapon" because *Reffitt* involved a firearm).

## **Definitions**

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President, and the immediate family of the Vice President.[22]

The term "knowingly" requires the government to prove that Mr. Johnson knew that he was in a posted, cordoned off, or otherwise restricted area, and that he knew it was such an area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting.[23]

The term "deadly or dangerous weapon" has the same meaning set forth above with respect to Counts Two and Three. To establish that the defendant used or carried a deadly or dangerous weapon, the government must prove beyond a reasonable doubt that the object was capable of causing serious bodily injury or death

---

[22] *See United States v. Thompson*, 1:21-cr-161 (RBW), Final Jury Instructions (ECF No. 83) at 31.

[23] *See United States v. Bingert, et al.*, 1:21-cr-91 (ECF No. 163) (RCL). Congress has set forth two requirements for an area to qualify as a "restricted building or grounds": 1) it must be a posted, cordoned off, or otherwise "restricted area" and 2) it must fall into one of the three categories that Congress has identified as warranting special protection, including, as the government will allege here, that a Secret Service protectee is visiting. § 1752(c)

to another person and that the defendant carried the object with the intent to use it in a manner capable of causing serious bodily injury or death to another person.[24]

### Lesser Offense

In the event the Court does not find a violation of § 1752(b)(1)(A) (using or carrying a deadly or dangerous weapon during and in relation to the offense), but finds that the government has proven the first and second elements set forth above beyond a reasonable doubt, the Court may find Mr. Johnson guilty of the misdemeanor offense of violating § 1752(a)(1) & (b)(2).

**D. Count Six (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon in Violation of 18 U.S.C. § 1752(a)(2) & (b)(1)(A))**

To prove Count Six, the government must prove each of the following elements beyond a reasonable doubt.

> **First:** that Mr. Johnson engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

> **Second:** that Mr. Johnson did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

> **Third:** that Mr. Johnson conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions;

> **Fourth:** that Mr. Johnson knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

---

[24] *See United States v. GossJankowsi*, 1:21-cr-123 (PLF), Final Jury Instructions (ECF No. 166) at 36.

## **Definitions**

The term "disorderly conduct" means when a person is unreasonably loud and disruptive under the circumstances or interferes with another person. It may include loud, threatening, or abusive language, or acting in a manner as to cause another individual to be in reasonable fear that some harm to their person or property is likely. It is behavior that tends to disturb the public peace, offend public morals, or undermine public safety.[25]

The term "disruptive conduct" means a disturbance that interrupts the normal business or orderly conduct of an event, public activity, or gathering.[26]

The terms "restricted building or grounds," "knowingly," and "deadly or dangerous weapon" have the same meanings set forth above with respect to Count Five.

## **Lesser Offense**

In the event the Court does not find a violation of § 1752(b)(1)(A) (using or carrying a deadly or dangerous weapon during and in relation to the offense), but finds that the government has proven the first, second and third elements set forth above beyond a reasonable doubt, the Court may find Mr. Johnson guilty of the misdemeanor offense of violating § 1752(a)(2) & (b)(2).

---

[25] *See United States v. GossJankowsi*, 1:21-cr-123 (PLF), Final Jury Instructions (ECF No. 166) at 35.

[26] *Id.*

E.   **Count Seven (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, Resulting in Significant Bodily Injury in Violation of 18 U.S.C. § 1752(a)(4), (b)(1)(A) & (b)(1)(B), 2)**

To prove Count Seven, the government must prove each of the following elements beyond a reasonable doubt.

**First:** that Mr. Johnson engaged in an act of physical violence against any person or property;

**Second:** that he did so in any restricted building or grounds;

**Third:** that he did so knowingly;

**Fourth:** that he knowingly used or carried a deadly or dangerous weapon during and in relation to the offense, or that the offense resulted in significant bodily injury.[27]

## Definitions

The term "act of physical violence against any person or property" means "an assault or other infliction of death or bodily harm on an individual or damage to, or destruction of, real or personal property."[28]

The term "significant bodily injury," as used in § 1752(b)(1)(B), references the definition set forth in 18 U.S.C. § 2118(e)(3), which is defined as "bodily injury which

---

[27] *See United States v. Grider,* 2022 WL 17829149, -- F.Supp. 3d – (D.D.C., No. 21-cr-022, Dec. 21, 2022) (CKK) at *13 (first three elements); 18 U.S.C. § 1752(b)(1) (fourth element).

[28] *See* 40 U.S.C. § 5104(a)(1) (modified to exclude reference to a threat, because the term being defined is an act of physical violence rather than a threatened act of physical violence.  It is true that § 5104 defines the term "act of physical violence" for purposes of *that* offense to include a threat; but the term is undefined in § 1752, so the Court should not import the portion of the § 5104 definition that is facially more broad than the undefined language in § 1752, which should be given its ordinary meaning).

involves a risk of death, significant physical pain, protracted and obvious disfigurement, or a protracted loss or impairment of a bodily member, organ, or mental or sensory faculty."

The terms "restricted building or grounds," "knowingly" and "deadly or dangerous weapon" have the meanings set forth above with respect to Count Five.

## Lesser Offense

In the event the Court does not find a violation of § 1752(b)(1)(A) or (b)(1)(B) (using or carrying a deadly or dangerous weapon during and in relation to the offense, or causing significant bodily injury), but finds that the government has proven the first, second, and third elements set forth above beyond a reasonable doubt, the Court may find Mr. Johnson guilty of the misdemeanor offense of violating § 1752(a)(4) & (b)(2).

## Aiding and Abetting

Finally, with respect to Count Seven, the government has alleged liability as both a principal and an aider and abettor. Accordingly, if the Court finds that Mr. Johnson did not commit the offense as a principal, the Court may find him guilty as an accomplice, but only if it establishes all elements of aiding-and-abetting liability set forth in Section I, *supra*, including advance or contemporaneous knowledge that the offense charged in Count Seven was being committed and the intentional commission of an act in furtherance of its commission.

**F.   Count Eight (Disorderly Conduct in the Capitol Building or Grounds in Violation of 40 U.S.C. § 5104(e)(2)(D))**

Count Eight charges Mr. Johnson with engaging in disorderly conduct in a Capitol building or grounds.  In order to prove this offense, the government must prove each of the following elements beyond a reasonable doubt.

**First:**  that Mr. Johnson engaged in disorderly or disruptive conduct in any of the United States Capitol Building or Grounds.

**Second:** that he did so with the intent to impede, disrupt or disturb the orderly conduct of a session of Congress or either House of Congress.

**Third:** that he acted willfully and knowingly.[29]

## Definitions

The term "United States Capitol Building or Grounds" includes the United States Capitol located at First Street, Southeast, in Washington, D.C., and its grounds, which includes all squares, reservations, streets, roadways, walks and other areas as defined on a map entitled 'Map showing areas comprising United States Capitol Grounds," dated June 25, 1946, approved by the Architect of the Capitol, and recorded in the Office of the Surveyor of the District of Columbia in book 127, page 8.[30]

The term "disorderly or disruptive conduct" has the same meaning set forth above with respect to Count Six.

---

[29]  *See United States v. GossJankowsi*, 1:21-cr-123 (PLF), Final Jury Instructions (ECF No. 166) at 37.

[30]  *Id.*

The term "knowingly" means that a person realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.[31]

The term "willfully" means that a person acts with an intent to do something that the law forbids, that is, to disobey or disregard the law.  "Willfully" does not, however, require proof that the defendant was aware of the specific law or rule that his conduct may have violated.[32]

## G. Count Nine (Act of Physical Violence in the Capitol Building or Grounds in Violation of 40 U.S.C. § 5104(e)(2)(F), 2)

Count Nine charges the defendant with engaging in an act of physical violence within the United States Capitol Grounds and any of the Capitol Buildings.  The government must prove each of the following elements beyond a reasonable doubt in order to sustain its burden on this Count:

**First:** that Mr. Johnson engaged in an act of physical violence;

**Second:** that he did so in a United States Capitol Building or Grounds; and

**Third:** that he did so willfully and knowingly.[33]

---

[31] *Id.* at 23.

[32] *Id.* at 37.

[33] *See* 40 U.S.C. § 5104(e)(2)(F).

## Definitions

An "act of physical violence" means any act involving (1) an assault or other infliction or threat of infliction of death or bodily harm on an individual, or (2) damage to, or destruction of, real or personal property.[34]

The terms "United States Capitol Building or Grounds," "knowingly," and "willfully" have the meanings set forth above with respect to Count Eight.

## Aiding and Abetting

Finally, with respect to Count Nine, the government has alleged liability as both a principal and an aider and abettor. Accordingly, if the Court finds that Mr. Johnson did not commit the offense as a principal, the Court may find him guilty as an accomplice, but only if it establishes all elements of aiding-and-abetting liability set forth in Section I, *supra*, including advance or contemporaneous knowledge that the offense charged in Count Nine was being committed and the intentional commission of an act in furtherance of its commission.

### H.  Count Ten (Obstruction of an Official Proceeding in Violation of 18 U.S.C. § 1512(c)(2), 2)

The Court must acquit Mr. Johnson on Count Ten unless the Court finds that the government proved beyond a reasonable doubt each of the following elements:

**First**: that Mr. Johnson attempted to and did obstruct or impede any official proceeding;

**Second:** that he intended to obstruct or impede the official proceeding;

**Third**: that he acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

---

[34] *See* 40 U.S.C. § 5104(a)(1).

**Fourth:** that he acted corruptly.[35]

## <u>Definitions</u>

The term "official proceeding" is a proceeding akin to a formal hearing before a tribunal.[36]  The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of the conduct, and does not act through ignorance, mistake, or accident.  In deciding whether the defendant acted knowingly, the factfinder may consider all the evidence, including what the defendant did or said.

To act "corruptly," the defendant must act with the intent to procure an unlawful benefit either for himself or for some other person.[37]  That benefit may be

---

[35] *See United States v. Reffitt*, 21-cr-32 (DLF), Final Jury Instructions, ECF No. 119 at 25; *United States v. Robertson*, 21-cr-34 (CRC), Final Jury Instructions, ECF No. 86 at 12-13

[36] *United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013).  This definition has not been widely accepted in this court.  In *United States v. Sandlin*, 21-cr-088 (DLF), ECF No. 63 at 7, however, the court held that "official proceeding under § 1512(c)(2) does not include any and all series of actions before Congress; rather, the proceeding must be akin to a formal hearing."

[37] *See Fischer*, 64 F.4th at 352-56 (Walker, J., concurring).  In *Fischer*, Judge Walker's concurrence with the result was contingent upon his definition of "corruptly."  *Id.* at 351-52 (explaining that this definition was the only way to narrow the statute such that it could remain constitutional given the breadth of the "act" element adopted by the court).  Judge Pan, who wrote the lead opinion did not ultimately decide the scope of the "corruptly" *mens rea* element, given the fact that it was not squarely before the

unlawful either because the benefit itself is not allowed by law, or because it was obtained by unlawful means.[38]

Further, to act "corruptly," the defendant must act with consciousness of wrongdoing. Consciousness of wrongdoing means with an understanding or awareness that what the person is doing is wrong.[39]

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but he does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct, does act corruptly.[40]

The word "attempt" in the first element means that the defendant had the intent to do the act and took a substantial step towards completing it. In connection with that, it would not be enough to show merely that the defendant thought about it. The Court must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to

---

Court. *Id.* at 340-41. Because the concurrence is conditional upon this definition, however, it is the controlling law on the matter.

[38] *Id.* at 357.

[39] *Reffitt*, ECF No. 119 at 26.

[40] *Id.*

intending to commit it.  Nor would it be sufficient if the defendant simply made plans to commit the offense; the evidence must show that the defendant took clear steps to carry out his intent.  If the defendant either knowingly committed the act or attempted to commit it, this element is satisfied.[41]

### Aiding and Abetting

Finally, with respect to Count Ten, the government has alleged liability as both a principal and an aider and abettor.  Accordingly, if the Court finds that Mr. Johnson did not commit the offense as a principal, the Court may find him guilty as an accomplice, but only if it establishes all elements of aiding-and-abetting liability set forth in Section I, *supra*, including advance or contemporaneous knowledge that the offense charged in Count Ten was being committed and the intentional commission of an act in furtherance of its commission.

---

[41] *United States v. Williams*, 21-cr-618 (ABJ), Final Jury Instructions, ECF No. 122 at 29.

Respectfully submitted,

PAUL RUSSELL JOHNSON
By Counsel,


/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
Todd M. Richman
Assistant Federal Public Defenders
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org
Todd_Richman@fd.org