**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,          Criminal Action
                                   No. 1:21-0537
                Plaintiff,

       vs.
                                   October 31, 2023
                                   10:00 a.m.
RYAN SAMSEL - 1,
JAMES TATE GRANT - 2,
PAUL RUSSELL JOHNSON - 3,
STEPHEN CHASE RANDOLPH - 4,
JASON BENJAMIN BLYTHE - 5,

                Defendants.     Washington, D.C.
_____

          TRANSCRIPT OF BENCH TRIAL - DAY 6
        **BEFORE THE HONORABLE JIA M. COBB**
          UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For Plaintiff:**                 **Kyle Mirabelli**
                                   **Joseph Hutton Marshall**
                                   United States Attorneys Office
                                   601 D Street NW, Suite 6-725
                                   Washington, DC  20001
                                   202-815-4028

                                   **Christopher Brunwin**
                                   U.S. Attorneys Office
                                   Federal Courthouse
                                   312 N. Spring Street, 13th Floor
                                   Los Angeles, CA 90012
                                   213-894-4242

                                   **Alexandra Foster**
                                   DOJ - U.S. Attorneys Office
                                   880 Front Street, Room 6293
                                   San Diego, CA  92101-8807
                                   619-546-6735

APPEARANCES CONTINUED:

For Deft. Samsel:               **Stanley Woodward**
                                BRAND WOODWARD LAW, LP
                                400 Fifth Street, Northwest
                                Washington, DC 20001
                                202-996-7447


For Deft. Grant:                **Robert A. Feitel**
                                LAW OFFICE OF ROBERT FEITEL
                                1300 Pennsylvania Avenue NW, #1505
                                Washington, DC 20008
                                202-255-6637


For Deft. Johnson:              **Lauren Rosen**
                                **Todd M. Richman**
                                OFFICE OF FPD-EDVA
                                1650 King Street, Suite 500
                                Alexandria, VA 22314
                                703-600-0819


For Deft. Randolph:             **Angel Halim**
                                3580 Indian Queen Lane
                                Philadelphia, PA 19129
                                215-300-3229


For Deft. Blythe:               **Stephen Brennwald**
                                BRENNWALD & ROBERTSON, LLP
                                922 Pennsylvania Avenue, SE
                                Washington, DC 20003
                                301-928-7727



Reported By:                    **Stacy Johns, RPR**
                                Official Court Reporter
                                U.S. District & Bankruptcy Cts.
                                333 Constitution Avenue, NW
                                Washington, DC 20001
                                Stacy_Johns@dcd.uscourts.gov


**\*\*\*** Proceedings recorded by stenotype shorthand.
**\*\*\*** Transcript produced by computer-aided transcription.

**EXHIBITS**

| GOVERNMENT EXHIBITS | ADMIT |
|---|---|
| 1103A, 1103B, 1103C, 1103D, 1103E, 1103F, 1103G, 1103H, 1103I, 1103J, 1103K, 1103L, 1103M, 1103N, 1103O, 1103P, 1103Q, 1103R, 1103S, 1103T, 1103U, 1103V, 1103W, 1103X, 1103Y, 1103Z, 1103AA | 5 |

| DEFENSE EXHIBITS | ADMIT |
|---|---|
| DS2 | 57 |
| DR2 | 59 |
| DB1 | 60 |

**P R O C E E D I N G S**

1

2    DEPUTY CLERK:  Your Honor, we are on the record in

3    criminal Case 21-537, United States of America versus Ryan

4    Samsel, et al.  All defendants and counsel are present.

5    THE COURT:  Good morning.  So I did receive

6    Mr. Woodward's email yesterday concerning the data extraction.

7    And so you're no longer challenging the Rule 902.14

8    certification, correct?

9    MR. WOODWARD:  I would put it slightly differently, at

10   the risk of being a lawyer.

11   THE COURT:  Okay.

12   MR. WOODWARD:  We're not challenging the authenticity

13   of the cell phone extraction.  I don't think that I would be

14   comfortable conceding that a 902.14 certificate satisfies the

15   Government's burden.  I just don't want them to use that

16   against me in the future.  Not you-all.

17   THE COURT:  The rule provides for a mechanism by which

18   parties can save expense associated with having such an analyst

19   testify by allowing the analyst to provide a certification

20   under this relatively recent federal rule.  But it does provide

21   that the defense can oppose or challenge it.  And that's why

22   the Government gives advance notice of it.  So you're not

23   requiring them or asking that they bring the analyst.

24   Consistent with your email yesterday, you're, in fact,

25   stipulating to --

1          MR. WOODWARD:  Just as we've stipulated to the seizure

2    of the items of -- articles of clothing that were obtained from

3    Mr. Samsel's house, we'll stipulate to the phone records having

4    been reliably obtained.

5          THE COURT:  Okay.

6          MR. WOODWARD:  As the Court points out, it's a new

7    issue and I hope to have future cases in which the Government

8    won't come forward and say, well, Mr. Woodward did this once.

9    He should be precluded from arguing -- not these prosecutors.

10         THE COURT:  Okay.  Fair enough.  I'm satisfied

11   accepting this.

12         You're satisfied with the stipulation?

13         MS. FOSTER:  Yes, Your Honor.  I think based on that,

14   United States would be moving into evidence 1103A to 1103AA.

15   So I think it's A through Z and then AA.

16         THE COURT:  Okay.  It's admitted.

17       (Government Exhibits 1103A, 1103B, 1103C, 1103D, 1103E,

18   1103F, 1103G, 1103H, 1103I, 1103J, 1103K, 1103L, 1103M, 1103N,

19   1103O, 1103P, 1103Q, 1103R, 1103S, 1103T, 1103U, 1103V, 1103W,

20   1103X, 1103Y, 1103Z, 1103AA received in evidence.)

21         THE COURT:  Okay.  With that, does the Government have

22   any more witnesses or evidence that it wishes to present?

23         MR. MIRABELLI:  No, Your Honor.  The Government rests.

24         THE COURT:  Okay.

25         MR. WOODWARD:  Rule 29s?

```
1                  THE COURT:  Sure.

2                  MR. WOODWARD:  Your Honor, on behalf of Mr. Samsel, we

3      would move for a judgment of acquittal under Rule 29.  As the

4      Court is aware, we have acknowledged Mr. Samsel's presence with

5      respect to the 111A counts.  So I won't belabor the point

6      there.

7                  We do think the Government has failed to meet its

8      burden of proof with respect to at least the 111(b)s.  Insofar

9      as Officer Cruz testified that he was not injured or could not

10     tell that he was injured as a result of the conduct that

11     occurred at Peace Circle.  Officer Edwards testified that there

12     were a number of things that were affecting her, in particular,

13     although she claimed that she had suffered a migraine, the

14     medical records did not bear that out and she acknowledged

15     that.

16                 In addition, she also acknowledged that there were a

17     number of stressful things in her life, which could also have

18     caused the migraine.  And so there is not an injured officer

19     with respect to counts 2 and 3.

20                 With respect to whether the Government has proven

21     beyond a reasonable doubt that a dangerous or deadly weapon was

22     used, we submit that a bicycle rack by itself is not a

23     dangerous or deadly weapon.  Of course, the Court is aware that

24     the standard is whether the object is used in a manner that is

25     dangerous or deadly, and we would submit that the Government
```

1    has not proven that it was used in a manner what was dangerous

2    or deadly, or that Mr. Samsel was responsible for its use in a

3    manner that was dangerous or deadly.

4          Specifically, the bicycle rack was being pushed up

5    against officers.  The video speaks for itself on that.  But

6    merely pushing any object, whether it's a bicycle rack or, as

7    Judge McFadden has found, a riot shield, does not render that

8    object dangerous or deadly.

9          So we would ask the Court to find similarly to what

10   Judge McFadden has done with respect to riot shields, and

11   conclude that the bicycle rack here either was not being used

12   in a manner what was dangerous or deadly or that Mr. Samsel is

13   not responsible for the manner in which it was used, as there

14   were literally hundreds of people pushing.  In our

15   cross-examination of Officer Edwards, she acknowledged it was

16   impossible to tell whether he was pushing or pulling on the

17   bicycle rack and the video simply isn't clear.

18         Turning then with respect to -- I think the only other

19   Rule 29 we would bring is with respect to 1512.  As the Court

20   is aware, the Circuit has now clarified what is required of

21   "corruptly."  But here we don't really have to explore that

22   definition, insofar as the Government has elicited literally no

23   evidence that Mr. Samsel understood what was happening at the

24   Capitol that day.

25         No doubt they will rely on two pieces of evidence that

1    were elicited through Agent Curcio, one being a text message to

2    a Mr. Strohecker about the democrats, improperly spelled,

3    winning Georgia, and see you soon.  But that message is wholly

4    out of context.  We know nothing about it.  We know nothing

5    about who Mr. Strohecker was or whether he had any knowledge or

6    awareness of what was happening on January 6th.

7         "See you soon" can mean a number of things.  Perhaps

8    Mr. Samsel was planning to have supper with Mr. Strohecker that

9    evening.  We simply don't know.  And to impute some connotation

10   of knowledge about the certification of the Electoral College

11   vote is improper.

12        The second piece of evidence the Government will no

13   doubt rely on is the interview that they played through Agent

14   Curcio.  We have no context about that interview.  We don't

15   know when it was.  We don't know anything about it.  And so it

16   does not impute knowledge to Mr. Samsel on January 6th that his

17   actions, in fact, were intended to stop any official

18   proceeding, let alone the certification of the Electoral

19   College.

20        I'm aware of the Court having ruled on this issue

21   before.  We think that the facts in this case are similar to

22   what the Court has seen already.

23        And lastly, we would observe that there's no evidence

24   that Mr. Samsel stuck around after the events at Peace Circle

25   or on the West Terrace.  He left the area well before any of

1    the more serious violence that occurred at the Capitol,

2    including the entry of the Capitol by the protesters turned

3    rioters that day.  He was not there when the members were

4    evacuated.  Point of fact, he didn't go in the Capitol.

5            So we would submit, Your Honor, that Mr. Samsel is

6    much more like those individuals present who came to attend a

7    rally hosted by former President Trump, in fact, watched the

8    rally and the speech of former President Trump, but knew

9    nothing about the Capitol or what was happening that day.  They

10   simply joined the throng of other protesters who marched over

11   to the Capitol.

12           So for those reasons we would ask that the Court

13   conclude that -- I think the standard is no reasonable jury

14   would find beyond a reasonable doubt with respect to 111(b) on

15   counts 2 and 3, and forgive me, I'm not sure which count the

16   1512 is.

17           THE COURT:  Okay.  Does it make sense to hear from all

18   the defendants to get their motions and have the Government

19   respond or do you want to respond?

20           MR. MIRABELLI:  I think it makes sense to hear what

21   all the defendants would have to say.

22           THE COURT:  Okay.  I was hoping you would say that.

23   All right.

24           MR. FEITEL:  Good morning, Your Honor.  If I could

25   just have one second.

```
1              THE COURT:  Okay.  Whenever you're ready.
2              MR. FEITEL:  I'm going to start without the computer,
3    since I've shown absolutely no facility to use --
4              THE COURT:  I'll give you time.
5              MR. FEITEL:  No, no, I'm good.  Thank you, Your Honor.
6         I want to start off by noting that I'm going to argue
7    for the dismissal for everyone with respect to count 1.  I
8    think others may have more informative comments about it.  I'm
9    going to specifically argue that my client should be found --
10   Your Honor should grant a Rule 29 motion at this juncture with
11   respect to the assault on a police charge -- officer, involving
12   Officer Edwards, and that my client also should be acquitted,
13   even under the standard of evidence in the light most favorable
14   to the Government, which is the Rule 29 standard, with respect
15   to the 1512 count.
16        I wanted to start, though, with a count that sort of
17   has kind of gone under the radar.  That is count 1, civil
18   disorder in violation of 18 United States Code Section 231.
19        I have reviewed the Government's proposed jury
20   instructions, as well as the ones submitted by my colleagues at
21   the Virginia Federal Defender's Office.  I don't know if Your
22   Honor has had a chance to compare.  There's not complete
23   overlap for all of the instructions but for this one there is.
24   The elements of the offense require, number 2, that at the time
25   of the act the law enforcement officer or officers were engaged
```

1    in the lawful performance of their official duties, incident to

2    and during a civil disorder.

3           I think on the facts of this case, the Government has

4    not satisfied that the civil disorder existed at the moment

5    that the Government claims our clients engaged in assaultive

6    and impeding and other conduct at the line of bike racks.

7           I think the Government has connected that event to

8    this charge.  I think that one of the other defendants -- I

9    think Mr. Johnson is charged separately in a different civil

10   disorder count.  I think the Government, on the evidence and on

11   the theory that is articulated before Your Honor, has linked

12   the events at the bike racks to civil disorder.  And whatever

13   anyone may conclude about the conduct, I think at that point

14   the civil disorder had not begun.  I don't think it begins

15   until after those events.

16          It may be that if the statute had said before, during

17   and after civil disorder that it would be a different event.

18   But it says incident to and during a civil disorder.  And to

19   the extent it's incident to, I take that to mean that you don't

20   need to be at the exact place where the civil disorder is

21   happening, as long as you impede -- that is -- element one is

22   that the defendant committed an act with the intended purpose

23   of obstructing, impeding or interfering with one or more law

24   enforcement officers.

25          And under this -- under the facts of this case, the

civil disorder takes place after those events.  I'd ask Your
Honor to acquit my client of count 1.  And perhaps others will
be able to articulate a more cogent and powerful theory of
defense for that.

       With respect to, I believe it is count 3, the assault
on Officer Caroline Edwards, I'd ask Your Honor to find my
client not guilty now.  And if we can open the laptop.

       So the testimony at trial from Officer Edwards was
that she saw two people and two people alone in front of her.
That was, I believe -- I believe she identified them as
Mr. Johnson and Mr. Samsel.  But this photograph, which is a
still taken from one of the Government's exhibits, shows
Officer Edwards and there are three people in front of her.
I'm not going to belabor the point.  I would imagine at this
point everybody in this courtroom would say that they've seen
the videos sufficiently to have an idea of what happened in
these events.

       With respect to Mr. Grant, I think it is undeniable
that he is not in front of the officer.  He is further down to
the left.  If Your Honor looks at the bike rack, you can see
it's some distance away.  There is a requirement in the
criminal law for assaultive conduct of causality, causation in
fact.  And I think that on the merits the Government has failed
to prove it.

       And the Government did not offer any sort of expert

1    testimony, an engineer, anybody who could say that the force

2    transmitted from down to the left caused the injuries to

3    someone all the way to the right.  The testimony was that the

4    bike racks were not connected perfectly, that they moved -- I

5    think they moved the ways that planes move, pitch, roll and

6    yaw.  I learned that when I went to the Wright Museum in North

7    Carolina.  The bikes move up and down, off the vertical and

8    horizontal axis.

9            Your Honor can see, there were videos showing other

10   people who were pushing on the bike racks, including someone

11   Your Honor may recall.  He was wearing a green-and-black

12   jacket.  He had turned backwards to the bike rack and lifted it

13   up.  He wasn't charged.  I mean, there is some physical

14   proximity limitation on bringing this charge.

15           And I think that in this case my client ought to be

16   acquitted, not only because he's not the cause in fact but

17   because there are intervening criminal acts that would not have

18   been foreseeable to him.  If Your Honor looks at the video,

19   Your Honor will recall, my client has his head down.  He's not

20   looking anywhere else.  Officer Edwards didn't say that she

21   remembered him.  No one asked.  They didn't make eye contact.

22           I think that intervening criminal acts of other

23   defendants in this case ought to absolve my client of criminal

24   liability for this particular incident.  If Mr. Grant had been

25   over one bike rack to the right, had been looking at Officer

1    Edwards in the face, perhaps I might have a less powerful
2    argument.  I do think that on the facts, he is not within the
3    zone of criminal responsibility for the assault that took place
4    against her.  And I don't think the Government has proven it,
5    even in the light most favorable to the Government.
6            I don't want to give too, too, too much away in the
7    event that Your Honor would reserve and I have to argue later.
8    I'm sure no one wants to hear anyone repeat their arguments
9    more than once.
10           With respect to the 1512 count, I'd also ask Your
11   Honor to find my client not guilty on these facts.  The
12   evidence of the events that take place outside of the Capitol,
13   Your Honor, I don't believe are a basis for the Court to find
14   criminal liability for the obstruction of a Congressional
15   hearing.  I don't think they're related in time or in fact, and
16   there's nothing about anything that my client has said, in
17   terms of social media or the like, to show an intent to try to
18   obstruct the Congressional proceedings.
19           To the contrary, he sent out what I think are classic
20   protected First Amendment emails to legislators.  Not to anyone
21   in Congress here in Washington but to legislators in Georgia,
22   alerting them that he felt there had been a misappropriation or
23   steal of the then election.
24           I don't see that anything else that my client did
25   inside the building that the Government has proven up would

1   show the requisite corrupt intent.  He's in Senate offices.  We

2   have --there's a picture of him sitting down and one of him

3   standing in front.  He appears particularly calm.  He doesn't

4   engage in any kind of violent conduct that the Government has

5   adduced at this trial.

6        So to the extent that there is a requirement of some

7   corrupt intent, I fail to see -- I think the Government has

8   failed to introduce it sufficiently, even under the standard

9   for a Rule 29.  And I think my client ought to be acquitted of

10  that conduct in the here and now.  It will save Your Honor from

11  having to listen to me during summations as well, another

12  collateral benefit of granting the motion.

13       And then, finally -- well, Your Honor, I would say

14  that my wife would grant anything to stop me from talking

15  around the house.  She would concede virtually any aspect of

16  our personal lives and she's also an attorney.

17       Lastly, the Government in this case seems to have

18  engaged in really classic bravo overcharging with multiplicitas

19  and duplicitas counts that all involve the same conduct.

20  Without belaboring the point, my client is charged with

21  entering and remaining and with physical violence with a deadly

22  or dangerous weapon inside the Capitol, and all those counts

23  hinge on the requirement -- or at least the greater offense

24  hinge on him having used a dangerous or deadly weapon.

25       I will join in with what Mr. Woodward said.  I don't

1  think the manner in which these bike racks were used was an

2  intent to use it as a dangerous or deadly weapon.  It was

3  intended to move people.  I don't think that on the facts Your

4  Honor should even allow the greater counts of entering and

5  remaining or physical violence to go forward.

6          The lesser offenses we can argue, but I don't think

7  the greater offense involving the use of a dangerous or deadly

8  weapon can survive a Rule 29 motion in this case.  So I'd ask

9  you to dismiss all of those.  And I'll reserve on the rest of

10  the arguments.  I'm going to join in with what some of the

11  others have to say about the assault involving Officer Cruz and

12  injuries and the like.

13          I got to go second because of the ordering.  I don't

14  want to be the only person that has anything to say to Your

15  Honor.  I'll let the others articulate it better than I can.

16          THE COURT:  Okay.  Thank you.

17          MR. RICHMAN:  Good morning, Your Honor.

18          THE COURT:  Good morning.

19          MR. RICHMAN:  First of all, with respect to the civil

20  disorder count, count 1, we would join the argument just made

21  by Mr. Feitel.  The only one clarification, he said that the

22  other civil disorder count was against Mr. Johnson.  It's

23  count 11 against Mr. Samsel.  Mr. Johnson is charged in only

24  one civil disorder count.  That's the one at Peace Circle.

25          And the way that Your Honor can see that it relates

1    only to Peace Circle is because of the other count; that one

2    identifies conduct at the West Plaza, whereas count 1 is all

3    defendants together at Peace Circle.  So obviously, the unit of

4    prosecution that the indictment sees is based on when all

5    defendants were together at Peace Circle.  So that's what

6    count 1 is about.

7           Your Honor, with respect to count 2, which is the 111

8    assault count against Officer Edwards, Mr. Johnson, as we said

9    in opening, just did not commit that offense.  Officer

10   Edwards's testimony was very clear.  The people who did the

11   pushing in the fence that caused her to fall backwards and hit

12   her head, those were the people later identified in testimony

13   as defendants Samsel and Randolph.

14          Sergeant Lively was asked to narrate exactly the same

15   portion of video.  He, too, said the people that were pushing

16   at that moment that were causing Officer Edwards to get pushed

17   backwards were the people that were later identified in

18   testimony as Samsel and Randolph.

19          And then Officer Cruz testified that he couldn't even

20   see what was happening to Officer Edwards in realtime.  He only

21   learned about it later.  But that the person right in front of

22   him, wearing the hoody with the Harley Davidson on the back and

23   the skull on the back, was turned -- angled towards him and

24   pushing towards him, which was away from Officer Edwards.  So

25   he, too, would back up what both Sergeant Edwards and Sergeant

1   Lively said.

2          Your Honor, 111 requires -- no matter which verb

3   you're talking about, requires forcible conduct directed at an

4   identifiable victim.  Mr. Johnson simply did not commit that

5   against Officer Edwards.  So count 2 should be dismissed

6   against Mr. Johnson.

7          The Government has also charged aiding and abetting

8   for that offense.  The fact that Officer Cruz didn't know in

9   realtime what was happening to Officer Edwards makes their

10  burden absolutely impossible because they have to prove beyond

11  a reasonable doubt that Mr. Johnson did know in realtime what

12  was happening, and they just have no evidence to support that

13  and the law is quite clear on that.

14          Finally, though, if Your Honor does not dismiss the

15  111 count against -- relating to Officer Edwards against

16  Mr. Johnson, there's also the issue of the body injury

17  allegation in that charge.  If the Court were to nonetheless

18  sustain that charge, it should dismiss the bodily injury part

19  of it relating to Mr. Johnson, because to be guilty of that

20  part you have to inflict the bodily injury.  We cited law in

21  our trial memo, "inflict" in this context means to be the

22  direct physical cause, which is a standard above proximate

23  cause.  So even -- taking all the testimony I just cited would

24  certainly establish that Mr. Johnson was not the direct

25  physical cause of her injuries.

1          Count 3 is the -- also 111 charge against Mr. Johnson
2     relating to Officer Cruz.  We acknowledged in opening that
3     Mr. Johnson accepts responsibility for that.  The statutory
4     aggravators, though, we'd argue he's not -- should be removed,
5     which are the 111(b) allegations in that charge.
6          First, relating to injury to Officer Cruz, I don't
7     even think the Government is going forward on that.  Officer
8     Cruz said he had a couple bruises that he couldn't attribute to
9     any point in the day, much less beyond a reasonable doubt
10    caused from Mr. Johnson's conduct.
11         Relating to whether the bike rack was used in a manner
12    to be a deadly or dangerous weapon, it requires Mr. Johnson to
13    have used an item that's capable of being a deadly or dangerous
14    weapon, meaning it's capable of causing significant bodily
15    injury, which is a very high standard, and it has to be used in
16    a manner likely to do that.  Again, we cited a number of cases
17    saying it has to be likely to.  If you take the "likely to"
18    out, the definition doesn't mean much.  It gets back to just
19    theoretically capable.
20         So when the -- the way to evaluate "likely to" is to
21    look to what happened to the two officers who were in the line
22    that Mr. Johnson was pushing towards, which was Sergeant Lively
23    and Officer Cruz.  Neither of them got any injury they could
24    identify relating to the bike rack incident.  And so how is it
25    possible that he used it in a manner likely to cause such

1    serious injury if it did not, in fact, cause any injury?

2    That's just improbable.

3          And of course, that same issue to the extent the Court

4    upholds count 2 against Mr. Johnson, the same deadly or

5    dangerous weapon analysis applies thereto.

6          The next thing I want to address is counts 5 through

7    7.  Those are the counts under 1752, which are the Secret

8    Service counts relating to a Secret Service protectee.  We

9    filed a position on that last night on the legal requirement.

10   We believe it requires the Government to have shown that the

11   defendants knew not only that the area was closed but that a

12   Secret Service protectee was visiting.

13         Judge Lamberth has concluded that.  The 4th Circuit

14   has concluded that.  A long line of Supreme Court cases on

15   interpreting a knowing element all establish that they have to

16   prove that.  They just put in no evidence whatsoever that he

17   knew, and the Court can't just simply make a beyond a

18   reasonable doubt finding based on, you know, it's something

19   that people generally knew.

20         In addition to those counts, if the Court does uphold

21   and leave these counts in the case, they have the same

22   statutory aggravators as counts 2 and 3, using a deadly or

23   dangerous weapon for injury, and, in fact, the injury

24   aggravator is a much higher burden than it is for counts 2 and

25   3 for counts 5 through 7.  It's significant bodily injury,

1    which is a much higher standard.  Again, if the Court leaves 5

2    through 7 in the case, it should at least narrow them because

3    the Government hasn't proven those statutory aggravators.

4            Finally, Your Honor, the last count I want to address

5    related to Mr. Johnson is count 10.  That's the obstruction

6    count.  As I said in the opening, Mr. Johnson's conduct

7    throughout the day, he's not proud of it but he also didn't

8    evidence an intent, much less beyond a reasonable doubt to be

9    impeding or obstructing Congress.

10           He very clearly wanted to get somewhere where he could

11   protest and be heard, but then once he got past the Peace

12   Circle fence line he hung way back in the grassy area,

13   sometimes right on the edge of the concrete, right near the

14   grassy area.

15           Not only did he not try to go to the Capitol building,

16   get into the Capitol building, he wasn't in any of those lines

17   of people trying to push their way in.  He wasn't up on the

18   scaffolding, trying to get closer to the building, trying to

19   get through police lines.  He hung way back.  All of that is

20   consistent with an intent to protest, an intent to be heard,

21   but not an intent to actually impede Congressional proceedings.

22           So again, we think that count should be dismissed

23   against Mr. Johnson.

24           THE COURT:  Thank you.

25           MS. HALIM:  Good morning, Your Honor.

1          THE COURT:  Good morning.

2          MS. HALIM:  On behalf of Mr. Randolph, I move pursuant

3   to Rule 29 for a judgment of acquittal.  I'll summarize the

4   overview here.  It's going to be as to counts 1, count 2, the

5   greater offense, 111(b), count 3 in its entirety, counts 5, 6

6   and 7, count 8 and count 10.  So those are the counts for which

7   Mr. Randolph moves for a judgment as a matter of law that he is

8   not guilty, even taking all inferences in the light most

9   favorable to the Government at this juncture.

10          I will join in the arguments made by Mr. Feitel

11   regarding count 1, the civil disorder.  Mr. Randolph is charged

12   very clearly in count 1 with conduct that occurred at the Peace

13   Circle before a civil disturbance existed.  So a civil

14   disturbance did not exist at the time and those officers were

15   not there dealing with a civil disturbance at the time of the

16   alleged conduct.

17          With regard to count 2, I'm going to be very brief

18   here.  I will join in the remarks made by Mr. Woodward

19   regarding Ms. Edwards as it pertains to bodily injury and using

20   a deadly or dangerous weapon, also incorporating the remarks

21   and arguments made by Mr. Richman.

22          For count 3, Mr. Randolph was not -- count 3 pertains

23   to Officer Cruz for the bike rack portion of the events, and

24   then count 4 is an additional assault charge for the conduct

25   that occurred after Mr. Randolph crossed over the bike racks.

1    So I'll focus first on count 3.

2          Mr. Randolph was not at any point pushing or even

3    touching the rack where Officer Cruz was located.  And so he

4    cannot be found guilty of inflicting or causing any injury, nor

5    using that particular segment of the bike rack in any deadly or

6    dangerous way.  And in fact, didn't even rise to a level of a

7    111(a) with Mr. Randolph's conduct as it pertains to Officer

8    Cruz, as outlined in the indictment at count 3.

9          With respect to counts 5, 6 and 7, those are all the

10   18 U.S.C. 1752 charges, and all of those require that

11   Mr. Randolph knowingly be in a restricted area.  And as

12   Mr. Richman just articulated to the Court, a restricted area is

13   defined as an area protected by the Secret Service.

14         One, it wasn't proven that -- I'm not sure that it was

15   proven that that area at the Peace Circle was, in fact, an area

16   protected by the Secret Service, even with the transcript of

17   Lanelle Hawa that the parties stipulated to.

18         There were multiple reasons for that area to be

19   restricted, and it is not clear that an area that far removed

20   from the Capitol, which is where former Vice President Pence

21   was going to be visiting that day, it's not clear that it

22   extended that far out.  But even if the Court were to find that

23   it did, in fact, extend that far out, there's certainly

24   absolutely zero evidence that Mr. Randolph knew that.

25         And so for those reasons, pursuant to Rule 29,

1    Mr. Randolph moves for a judgment of acquittal for counts 5, 6

2    and 7.

3         Count 8 is one of the 40 U.S.C. 5104 charges.  There

4    are two of them.  And count 8 requires that Mr. Randolph act

5    with an intent to impede a session of Congress.  And when you

6    look at the indictment, the indictment is clear that those acts

7    are alleged to have occurred at the Peace Circle.  So nothing

8    that happened at any point thereafter, but just the activity at

9    the Peace Circle with the bike racks.  And there is zero

10   evidence whatsoever that Mr. Randolph acted in those moments

11   with the intent to impede any session of Congress.

12        So for that reason, the Government can't meet its

13   burden with respect to all of those elements for count 8.

14        And then finally, on count 10, I will, again, join the

15   remarks of, I believe it was, Mr. Woodward and Mr. Richman

16   regarding specifically the corruptly element.

17        The incident at the Peace Circle bike rack happened

18   before the Joint Session even began.  And then after the Peace

19   Circle, Mr. Randolph did remain on the grounds but he at

20   that -- he was doing nothing that could be construed as acting

21   corruptly.

22        In fact, I think it's Government's Exhibit 327, they

23   show a very brief clip of Mr. Randolph.  He's standing amongst

24   a very large crowd of people, but he's literally just standing

25   there.  In fact, he's sort of just looking off, sort of upward

1   and to his left at one point.  He has done nothing to act

2   corruptly, as that has been defined by, most recently, the D.C.

3   Circuit in the Robertson case.

4          He engaged in no violence.  There's no evidence

5   whatsoever.  This record is completely silent on Mr. Randolph's

6   intentions as it pertains to the certification of the Electoral

7   College vote.

8          And so for that reason, the Government cannot meet its

9   burden with respect to count 10 because they cannot demonstrate

10  that Mr. Randolph was acting corruptly.  Thank you, Your Honor.

11         MR. BRENNWALD:  Good morning, Your Honor.  Stephen

12  Brennwald for Mr. Blythe.  I'm going to join the arguments made

13  by every other lawyer who's gone so far, and especially as to

14  count 1, the argument made by counsel for Mr. Johnson.

15         Counts 2 and 3, the assaults against the two officers,

16  the Government has to prove that my client, Mr. Blythe, was

17  using those bike racks as a dangerous or deadly weapon as

18  opposed to a means, a tool, to push forward.  Frankly, it could

19  have been a tarp, it would have been any object whatsoever that

20  was interfering or blocking folks' entrance to that part of the

21  Capitol, and they would have pushed up against it.  The fact

22  that it was a bike rack was because that's what the Capitol

23  Police had placed there.

24         Mr. Blythe clearly in the videos did not pick up the

25  bike rack.  He shows up a couple seconds or a few seconds after

1    others had already picked it up.  He comes in and for about

2    three or four seconds pushes.

3            It's critical to note that with respect to Officer

4    Caroline Edwards, the bike rack, when he was pushing along with

5    others, made sort of an "A" shape, basically, where the middle

6    of the bike rack was being pushed forward.  That's where he

7    was.  The part where Officer Edwards was was further off to his

8    right and was not up against her at that moment.  It wasn't

9    until a couple other people pushed that forward separately,

10   separate, as Mr. Feitel referred to, as an intervening act,

11   that something happened to Officer Edwards.

12           But certainly, my client on the video does not look at

13   her before any of this happens.  There's no reason to think

14   that he had any specific intent to do anything that would cause

15   her any kind of injury or that he used a bike rack as a

16   dangerous or deadly weapon.

17           The assault, as the Court knows, has to be an

18   intentional attempt or threat to inflict injury upon someone

19   else.  And there's just no evidence that Mr. Blythe intended to

20   inflict injury or to even threaten that.  It was merely a way

21   of going forward from where they were at that point.

22           Again, it must be something done forcibly.

23           As to counts -- so my client's charged on counts 1, 2

24   and 3, at the beginning, and I've already adopted the arguments

25   of other counsel as to count 1, and I just argued counts 2 and

1    3.  He's also charged on counts 5 through 10.

2          As to counts 5, 6 and 7, again, we have the

3    requirement that there be a dangerous or deadly weapon and that

4    it be used in a restricted area.  Ms. Halim talked about the

5    restriction and Vice President Pence.  There's no evidence that

6    Mr. Blythe knew anything about Mr. Pence or Vice President

7    Pence having been in the building or on the grounds.

8          That's important because there are plenty of other

9    cases in this courthouse where it's been shown that a person

10   was aware that Vice President Pence was here, was doing

11   something, and people said, either in texts or on videos that

12   were recorded by either body-worn cameras or a third-party,

13   that Pence is a traitor, we have to go get Pence, things like

14   that.  In this case, there's just no evidence at all that

15   Mr. Blythe knew that Vice President Pence was there at that

16   time, such that the grounds would be restricted.

17         As to, again, the necessary use of a deadly or

18   dangerous weapon, I adopt the arguments I made earlier with

19   respect to that specific issue.  If the Court found that my

20   client did not use a dangerous or deadly weapon in that context

21   by those counts, he can be guilty of a lesser included offense

22   that does not involve the intentional use of a weapon that was

23   designed to hurt or injure people.

24         This is obvious but I think it's important to remember

25   that there were plenty of weapons there that day that were used

1    as deadly weapons.  Flagpoles being thrown.  People hitting

2    other people, using sprays as a weapon.  In this case, we had a

3    bike rack that was lifted by others and pushed upon by

4    Mr. Blythe for a few seconds.

5         Count 8, again, Ms. Halim talked about that very ably.

6    There has to be an intent to impede the orderly conduct of at

7    least one House of Congress.  So even if any conduct by

8    Mr. Blythe was disruptive at that point that day, there's no

9    proof that he intended to impede the orderly conduct of

10   Congress.

11        And that brings me to count 10, which is the

12   obstruction of an official proceeding.  Mr. Blythe, from what I

13   can tell, was outside of the Capitol for probably several

14   hours.  At any point -- at any point during the several hours,

15   he could have said, you know, I'm going to go in because I'm

16   not sure -- if I have the intent to obstruct, I'm going to go

17   in and see if I can make sure it's happening, or I'm going to

18   lend my body weight, 120 pounds of him, to go and do something.

19        He never once made a move to go in.  He was outside.

20   He was standing on that ledge where we saw earlier where the

21   officers came and pulled him down.  None of his text messages

22   to his mom, to whom you would think he would be honest and open

23   and tell her what he was thinking, talk about wanting to stop

24   the election.  He was there, like a lot of other people, to

25   basically -- I don't even know if I can say his voice -- he was

1    there to have his voice heard because you really don't see him

2    say anything, except for right before the police pull him down

3    he says a couple words that you can't tell.  They're not

4    audible.

5         So there's no proof that he intended to do anything

6    inside the Congress or obstruct anything.  There's no proof

7    that he knew, at that point in time, what was happening, who

8    was doing what and that his presence would cause any problems.

9         And this goes to the question I think Ms. Halim

10   mentioned, proximity.  How far outside the Capitol do you have

11   to be to interfere with the proceedings inside?  Let's say that

12   the Government or the Capitol Police or whoever is in charge of

13   security there inside the Capitol would say, we can't start the

14   proceedings again until we clear the building.  Okay.  So you

15   clear the building and lock the doors.  Does the fact that

16   Mr. Blythe is out there with a bunch of other people mean that

17   you can't restart or not?

18        THE COURT:  Just to clarify, and I want to hear from

19   other defendants on this too.  Is it your position that you

20   have to either be in the building or be attempting to get in

21   the building to be found guilty of the obstruction, impeding

22   element of the charges?

23        MR. BRENNWALD:  I guess as a law school question, no,

24   because anything's possible.

25        THE COURT:  Okay.

1          MR. BRENNWALD:  But I mention that proximity argument

2     because the reality of the situation that day was that they

3     kept going with the proceedings, even though some people had

4     gotten into the building.  And it wasn't until there were some

5     folks who were up against the House Chamber door, banging on

6     it, that they decided to evacuate the Vice President at about

7     2:00 something.

8          So I don't think I can honestly stand here and say

9     that you had to be inside to be guilty of that offense.  But I

10    also don't think that your mere presence outside, especially in

11    Mr. Blythe's case, where he's standing there with his arms

12    down, not doing anything, unless you're going to convict

13    everybody who's outside within 20, 30, 40 feet of the Capitol

14    who's literally doing nothing other than standing there.

15         He wasn't waving a flag.  He wasn't chanting.  He

16    wasn't saying, "USA, USA."  He wasn't doing anything other than

17    standing at some point there on top of whatever the ledge was

18    for the whole time.  He was just looking around.

19         And so I would submit that on the facts of his case,

20    because I don't think I can answer broadly -- the Court's

21    question broadly.  Under the facts of Mr. Blythe's case, I

22    submit that when you look at his location outside and you look

23    at the text messages or the lack of text messages indicating

24    any knowledge of specific proceedings inside, and if we assume

25    that he must have known what was going on inside, which I don't

1   think we can, we don't have any proof that he was of a corrupt

2   mind to say that I'm out here and I want to stop something from

3   happening.  I just don't think that there is enough evidence,

4   even looking at the case in the light most favorable to the

5   Government under Rule 29, to say that he's guilty of

6   obstruction of an official proceeding.

7        Just by contrast, as I think I might have mentioned in

8   opening, I had a client who texted after the events, about

9   two hours later, who said:  We were among the first to breach

10  the Capitol and it caused Pence to delay the proceedings.

11       That one little text encapsulates pretty much a lot of

12  things.  In this case, we don't need that necessarily but we

13  just don't have anything that would indicate that Mr. Blythe

14  wanted to go in and interfere with any proceedings.  So for all

15  those reasons, Your Honor, under Rule 29, Mr. Blythe moves for

16  acquittal on all the counts with which he is charged.

17       THE COURT:  Thank you.

18       MR. RICHMAN:  Your Honor, for Mr. Johnson, Ms. Halim

19  went after us.  We would join her argument with respect to

20  count 8.  And the Court said -- asked the question of

21  Mr. Brennwald and said you wanted to hear from all defendants.

22  I'll just give our answer on behalf of Mr. Johnson about

23  whether a person has to be inside the Capitol.

24       No.  That's not our argument.  Our argument, at least

25  on behalf of Mr. Johnson, is that the Court does need to make a

1  beyond a reasonable doubt finding in order to rule for the
2  Government, and the Government agrees with this, that he had an
3  attempt to impede or obstruct Congress.  And it can be made by
4  circumstantial evidence.  I'm sure somebody could be found
5  guilty of it that was not at the Capitol that day possibly.
6         But that's what -- the ruling the Court has to make,
7  and it can be from circumstantial or direct evidence.  For a
8  defendant that goes through Peace Circle and then hangs out way
9  outside, we submit that the evidence just doesn't support that
10 fact.
11        THE COURT:  Thank you.
12        All right.  I'll hear from the Government.
13        MR. MIRABELLI:  Your Honor, so the standard under
14 Rule 29 is that there is sufficient evidence to sustain a
15 conviction, or enough evidence to permit a rational jury or
16 fact finder to find the defendants guilty beyond a reasonable
17 doubt.
18        Kind of taking the defense arguments a little bit out
19 of order, as to counts 5 through 8, in United States versus
20 Couy Griffin, Judge McFadden explicitly denied these arguments
21 that these defendants had to actually know what protectee or
22 that there was a particular protectee present on the Capitol
23 grounds or the reason for the area being restricted.
24        Here in this case, we have all the defendants pushing
25 on a barricade that has "area closed" signs all across it,

that's blocked off and police officers are telling them not to

pass this area.  And they do that anyway.  They have now

entered into the restricted area and they don't need to know

particularly that the Vice President was visiting.  That's just

not supported by the law.

So going back to the argument as to count 1.  Your

Honor, these defendants, at the time they -- from the time

Mr. Samsel opened that first barricade and led the crowd

forward and Mr. Grant was waving the crowd on and Mr. Johnson

was encouraging the crowd and telling the officers to move, to

back up, that this was 1776, they had started the civil

disorder.

The officers went over to the area.  Some of the

officers, including, I believe it was Sergeant Lively, saw the

crowd breach and responded to that area.  And then the civil

disorder escalated when Ryan Samsel grabbed on to the barricade

and began pulling and pushing it, as did defendant Randolph.

And then all of them together lifted, pushed and pulled on the

barricade, driving back the officers.

Eventually, that civil disorder got so out of hand

that Congress had to go out of session.  In the testimony from

Lanelle Hawa, from the Secret Service, the transcript that's in

evidence, she talks about how the crowd outside the building

created a security risk to the Vice President, who was inside

the building.  That potentially the egress routes were being

1     compromised, their escape plan.

2          So to say that these officers weren't engaged or

3     responding to a civil disorder, I just don't think it's

4     factually supported.  And that civil disorder, of course, did

5     affect a federally protected function, that being what Congress

6     was doing that day.  And also, there's evidence that it did

7     affect interstate commerce.

8          So as to counts 2 and 3, there's been some

9     misstatements, I think, from some of the defendants about the

10    law, saying that -- for example, I think Mr. Brennwald just

11    said it has to be an intentional attempt or attempt to inflict

12    injury.

13         That may be the case for the assaultive prong.  But

14    for -- to be guilty of 111(b), the defendants have to either

15    assault, resist, oppose, impede, intimidate or interfere

16    with -- for count 2, it's Officer Edwards.  While Officer

17    Edwards is performing her official duties, they have to do such

18    acts forcibly and act with intent.

19         So really, what's at issue is whether or not the bike

20    rack is a deadly or dangerous weapon or their actions inflicted

21    body jury.  In this case, it's both.  The object is a deadly

22    and dangerous weapon if the object is capable of causing

23    serious bodily injury or death to another person and the

24    defendant used it in that manner.

25         Here, numerous videos show all the defendants lifting

1    and pushing on the metal barricade.  The right side of that

2    barricade, as from the rioter's perspective, moved further than

3    the left side because the force that these five defendants

4    applied to that barricade.  They drove that barricade at the

5    police officer, and I think the testimony said that the

6    officers went backwards, stumbled backwards 15 to 20 feet until

7    they fell onto the stairs, for David Cruz and for Tim Lively,

8    and then for Officer Edwards, of course, fell backwards and hit

9    her head on the stairs on the handrail.

10           The object only has to be used in a manner capable of

11   causing serious injury or death.  Here we could argue that it

12   did, in fact, cause serious bodily injury to Officer Edwards in

13   the manner that it was used.

14           The manner in which it's used also ties into the

15   aiding and abetting argument.  Because the manner in which

16   these defendants used it factually was that all five of them --

17   well, four of them lifted and then pushed on it and then a

18   fifth defendant, defendant Blythe, seeing this, joins in the

19   push.

20           So to say that defendant Blythe is somehow less

21   culpable or something because he didn't participate in the

22   initial lift I think is incorrect.  He sees what's going on and

23   joins that push, knowing full well what -- having maybe a

24   broader perspective of what's going on on that police line.

25           The object, Your Honor -- and this kind of -- the fact

```
1    that it did actually cause serious bodily injury to Officer
2    Edwards leads to the alternative way this can be proven.  Even
3    if this Court find that this is not a deadly and dangerous
4    weapon, that the bike racks are, which we, again,
5    full-heartedly argue that they are, the Court heard about the
6    intense head pain that Officer Edwards felt on the evening of
7    January 6th, the bouts of passing out that she suffered, the
8    physical therapy she had to go through, the treatments, the
9    medication, the months-long recovery from concussion symptoms.
10   All from losing her footing by being pushed back by this
11   barricade, getting struck in the face by the barricade itself,
12   causing the swelling to her eye and then falling back and
13   hitting her head.
14          The word "inflict," unlike defense suggests, does not
15   require but-for causation.  Again, we don't have to prove that
16   they intended to inflict harm.  Only that they intended to
17   impose, impede, intimidate, all those verbs, and that they did,
18   in fact, cause harm in the course of doing so or cause bodily
19   injury in the course of doing so.
20          I think this is from the Government's trial brief,
21   backed up by United States versus Jackson, where in that case
22   marshals were running after the defendant, the defendant was
23   squirming, and in the course of trying to place handcuffs on
24   the defendant, the marshal I think tore a ligament in his
25   thumb.
```

```
1            And even though that wasn't -- I think the argument in
2     that said that the officer was hurt in the course of trying to
3     place this person under arrest, it wasn't like that person
4     directly twisted the thumb or something.  But they still upheld
5     the conviction for the 111(b).
6            And also, I think U.S. v. Rivera, 607 F. Supp from the
7     District of Columbia from 2022, deals with kind of this joint
8     causation in the January 6th context.  Now, this deems with a
9     1752(a)(2) count, but the Court said in that case that,
10    basically, causation elements shouldn't be read into the
11    statute.
12           The Court in that case found that courts have not
13    always required strict but-for causality, but under
14    circumstances a crime may involve multiple sufficient causes
15    that independently but concurrently produce a result.  In
16    determining whether but-for causation is required, the Court
17    looks at both text and context.  And talking about 1752(a)(2),
18    in this statute there's no language that would suggest but-for
19    causation, such as results from or because of.
20           I think the idea that these defendants can avoid
21    liability because they acted in a group, that that is somehow
22    some sort of intervening cause, really would frustrate the
23    purpose of the statute.  And of course, we have also charged
24    aiding and abetting.  They worked together.  Their combined
25    force lifting and pushing on the barricade, they jointly sought
```

1    to overrun every officer on that police line, and in the course

2    of doing so, injured Officer Edwards.

3            We heard about how heavy and unwieldy the bike racks

4    were, how heavy and unwieldy they are.  You can see these two

5    sections of bike racks in the courtroom.  This is the space

6    that these five defendants were spread across.  Three officers

7    were on the other side of that.  And these were further linked

8    to other bike racks.  These defendants lifted these two

9    sections together and drove it at the officers.  To say that

10   they were unaware of what was going on is just absurd.

11           As to count 3, the defendants -- this deals with David

12   Cruz.  The defendants are using the same object at the same

13   time in the same manner.  They are all principals and they're

14   all aiders and abettors.

15           David Cruz testified that the barricades can be

16   removed in other ways.  They could have been pulled away.  And

17   the Court saw evidence of a rioter dragging two sections of

18   barricades away at the top of Pennsylvania walkway.  But

19   instead, these defendants, as David Cruz testified, pushed

20   these at them, such that he thought he was going to be

21   trampled.  Sergeant Lively said they crushed us with the

22   barricades.  And we know what happened to Officer Edwards.

23           THE COURT:  Just to clarify, which is what I

24   understood going forward, you're not -- the Government's not

25   contending that Officer Cruz sustained any significant or

1    serious injury.  It's the use of the dangerous weapon to commit

2    assault and the physical contact.

3          MR. MIRABELLI:  Correct, Your Honor.  I think the

4    charge in the indictment for count 2 and 3, the actual language

5    in the charge is specific that we charge inflict bodily jury

6    for Caroline Edwards but not for David Cruz.  I think there's

7    some language in the broader text of the indictment that says

8    or inflict bodily injury.  We are not moving forward on that

9    theory for David Cruz.  It's the theory that they used this

10   weapon in the same way that they used it against Officer

11   Edwards at the same time, in the same manner.

12         And also, it's important to note, too, that they're

13   also charged, I believe, with attempt as well for David Cruz.

14   So if they were intending to assault him -- but again, they

15   could also just intend to impede, impose or interfere with him.

16   But if they were intending to assault him and they didn't cause

17   physical injury, they still attempted to.

18         So talking about the 1512 a little bit in count 10,

19   and I recognize I took this a little bit out of order.  The

20   Government has to prove that the defendants attempted to or did

21   obstruct or impede an official proceeding.  That they intended

22   to obstruct and impede the official proceeding.  They acted

23   knowingly with awareness of the natural and probable effect of

24   their conduct and that they acted corruptly.

25         Your Honor, the circumstances surrounding the

1   defendants' assaultive conduct certainly provides sufficient

2   evidence to sustain a conviction on 1512.  Each of these

3   defendants acted corruptly by assaulting law enforcement and

4   forcibly entering the restricted grounds.

5           And we know from the transcripts of Inspector Hawa of

6   the Secret Service and Daniel Schwager of the U.S. Senate, as

7   well as the court testimony of Lieutenant McCree, that the

8   official proceeding was, in fact, halted as a result of the

9   riot.  Specifically, Inspector Hawa discusses in her transcript

10  the security concerns of the rioters advancing on the building.

11          So what's really at issue here, Your Honor, is intent.

12  And, of course, case law is well settled that intent may be

13  inferred from the circumstances surrounding a defendant's

14  actions.

15          In the absence -- I'm sorry, Your Honor.  For example,

16  in United States versus McCaughey, 21 CR 40, Judge McFadden

17  relied in part on the circumstances surrounding the defendant's

18  assaultive conduct to infer their intent to obstruct the

19  Congressional certification proceedings for the purpose of

20  Section 1512.

21          Specifically, Judge McFadden stated that where the

22  defendants were shown to have involved themselves in a violent

23  struggle to enter the building, that's where the certification

24  was supposed to be occurring, it is natural to assume that

25  someone who is willing to battle police to get inside the

1    building must have a great interest in what's going on inside.

2            Recognizing we're analogizing this to they had great

3    interest in what was going on on the grounds.  And only one of

4    these defendants entered the building, but all of them stayed

5    on the West Front for several hours.  I think the shortest --

6    the person who was there the shortest was actually defendant

7    Samsel.  But during that time, Mr. Samsel engaged in numerous

8    corrupt acts, numerous incidents of assaultive conduct.

9            Defendant Samsel opened the gate at the Peace Circle

10   and walked towards the police line denoted by the second row of

11   barriers marked with "area closed" signs.

12           Defendant Grant was jumping up and down and waving the

13   crowd forward.

14           Defendant Johnson had been inciting the crowd through

15   his megaphone, comparing the moment to the American Revolution,

16   and then directs his statements toward the police, telling them

17   to move and back off because this is their house.

18           Defendant Blythe and Randolph weaved through the crowd

19   at the Peace Circle to get to the front of the line up against

20   the police.  And in the beginning of Government's Exhibit 308,

21   as the crowd advances to the police line, you can see Randolph

22   weave through the crowd as the whole crowd is chanting "Stop

23   the Steal."

24       It's important to note that, as Randolph said in his

25   statement to the undercover, they had left and went to the

1   Peace Circle prior to the end of Donald Trump's speech.  They

2   went to the Capitol -- there's -- the circumstantial inference

3   can be drawn that they went to the Capitol because of the

4   official proceeding.  They could have protested at the White

5   House, the Ellipse.  They could have went on the Capitol Mall.

6       But they chose to go to the United States Capitol on

7   January 6, 2021.  The date that -- there's evidence in the

8   record about what happened statutorily on that date inside the

9   United States Congress.

10      Each of the defendants corroborated their intent through

11  their words and actions.  Defendant Johnson specifically

12  references the official proceedings several times, yelling at

13  the crowd through his megaphone.  "They're debating because

14  they're scared now."  "We got to move."  "They just stole it."

15  "They certified the vote."  He's trying to get the crowd angry

16  about the fact that Congress is moving forward with the

17  official proceeding that is going on inside the very building

18  that he's outside of.

19          And then this argument that he's out on the lawn, far

20  away.  He's out on the lawn far away, Your Honor, because he's

21  trying to get people to move around to the East Front and

22  surround the Capitol building.

23          Defendant Randolph moves through the crowd and makes

24  his way to the Upper Terrace at a time when it is overrun with

25  people.  He stays long enough to get there, to climb up to the

1   top, and despite, as Captain Augustine discussed, there was

2   tear gas in the air, the recorded messages telling the crowd to

3   disperse, and the lines of police blocking his way.

4        He stays long enough to witness the heave-hos

5   occurring at the tunnel, as the crowd tried to crush police

6   officers there and drag them into the crowd, until they were

7   able to gain entry.  These circumstances show that Randolph, to

8   quote Judge McFadden, had a great interest in what was going on

9   inside.

10        Likewise for defendant Blythe.  He also ascends the

11  Upper West Terrace through tear gas and dispersal orders, and

12  continues to resist police as they try to remove him at

13  4:40 p.m.  Defendant Blythe was -- of these five defendants,

14  the evidence shows that he was there the longest.  He stayed

15  there for so long because he, too, had a great interest in what

16  was going on inside and advanced on the building, and he came

17  to the Capitol wearing a military helmet, wearing body armor,

18  prepared for violence.

19        Samsel specifically texts about being proud of

20  starting the whole thing.  Texts pictures of himself pulling on

21  the police shield and describes himself as breaking through the

22  line.  And on the morning of January 6th, he texted:  Fucking

23  democrats won Georgia.  See you soon.

24        And then he went on to participate in the first breach

25  of the Capitol grounds.  The first to violently pull on the

1    barricades.  The first to push and attack police officers, even

2    after others in the crowd tried to calm him down.  But he

3    attacked anyway.  And he didn't stop attacking for about an

4    hour and a half.

5          He wanted to go to the Capitol because he was clearly

6    upset about the results of what happened in Georgia.  I think

7    it's reasonable and a reasonable fact finder could find that

8    the results of the election recount in Georgia drove him to the

9    Capitol grounds and that, because of that, he knew what was

10   going on inside the Capitol building that day.

11         There's evidence in the Congressional record which was

12   in evidence.  The Court took judicial notice of it and we

13   entered it as an exhibit.  It specifically details the

14   objections to the Electoral College vote from the State of

15   Georgia, the allegations of fraud there, the objection by

16   members of the United States Congress and the certifying of

17   those -- of that state's votes for President Biden.

18         Similar to Samsel, defendant Grant also messages

19   members of the Georgia legislature, I think five days before

20   January 6th, telling them to decertify or the nation is over

21   and the rule of law will break down.  And then he goes to the

22   Capitol building and participates in a breakdown of the rule of

23   law.

24         All these circumstances are such that a reasonable

25   fact finder could find that the defendants are guilty and it is

1    enough to sustain a conviction on that count.

2          Just one moment, Your Honor.

3          THE COURT:  Sure.

4          MR. MIRABELLI:  I'm sorry, I should have covered this

5    earlier.  Regarding the kind of forcible element under 111(b),

6    or 111(a), for that matter, the forcible nature, all these

7    defendants did act with force.  I think Mr. Richman described

8    it that the Court has to find that they directed their force at

9    a particular identifiable victim.  That's not what forcible

10   requires.  It's a forcible act.  And they directed this at the

11   police line and, in the course of doing so, caused injury.

12         I think just kind of going through some of the

13   defendants' arguments, Mr. Feitel said that what happened to

14   Caroline Edwards was not foreseeable to Mr. Grant.  He was the

15   one waving the whole crowd forward.  So to say that it wasn't

16   foreseeable for others in the crowd to push on that fence along

17   with him and lift on it along with him, it just doesn't comport

18   with the facts.

19         I think there's also evidence -- sorry, Your Honor.

20         THE COURT:  Take your time.

21         MR. MIRABELLI:  And as to the statements from

22   Mr. Grant, Your Honor can use First Amendment speech as

23   evidence of intent.  That comes from Wisconsin v. Mitchell, 508

24   U.S. 476 from 1993.

25         Just one moment.

1          THE COURT:  Sure.

2          MR. MIRABELLI:  Your Honor, if the Court has any

3     questions, I'm happy to answer.  If not, I think that's all.

4          THE COURT:  I just have a question just because so

5     many of the defendants focused on the nature of the bike racks

6     as a dangerous or deadly weapon.  So I just wanted to get the

7     Government's position.

8          Obviously, if someone -- I don't think the defendants

9     would disagree, maybe they would, but if I were to be able to

10    lift this and whack someone over the head with it with a lot of

11    force, I think probably they would all agree that was used in a

12    manner that makes this a dangerous or deadly weapon, even

13    though it has an everyday use that's not inherently dangerous.

14         On the other side, if I push it and, as what happened

15    here, someone falls, hits their head, is knocked unconscious,

16    that could be significant injury that might satisfy that

17    element.

18         So I guess my question is if I pick this up and use it

19    to push against someone, and there weren't any stairs behind

20    any of the officers or anything they could trip on or fall on

21    or hit their head on, would you argument be the same that the

22    act of pushing it towards someone is using it as a dangerous or

23    deadly weapon?

24         MR. MIRABELLI:  I think, Your Honor, it's very fact

25    specific.  I mean, if this is one individual picking up one

1    bike rack and pushing it, if that person is strong enough and

2    able to lift that in such a manner that generates enough force

3    to run that person to the ground and that person is injured in

4    the course of that, doesn't matter if there's steps behind them

5    or not or if the bike rack itself injures them, I mean, it's

6    like --

7              THE COURT:  What if they're not injured?

8              MR. MIRABELLI:  I think it's still capable.  It's

9    still capable or potentially causing that injury.  That's all

10   we have to prove to say that this is a dangerous or deadly

11   weapon.  It's not necessarily that they are, in fact, injured.

12   I mean, here we do have serious injury, and the facts here are

13   such that there were stairs and handrails behind, and that the

14   defendants saw that, and they knew they were pushing as hard as

15   they could at a line of police officers towards the steps.

16             Officer Cruz, given his training and stressful

17   scenarios like this, was thinking about the stairs behind him.

18   He testified to that, that he was concerned about getting

19   pinned up against those stairs or falling underneath the bike

20   rack and being trampled.  I think the fact that the stairs were

21   there go to the circumstances of the use as a dangerous weapon.

22             I think, also, the fact that multiple people lifted on

23   it.  There wasn't this -- we didn't charge a conspiracy but

24   there was this implicit agreement here.  As they're all kind of

25   lifting and pushing, they're all moving it in the same

1    direction.  And then as to defendant Blythe, as he sees it go

2    up and sees it go back, he joins in that push, knowing full

3    well what's going on across that police line.

4         To say that they have to direct that force at a

5    particular office is just not true.  All these police officers

6    were being overrun by these bike racks.  So I think the manner

7    in which it was used potentially by one defendant could -- you

8    know, one bike rack, one defendant, driving a particular

9    officer to the ground if that person is strong enough to do

10   that, I think could be a deadly or dangerous weapon in and of

11   itself, but there might be circumstances where it's not.  Where

12   they're sliding it against the ground and hits their waist and

13   just kind of nudges them back, that's a different scenario than

14   what we have here.

15        THE COURT:  All right.  I'm going to reserve on the

16   motion, so that we can proceed to defense cases.

17        MR. WOODWARD:  Your Honor, on behalf of Mr. Samsel,

18   can I just note for the record that we also join and adopt the

19   arguments of our co-defense counsel.

20        THE COURT:  Okay.

21        MR. WOODWARD:  Well, all those arguments except those

22   that blame Mr. Samsel for the assault, despite the fact that

23   he's the only one that went around and tried to assist Officer

24   Edwards up.  Just so the record is clear.  Thank you.

25        THE COURT:  Okay.

1          MR. RICHMAN:  I'm sorry, I know the Court wants to

2     move forward.

3          THE COURT:  No, that's okay.  This is important.

4          MR. RICHMAN:  Very brief thing to respond to.  The

5     Government said the Court could convict on an attempt theory on

6     counts 2 and 3.  That's just not true.  As the Court probably

7     knows, there is an aiding and abetting statute which covers all

8     criminal offenses, which is Section 2.  There is not such a

9     statute for attempt.  It's only criminal statutes that say

10    whoever does "X" or attempts to do so, those statutes, attempt

11    is a crime.  That's not in 111, nor is the word "attempt" in

12    count 2 or count 3.  So an attempt theory is just not relevant

13    to counts 2 and 3.

14         THE COURT:  Okay.

15         MR. MIRABELLI:  I apologize for that, Your Honor.  I

16    think I misspoke.  So there is attempt charged for several --

17    there is an attempt charge for several of the counts.  I

18    thought it was for 2 and 3 as well, but I apologize.  It's the

19    aiding and abetting for count 2 and 3.  But civil disorder is

20    also an attempt, I believe.  So yes, so under that theory, even

21    if -- you know, I think that the Court could convict on the

22    attempt as well.  I apologize.  Thank you.

23         THE COURT:  No problem.  Okay.  Anyone else want to be

24    heard on anything impacting the Rule 29 motions?

25         MR. BRENNWALD:  Your Honor, I don't think anybody said

1    this.  I think the Court knows it, but I just want to reiterate

2    that none of these people knew each other before that day.  I

3    don't think there's any evidence that they did.  They just all

4    happened to all come together at the same place at the same

5    time.  And I think that's important to note.

6             THE COURT:  Okay.  So with the Government having

7    rested we can move to the defense cases.  Are we proceeding in

8    order of indictment?

9             MR. WOODWARD:  Yes, Your Honor.

10            THE COURT:  Okay.  Let me go around and see if any

11   defendants intend to present a case.  And if anyone does, then

12   we can deal with the Government's trial procedures motion.

13            Okay.  Mr. Samsel, do you intend to present a defense

14   case?

15            MR. WOODWARD:  Your Honor, we have one exhibit, which

16   is a CCTV video, that we would move into evidence.  I provided

17   it to the Government this morning.  It would be, I think, DS02.

18   I think we only had the one other exhibit.  We'll show it in

19   closing.  We don't need to show it to the Court.

20            THE COURT:  Okay.  I'm just going to around and see

21   who has a defense -- you only intend to move in an exhibit in

22   your case?

23            MR. WOODWARD:  Yes, Your Honor.

24            THE COURT:  Okay.  Mr. Feitel, do you intend to

25   present a defense case?

```
 1            MR. FEITEL:  If only the Government had put on a
 2    stronger case, maybe we would have.  But given what they have,
 3    we're going to rest without putting on any evidence.
 4            THE COURT:  Does Mr. Johnson intend to present a
 5    defense case?
 6            MS. ROSEN:  No, Your Honor.  We rest.
 7            THE COURT:  Okay.  Does Mr. Randolph?
 8            MS. HALIM:  Mr. Randolph has one exhibit that he will
 9    admit that the Government -- it's a video of body-worn camera
10    from the Metropolitan Police Department, and the Government has
11    agreed that they will not object.
12            THE COURT:  Other than that, do you intend to call any
13    witnesses?
14            MS. HALIM:  No, no witnesses.
15            THE COURT:  Mr. Brennwald, do you intend to present a
16    defense case?
17            MR. BRENNWALD:  Your Honor, we do not, given the
18    Government's case at this posture.  We intended to but given
19    what has come out, we don't see a point in doing that.  There
20    is one exhibit that I wanted to move into evidence.  The
21    Government does not object to it.
22            THE COURT:  Okay.
23            MR. BRENNWALD:  And that is Government's Exhibit 405,
24    which is a body-worn camera footage that shows the incident on
25    the upper area where Mr. Blythe was placed on the ground.
```

```
1              THE COURT:  All right.  So then I need to inquire of
2      the defendants -- I'll probably do that after we take our
3      mid-morning break.  But for the Government, I think this makes
4      the trial procedures issue -- I can deny it as moot because
5      there are no witnesses that will be called.
6              Okay.  So let's take our 10-minute mid-morning break
7      and then when we come back I will inquire of the defendants,
8      just concerning their understanding of their right to testify
9      in their own defense if they choose to.  And then we'll proceed
10     from there.
11             All right.  Ten minutes.
12        (A recess was taken at 11:23 AM)
13             THE COURT:  Okay.  So I need to -- sorry.
14             DEPUTY CLERK:  We're waiting on two defendants.
15             THE COURT:  Can't start without them.
16             Okay.  So I need to make inquiries of the defendants
17     to make sure they understand their right to testify.  Is there
18     any -- because the questions I'm asking everyone is the same,
19     is there any objection to me asking the question and then
20     asking each defendant, or do counsel want me to make separate
21     inquiries?
22             Mr. Woodward?
23             MR. WOODWARD:  No objection to doing it collectively.
24             THE COURT:  Mr. Feitel?
25             MR. FEITEL:  As long as it's not an indication of
```

1    collective guilt, I'm perfectly fine with that.

2                MR. BRENNWALD:  No objection.

3                MS. HALIM:  No objection.

4                MS. ROSEN:  No objection.

5                THE COURT:  So your lawyers have each indicated to me

6    that you don't intend to call any witnesses in your defense at

7    this trial.  So I wanted to make sure that you all understood

8    that you have an absolute right to testify or not to testify.

9    So if it's your decision not to testify, I will not hold that

10   and cannot hold that against you, because it is the

11   Government's burden.  So I'm not going to make or draw any

12   negative inferences or assumptions from your decision not to

13   testify.

14               On the other hand, however, you have a right to

15   testify.  And that is your decision to make.  So it is your

16   lawyer's obligation and responsibility to give you their

17   professional advice about whether or not you should testify,

18   whether or not they think it would be helpful, whether or not

19   they don't think it's necessary.  That's their job.  And you

20   should consider that advice in making a decision, but it is

21   your independent decision.

22               So that means that if your lawyer -- and again, I'm

23   not interested in inquiring as to what your lawyer did or did

24   not tell you, but if your lawyer tells you, I don't think it

25   would be a good idea to testify, if you want to testify, it's

1  your decision.  So it would be your right and responsibility to

2  say, regardless of what you advise me, I do want to testify.

3  Because it is your right to do so.

4          So I do want to make sure that the decision you've

5  made not to testify is your decision, that you understand you

6  have the right to testify and that you have made the decision

7  with the consultation of your lawyer but independently and on

8  your own that you don't wish to testify in the case.

9          So Mr. Samsel, I want to start with you.  Mr. Woodward

10  has reported that you are not interested in testifying, you

11  don't intend to take the stand.  Is that correct?

12          DEFENDANT SAMSEL:  Yes, ma'am.

13          THE COURT:  Do you have a microphone to talk into?

14          Did you have enough time to speak to him about

15  testifying and whether or not you should do it, without telling

16  me any advice that he may have given you?

17          DEFENDANT SAMSEL:  Yes, ma'am.

18          THE COURT:  And it is your decision not to testify?

19          DEFENDANT SAMSEL:  Yes.

20          THE COURT:  All right.  Next, Mr. Grant.  Have you had

21  enough time to talk to Mr. Feitel about whether or not you

22  should testify in the case?

23          DEFENDANT GRANT:  Yes, Your Honor.

24          THE COURT:  And you understand that you do have a

25  right to testify if you want to?

```
 1                  DEFENDANT GRANT:  Yes, Your Honor, I understand.
 2                  THE COURT:  And your decision is not to testify?
 3                  DEFENDANT GRANT:  Yes, that's correct, Your Honor.
 4                  THE COURT:  Mr. Johnson.  You can come up.  That's
 5       easier.
 6                  DEFENDANT JOHNSON:  How are you doing, Your Honor?
 7                  THE COURT:  Have you had enough time to talk to your
 8       lawyers about whether or not you should testify in the case?
 9                  DEFENDANT JOHNSON:  Yes, Your Honor.
10                  THE COURT:  Is it correct that it's your decision that
11       you do not want to testify?
12                  DEFENDANT JOHNSON:  That is correct, Your Honor.
13                  THE COURT:  And that's your decision?
14                  DEFENDANT JOHNSON:  Yes, Your Honor.
15                  THE COURT:  And you understand you obviously have a
16       right to if you want to?
17                  DEFENDANT JOHNSON:  Yes, Your Honor.  Thank you.
18                  THE COURT:  All right.  Mr. Randolph, do you want to
19       step forward?
20                  So Mr. Randolph, same questions.  Have you had enough
21       time to talk to your attorney about whether or not you want to
22       testify or should testify in the case?
23                  DEFENDANT RANDOLPH:  Yes, Your Honor.
24                  THE COURT:  She's informed me that you don't intend to
25       testify or present any witnesses.
```

```
1                DEFENDANT RANDOLPH:  That's correct.
2                THE COURT:  And is that your decision not to testify?
3                DEFENDANT RANDOLPH:  Yes.
4                THE COURT:  And you understand that you have a right
5    to if you wanted to?
6                DEFENDANT RANDOLPH:  Yes.
7                THE COURT:  Finally, Mr. Blythe.  So I understood from
8    opening statements that initially you were considering
9    testifying.  So you don't have to answer that explicitly, but I
10   want to make sure you understand that you have the right to
11   testify if you want to.  Do you understand that?
12               DEFENDANT BLYTHE:  Yes, Your Honor.
13               THE COURT:  Have you had enough time to talk to your
14   attorney about whether or not you should testify in the case?
15               DEFENDANT BLYTHE:  Yes, Your Honor.
16               THE COURT:  He's informed me that you do not intend or
17   wish to testify.
18               DEFENDANT BLYTHE:  Yes, Your Honor.
19               THE COURT:  And is that your decision?
20               DEFENDANT BLYTHE:  Yes, Your Honor.
21               THE COURT:  Thank you.
22               Is the Government satisfied with my inquiry of the
23   defendants?
24               MR. MIRABELLI:  Yes, Your Honor.
25               THE COURT:  So I've inquired of the defendants, I've
```

1    explained that they have an absolute right to testify or not to

2    testify.  They've chosen not to testify.  I'm confident and

3    satisfied that they've talked to their counsel about that

4    decision and have made their decisions voluntarily.

5              Okay.  So with that, we'll start with Mr. Samsel's

6    case.  Did you want to move in your exhibit, Mr. Woodward?

7              MR. WOODWARD:  Yes, Your Honor.  So it is -- would be

8    defense -- DS2.  It is CCTV footage.  It actually is an exhibit

9    the Government admitted in another trial, and so we're just

10   seeking to admit it here and will reference it in closing.

11             THE COURT:  Okay.  Any objection?

12             MR. MIRABELLI:  No objection, Your Honor.

13             THE COURT:  Okay.  So DS2 is admitted.

14        (Defense Exhibit DS2 received in evidence.)

15             MR. WOODWARD:  There's also a text message from

16   Mr. Samsel's phone.  It is between -- I'm trying to find it.

17   It is between he and Rachel Genco, his girlfriend at the time.

18   It occurs after the fact.

19             If I could have the Court's brief indulgence, but

20   after that we would be resting.

21             THE COURT:  Sure.

22             MR. WOODWARD:  I'm just trying to find it and then

23   I'll share with the Government.  I have not previously shared

24   it with the Government.

25             THE COURT:  Okay.  Do you want to take a minute to

```
1    find it now?
2              MR. WOODWARD:  Yeah but I don't want to hold things
3    up.  So if we can just come back to me, I'll try to find it
4    quickly.
5              THE COURT:  Okay.
6              MR. WOODWARD:  Otherwise, we do intend to rest.  And
7    then we would renew our Rule 29 motion, but unless the Court
8    asks us to, we won't argue again.
9              THE COURT:  Okay.  Mr. Feitel?
10             MR. FEITEL:  We'll rest, Your Honor.
11             THE COURT:  Okay.
12             MR. FEITEL:  I'll have what Mr. Woodward is having
13   with respect to Rule 29.
14             THE COURT:  Okay.  On behalf of Mr. Johnson.
15             MS. ROSEN:  We have no evidence to offer to the Court.
16   We would rest and renew our Rule 29 motions at this juncture.
17             THE COURT:  Okay.  On behalf of Mr. Randolph.
18             MS. HALIM:  On behalf of Mr. Randolph, I do have an
19   exhibit that I would like to both play in court and move into
20   the record.
21             THE COURT:  Okay.
22             MS. HALIM:  Your Honor, I have here, which is I
23   believe up on the screen.  Yes.  What I have premarked as
24   Randolph 2.  This is body-worn camera from one of the MPD
25   officers on January 6th.  And I'll note for the record that the
```

1    time and date stamp reflects January 6, 2021, at 15:27:20,

2    which is 3:27 p.m.  I move for the admission of Randolph 2.

3            THE COURT:  Okay.  Any objection?

4            MR. MIRABELLI:  No objection, Your Honor.

5            THE COURT:  Okay.  Randolph 2 is admitted.

6        (Defense Exhibit DR2 received in evidence.)

7            MS. HALIM:  Thank you.  And I will at this time play

8    it for the Court.  It's a little less than the two minutes and

9    30 seconds that's noted here.

10       (Video played.)

11           MS. HALIM:  Your Honor, for the record, I'm going to

12   mute the audio from this point forward.  It's not pertinent to

13   Mr. Randolph's exhibit.

14       (Video played.)

15           MS. HALIM:  At this point, we're at the 1:46 mark.

16   I'm going to reduce the speed to .5.

17           THE COURT:  Okay.

18       (Video played.)

19           MS. HALIM:  And I am stopping at the 1:50 mark.  So

20   for the record, Randolph 2 played from zero to 1:50.

21           And with that, Your Honor, Mr. Randolph rests.

22           THE COURT:  Okay.

23           MS. HALIM:  And I will renew the Rule 29 motions made

24   on behalf of Mr. Randolph as well.

25           THE COURT:  Okay.  Thank you.

1          MS. HALIM:  Thank you, Your Honor.

2          THE COURT:  And Mr. Blythe.

3          MR. BRENNWALD:  Your Honor, we would ask the

4    Government to play Government's Exhibit 405.  It's body-worn

5    camera footage.  The Government does not object.  And although

6    it only lasts 20 seconds or so, our concern, what I'd like the

7    Court to look at --

8          THE COURT:  This is not in already?

9          MR. BRENNWALD:  No, it's not, Your Honor.

10          THE COURT:  Are you moving it in now?

11          MR. BRENNWALD:  I am moving it in as DB1.

12          MR. MIRABELLI:  No objection.

13          THE COURT:  It's admitted.

14      (Defense Exhibit DB1 received in evidence.)

15          MR. BRENNWALD:  So if we could play it from about

16    1:20, I believe.  This is just another angle of what we've seen

17    in other videos but I think this is a better angle.

18      (Video played.)

19          MR. BRENNWALD:  We can stop it there.  That's the only

20    part that shows Mr. Blythe.

21          THE COURT:  Okay.

22          MR. BRENNWALD:  That's it.  And with that, I would

23    renew my Rule 29 motion as well.  And we rest.

24          THE COURT:  Okay.

25          MR. WOODWARD:  Can I have a minute with the

1    Government, actually?

2              THE COURT:  Sure.

3         (Off-the-record discussion.)

4              MR. WOODWARD:  Your Honor, my understanding is the

5    Government is going to object to the message.

6              THE COURT:  Okay.

7              MR. WOODWARD:  I'll just describe it for the Court.

8    And if the Court sustains the objection, then I don't need to

9    keep looking for it.  So it is a message between Ms. Genco and

10   Mr. Samsel.  Ms. Genco writes, in sum and substance, that she

11   is proud of Mr. Samsel and that she knows how much he loves his

12   country.

13             Mr. Samsel responds that war is not good and to think

14   of the unborn, that's why we were there.

15             And so we would submit that it need not be admitted

16   for the truth of the matter asserted.  But I expect the

17   Government is going to object.

18             THE COURT:  If not for the truth of explaining why he

19   was there, what relevance would it have?

20             MR. WOODWARD:  Well, Your Honor, it is relevant

21   insofar as -- Your Honor always asks the good questions.

22   Excuse me, Your Honor.

23             (Discussion between Mr. Samsel and Mr. Woodward).

24             MS. FOSTER:  Just for the record, the United States

25   would object to this as hearsay.

```
 1                    THE COURT:  Okay.
 2                    MR. WOODWARD:  Your Honor, the whole message reads:  I
 3       am proud of you and know how much you love this country.  I
 4       will go to war with these people any day.
 5                    And Mr. Samsel responds:  War is not good.  Think of
 6       the unborn.  That's why we were there.
 7                    We understand the Government's objection.
 8       Nonetheless, we would seek its admission.
 9                    THE COURT:  Right.  I assume you want it in because it
10       explains -- Mr. Samsel's statement explaining why he was there,
11       right, which would be for the truth, I would accept as true why
12       he was there, right?
13                    MR. WOODWARD:  I understand, Your Honor.
14                    THE COURT:  Is this in the same text thread that the
15       Government submitted as part of any exhibit?
16                    MR. WOODWARD:  It's not, Your Honor.
17                    DEPUTY CLERK:  This is going to be Samsel's DS3 if you
18       admit it.
19                    THE COURT:  Okay.  Government's position?
20                    MS. FOSTER:  Your Honor, it's hearsay.
21                    THE COURT:  I'm going to sustain the objection for
22       these reasons.  It would be hearsay.  I don't see a purpose for
23       it, other than accepting an explanation from Mr. Samsel as to
24       why he was there, which would, in my estimation, be for the
25       truth of the matter.
```

```
 1              If it were part of a broader conversation and the
 2   Government had introduced texts where Mr. Samsel said something
 3   about why he was there, and then he said this in the same kind
 4   of text chain, I might consider it for completeness reasons,
 5   that the Government kind of cherry picked part of a
 6   conversation that didn't give a full picture of what Mr. Samsel
 7   was saying.  But absent some argument along those lines, I
 8   don't see a basis for a defendant to admit his own statements.
 9              MR. WOODWARD:  We understand, Your Honor.  We think,
10   should there be a sentencing, that we can obviously refer to
11   additional context then.  But we wanted to make a record.
12              THE COURT:  Okay.
13              MR. WOODWARD:  Thank you.
14              THE COURT:  So with that, do you rest?
15              MR. WOODWARD:  Yes, Your Honor.
16              THE COURT:  And you renewed your Rule 29 already,
17   correct?
18              MR. WOODWARD:  Yes, Your Honor.
19              THE COURT:  Does the Government have any rebuttal
20   evidence or exhibits in light of the exhibits entered in the
21   defense cases?
22              MS. FOSTER:  No, Your Honor.
23              THE COURT:  We got done quicker than I expected.
24              MR. WOODWARD:  I'm not sure we have to renew our
25   Rule 29 again, but just so the record is clear, I'll renew our
```

1    Rule 29 on behalf of Mr. Samsel.

2              THE COURT:  Okay.  And I'll reserve.

3         Okay.  So we're just about at the lunch hour.  I think

4    the only thing left to do is I wanted to go back to the trial

5    briefs over the lunch break to just identify what the disputes

6    were between the parties with respect to any elements or legal

7    instructions that I would otherwise have given to a jury.

8              And so I don't need you to repeat the arguments that

9    you made in your Rule 29 motions, but I think that there may be

10   some definitional differences or things that we need to get on

11   the same page about.  So I'd like to use time this afternoon,

12   before we go into the final parts of the trial, to iron any

13   disputes out regarding the elements or related instructions.

14             Are there any other lingering matters that I haven't

15   resolved?  I think I've closed the loop on everything.  Is

16   there anything that remains lingering other than the jury

17   instructions?  I'll call them legal instructions.

18             MS. FOSTER:  Your Honor, two things.  One, I think all

19   of us would like to know whether we are going to be here

20   tomorrow or not.

21             THE COURT:  Okay.

22             MS. FOSTER:  And then the other question is whether

23   the Court wants something akin to a verdict form that kind of

24   lays out what the offenses, are, what the lesser offenses are,

25   what the lesser included offenses are.  Obviously, we would put

```
 1   it together.  We would run it by defense counsel to confirm
 2   that they're okay with it and submit, if the Court is
 3   interested.  If the Court is not, obviously we won't.
 4            THE COURT:  I think that would be very helpful if
 5   you-all could submit something jointly.
 6            MS. FOSTER:  Will do.
 7            THE COURT:  If you can't agree, it's probably less
 8   helpful.  But I'll take it.
 9            MS. FOSTER:  Understood.
10            THE COURT:  And we can discuss scheduling as well.
11            MR. BRENNWALD:  I think all of us thought that we were
12   going to do closings on Thursday and we talked to Mr. Woodward
13   about coming back from Florida, if we have to drive him up
14   here.  But anyway, I think that's what our hope is, given the
15   need to organize our thoughts after we --
16            THE COURT:  I already told you that you're not closing
17   today.  So I'm not --
18            MR. BRENNWALD:  Right.  I guess we're wondering about
19   tomorrow or Thursday.  And since we need to make sure we need
20   to know what the Court's decision on the elements of law are
21   when we come back.
22            THE COURT:  Yeah.  So -- come on up.
23            MS. ROSEN:  May I have one moment with the Government?
24            THE COURT:  Sure.
25        (Off-the-record discussion.)
```

1              MS. ROSEN:  I think we just wanted to inquire with the

2      Court whether we're sitting on Wednesday, and if we're not,

3      with no objection from the Government, if Mr. Johnson could go

4      to the Bible Museum in D.C.  That would be against his

5      conditions because he's not allowed to do anything in --

6              THE COURT:  That's fine.

7              MS. ROSEN:  Thank you, Your Honor.

8              THE COURT:  So as far as tomorrow, I will confess that

9      with the benefit of hindsight I would not have put the parties

10     in this position.  I was expecting the trial to go a lot

11     longer.  I received a correspondence from another judge saying

12     that there was a pressing matter, and I was extending a

13     professional courtesy.  I don't think that -- had that judge

14     known we were going to be done today, we could have worked

15     something out.

16             But I think at this point, Mr. Woodward, you've

17     already made your arrangements to go.  It's tomorrow.  It is

18     what it is.  I think I'm stuck with the professional courtesy

19     that I extended, with apologies to everyone.  Again, had I

20     known that we would be done at this time now, I would have

21     worked something else out, but I think we're stuck with it.

22             And I don't think in the grand scheme of things,

23     although not ideal, that it's prejudicial to any party to come

24     back on Thursday for closing.  So unless Mr. Woodward tells me

25     that something in the schedule has changed, then we'll be back

1    on Thursday.

2                MR. WOODWARD:  No, nothing has changed.

3                THE COURT:  Okay.  So let's come back this afternoon

4    and resolve -- it would be very helpful if you-all can identify

5    and isolate where the definitional disputes are, because I

6    think they're not for every charge.  I thought there were some

7    charges where the parties were largely in agreement about the

8    elements and the definitions, and the dispute was just about

9    the sufficiency of evidence.  And there may be other charges

10   where there are some disagreements fundamentally about what the

11   elements or definitions are.

12               MR. WOODWARD:  We already eat lunch next to each

13   other.  So I think there won't be an issue.

14               THE COURT:  All right.  So we're breaking a little bit

15   early.  We can come back at 1:30 or we can come back at 1:00 --

16   1:30?  Okay, 1:30.  Thanks, everyone.

17       (A recess was taken at 12:00 PM)

18               THE COURT:  Okay.  Do we have everyone?  Yes.

19               Okay.  Good afternoon, everyone.  So I wanted to touch

20   base to iron out or discuss so that I can think about any

21   disputes about the elements.  So I don't know who wants to be

22   heard -- do we have it narrowed down as to where the disputes

23   are?

24               MR. MARSHALL:  Your Honor, the Government and

25   Mr. Johnson submitted jury instructions.

```
 1              THE COURT:  Yes.

 2              MR. MARSHALL:  I believe the understanding is the

 3    Government's jury instructions, especially since they encompass

 4    all defendants, uses a default method, and I believe

 5    Mr. Johnson has a few discrete issues they want to raise, and I

 6    believe Mr. Grant has one issue as well.

 7              THE COURT:  Okay.

 8              MR. MARSHALL:  So I think the best way is probably for

 9    them to raise the issue and for Government to respond.

10              THE COURT:  Great.  Who wants to start first,

11    Mr. Grant or Mr. Johnson?

12              MR. RICHMAN:  I'm not sure what order we should start

13    in.  I think the biggest disputes are with respect to counts 2

14    and 3.  So I can raise the issues we've raised there.

15              THE COURT:  Yes.  Is this regarding the aiding and

16    abetting piece or something else?

17              MR. RICHMAN:  For counts 2 and 3, there's actually

18    four issues, I think.  There's aiding and abetting, there's

19    bodily injury, there is the definition of "inflict" and there's

20    the definition of "deadly or dangerous weapon."  And I can

21    address all of those.

22              Would Your Honor like to start with aiding and

23    abetting?  That also relates to numerous counts.

24              THE COURT:  Yes.

25              MR. RICHMAN:  So, Your Honor, the parties'
```

1    instructions are actually quite similar.  I'd point Your Honor

2    to our instruction at Pages 9 to 10 of our trial memo.  It's

3    nearly identical to the Government's.  The part of theirs that

4    we disagree with -- and I can wait for Your Honor to pull it

5    up.

6              THE COURT:  I'm just pulling up -- you said it's on

7    what page?

8              MR. RICHMAN:  Page 9 to 10 of our trial memo.

9              THE COURT:  Just give me one second here.

10             Okay.

11             MR. RICHMAN:  The part where our instruction differs

12   from their's is -- if we go to their instructions on Page 5 to

13   6, they have a paragraph that includes about encouraging, that

14   it's enough to be encouraging the conduct of another.  That

15   part, first of all, it comes from law that's in the drug

16   context and also all before Rosemond, which is the 2014 Supreme

17   Court case on aiding and abetting.

18             I just think it's kind of preposterous.  On these

19   facts, a person from outside this courthouse who's cheering on

20   January 6th and saying, good job, guys, would be guilty of the

21   substantive offenses as an accomplice.  That can't be the law.

22             So the paragraph that they have about encouraging,

23   which I think goes s from Page 5 to 6 of their instructions, we

24   disagree with and ask to be stricken.

25             Otherwise, I think our actual aiding and abetting

1    instructions are nearly identical.  We have some additional

2    argument about what they've said about aiding and abetting in

3    their trial memo.  I responded to some of that in the filing we

4    made last night.  I don't need to go through that again, Your

5    Honor.  But aiding and abetting is not about joint causation.

6    It's not about something like Paroline, which is apportioning

7    restitution.  It's about affirmative action once you have the

8    relevant knowledge done for the purpose of assisting another's

9    offense.

10           So I think that's all I have to say about aiding and

11   abetting.

12           THE COURT:  So the proposal would be just to strike

13   the definitional part about encouragement or encouraging?

14           MR. RICHMAN:  Yes, as far as the actual instructions.

15   Otherwise, I think they're almost identical.

16           THE COURT:  Okay.

17           MR. RICHMAN:  We just have this sort of greater issue

18   about what "aiding and abetting" means.

19           Would the Court like me to move into the next issue?

20           THE COURT:  Yes.

21           MR. RICHMAN:  So for counts 2 and 3, we have the issue

22   of the definition of the term "inflict."

23           THE COURT:  Okay.

24           MR. RICHMAN:  And that goes to bodily injury.  It's

25   the word that introduces the bodily injury element for counts 2

and 3, a defendant has to inflict the bodily injury.  Our instruction is on Page 14, and essentially it's to be the direct physical cause.

Your Honor, we cited a number of cases for that and the Government has responded -- I heard them this morning. They were citing a case called Rivera, which is a case from another judge at this court from 2022.  I think the Government has the correct cite.  But Rivera is about 1512 where defendant was arguing -- 1512 is the obstruction statute, where the defendant is arguing that if he wasn't the direct cause of Congress going into recess, he couldn't be guilty of 1512.

1512 has very different language than "inflict."  What the Supreme Court and other courts have has said about any criminal statute that uses the word like "inflict" or "results in" is that the person has to be the but-for cause.

The leading case, Your Honor, is Burrage, the Supreme Court case from 2014 on multiple -- it's exactly about multiple causation of a drug overdose.  And the Government took the position that if the defendant's drugs -- the drugs the defendant distributed were one of the causes, that was enough. Defense said no, it has to be the cause.

And the Supreme Court agreed with the defense where it's -- in a multiple causation case, the standard is whether the defendant's conduct is the independently sufficient cause. That's the language of Burrage.  And the cite for that is 571

1    U.S. 204.

2          So the Government, in response to Rule 29 and in their

3    trial memo, they talked a lot about multiple causation, about

4    aggregate harm.  That is just not law in a case that's not

5    charged as conspiracy.  Burrage has the standard for what is

6    typically required in any statute that requires conduct to

7    result in a particular result or to, in this case, stronger

8    than result, and it says "inflict."

9          So the cases that we cited related to "inflict" all

10   use the word "direct physical cause."  I will say, Your Honor,

11   even that Rivera case the Government cited to says 1512 is

12   different.  It says in a footnote that the normal standard,

13   when a statute talks about resulting in, the normal standard is

14   what I just laid out.  It just says the obvious, which is that

15   1512 is different.  It's just not that kind of statute.

16         So we -- again, we would stick by our instruction,

17   which is that "inflict" requires proof that the defendant's

18   conduct be the direct physical cause.

19         THE COURT:  Let me just ask you a question.  I'm going

20   to take it somewhat out of the context of this case because I

21   understand that the parties will be making arguments about who

22   was pushing what and when.

23         But in a situation of -- let's say a group assault

24   where you have -- I'm going to give you the most direct example

25   I can think of -- three people attacking someone with a

1    baseball bat and that person ends up being seriously injured,

2    they lose consciousness.  Apply what you're asking for in that

3    context, in terms of you have to know which specific strike

4    caused the loss of consciousness to convict the other two

5    individuals with -- or indicating that their actions inflicted

6    the bodily injury?

7              MR. RICHMAN:  You would normally charge a conspiracy.

8              THE COURT:  Assuming no conspiracy was charged because

9    everyone is beating on this person with the baseball bat.

10             MR. RICHMAN:  The normal way to get to it would be a

11   conspiracy and Pinkerton liability.  Right?  You know that all

12   three are using a baseball bats.  They're responsible for their

13   conduct in the jointly undertaken activity.

14             But outside of that context, if they are independently

15   each charged with assault, then under the facts Your Honor gave

16   they could each probably be found guilty of assault with

17   whatever type of weapon they used.  But if the Government is

18   going to say, well, this person had a traumatic brain injury,

19   you can't convict any one of them on the substantively

20   inflicting that injury, unless there's evidence that their

21   conduct individually inflicted that injury or aided and

22   abetted, potentially.  But, again, the normal way to get to

23   that would be Pinkerton liability.

24             THE COURT:  This circles back to the aiding and

25   abetting.  You think in that circumstance there may be

1    sufficient evidence of aiding and abetting?

2              MR. RICHMAN:  I can certainly see it.  One defendant

3    is doing something that's holding the person down or keeping

4    them on the ground.  The other one is hitting them in the head.

5    Certainly that could be taking action that's aiding and

6    abetting the others -- what the other does.  I mean, it could

7    be.  That would be fact specific, I think.

8              THE COURT:  Okay.

9              MR. RICHMAN:  The next issue I have, Your Honor, is

10   the definition of "deadly or dangerous weapon."  And my --

11   co-defense counsel just noted the standard is but-for cause.

12   And that is correct, that's what Burrage is about.  It's

13   but-for cause and also independently sufficient cause.

14             THE COURT:  Okay.  Yes.

15             MR. RICHMAN:  Deadly or dangerous weapon, Your Honor,

16   our instruction is at Page 13 of our trial memo.

17             THE COURT:  Okay.  Just because I don't have a red

18   line, what's the difference between this and what the

19   Government's requesting?

20             MR. RICHMAN:  The difference is the language that they

21   both require the weapon to be capable of resulting in serious

22   bodily injury, and I think the Government just says used in

23   that manner and ours says used in a manner likely to result in

24   that.  So the issue I'm drawing is the word "likely."

25             And as Your Honor can see, we cited three judges of

1    this court who've incorporated that language.  I think it's

2    Judges Lamberth, Bates and Friedman.  I think those are all

3    cited in a footnote, I believe.

4              THE COURT:  Help me understand, what is, on the

5    ground, the practical difference between what you're asking for

6    and what the Government's asking for?

7              MR. RICHMAN:  Well, I think it depends on how one

8    interprets the Government's definition.  I would interpret just

9    the wording of the Government's definition to mean in a manner

10   likely to, which is what I'm asking for.  So I would agree.

11             THE COURT:  Okay.

12             MR. RICHMAN:  But they today stood up and said, it

13   just means in a manner capable of.  Which is the first part of

14   the definition, that it be capable and used in that manner.

15             So if one interprets their definition as just used in

16   the manner theoretically capable of causing death or serious

17   bodily injury, rather than used in a manner likely to cause

18   death or serious bodily injury, I disagree with that.  The

19   statute talks about using a weapon, and obviously it's a very

20   serious sentencing enhancement.  It elevates an offense

21   possibly from a misdemeanor to a 20-year felony.  I don't think

22   a theoretical capability is what Congress was referring to.  So

23   I would submit that the three judges I cited are correct on

24   that.

25             THE COURT:  Did you have something with bodily injury

```
 1   or is that --
 2            MR. RICHMAN:  I do have something with bodily injury.
 3            THE COURT:  That's fine.
 4            MR. RICHMAN:  Again, our instruction on this is at
 5   Page 14 of our --
 6            THE COURT:  Okay.
 7            MR. RICHMAN:  And we're relying on the 5th and 10th
 8   Circuit parent instructions.  It's also the instruction used by
 9   the guidelines for bodily injury.  And theirs is drawn from a
10   consumer product tampering statute, which is Section 1365, and
11   even in their instruction, one has to cause that bodily injury
12   but also has to do it with an extreme indifference.  So it's a
13   very low definition.
14            The example we gave in our trial memo is pinching
15   somebody, not even a particularly violent pinch, just a pinch.
16   If it leaves any mark for a second or two on the skin, would
17   constitute a bodily injury under that 1365 definition.  It says
18   no matter how temporary, any injury no matter how temporary.
19            So again, this is something that potentially elevates
20   a misdemeanor to a 20-year felony.  And again, I think anybody
21   would agree that a typical minor pinching somebody would
22   typically be more in the realm of a misdemeanor than an
23   assault.
24            So for that reason we think that that extremely low
25   definition that talks about no matter how temporary, no matter
```

1   how minor -- it doesn't say no matter how minor.  It says any

2   injury, no matter how temporary.  We just think that's not the

3   intended meaning that Congress could have intended in a felony

4   with a 20-year maximum.

5             So for that reason we think that the one we cited,

6   which is a parenting instruction from a couple different

7   circuits, is the correct standard.

8             THE COURT:  Okay.

9             MR. RICHMAN:  And then I think the last thing that I

10  wanted to address, Your Honor, is the knowledge requirement

11  under Section 1752, which is counts 5 through 7.

12            THE COURT:  Okay.

13            MR. RICHMAN:  And this, again, it's Page 17 of our

14  trial memo.  And also Pages 3 to 7 of the supplement we filed

15  last night.

16            The issue there, Your Honor, is the difference between

17  the two instructions.  Both require a person to knowingly go

18  into an area that's restricted, meaning go past any kind of

19  sign or whatever that says no entry.  And that's where the

20  Government ends is, if you do that without lawful authority and

21  a protectee happens to be present, you're guilty of this

22  federal offense.

23            Ours says that to knowingly do it, you have to

24  knowingly go in to what the statute defines as a restricted

25  area, which is to knowingly go into an area that's both

1    restricted and has a protectee either present or about to be

2    present.

3         The reason that's important, Your Honor -- so just for

4    an example would be a person thinking they're committing simple

5    trespassing.  They're in the woods.  They're hunting.  They've

6    got a rifle with them.  They walk past a "no trespassing" sign.

7    They think they're committing a misdemeanor that's going to go

8    to a local court.  You know, if the Vice President is hunting

9    in those woods, totally unbeknownst to them, now they're in a

10   restricted area that has a protectee.  They've got a dangerous

11   weapon.  It's a 10-year federal felony that they would have no

12   reason to think they're committing.

13        The recent line of Supreme Court cases on mens rea

14   elements in criminal offenses all support reading knowingly to

15   go to the definitional part of 1752, which is the definition

16   saying if you're entering restricted grounds, it means you're

17   entering this things, which is an area that's cordoned off and

18   has a protectee present.  We cited Staples, which is not a

19   particularly new case, but it's kind of the big case on

20   knowingly in federal criminal statutes.

21        But also, more recent cases, Figueroa, Alanis (ph),

22   Rahave (ph), they all require knowingly elements to modify

23   exactly the type of thing that we're talking about.  So to be

24   guilty of knowingly going into a Secret Service restricted area

25   because a protectee is present, you have to know the protectee

1    is present.

2             THE COURT:  Can you just flesh out, in terms of -- I'm

3    just looking at the text of the statute, what your argument is

4    as to reading knowingly to go to the A, B, C portions as

5    opposed to the --

6             MR. RICHMAN:  Right.  So I think this best example,

7    Your Honor, is Staples, which is Staples, you have to knowingly

8    possess a firearm.  And there's separately a definition of

9    firearm.  And the Supreme Court says you have to know the facts

10   that make your thing fit within the term "firearm" in order to

11   be guilty.  Otherwise, you don't have the knowledge to be

12   guilty of a statute.

13            This is the same.  You're knowingly going into a

14   restricted area.  What about a religious group where men and

15   women worship separately?  So it's restricted.  It's not a

16   government restriction but it's a restricted area.  And the

17   Vice President happens to be there and now you're committing a

18   federal offense.  It's not even --

19            You know, "restricted area" isn't otherwise defined.

20   So in order to have the knowledge it has to be restricted for

21   that reason, and the defendant has to know that the protectee

22   is present.  Otherwise, a defendant can just be found guilty of

23   a very serious offense without any of the knowledge of -- that

24   they're doing what Congress is trying to prevent.  Congress is

25   trying to prevent people from going near Secret Service

1    protectees unless they're authorized.

2            So we would submit Congress couldn't have intended to

3    prevent people from doing that if they didn't know they were

4    near -- they were in such an area that was a protected area

5    because of a protectee.

6            THE COURT:  Going back to your bodily injury

7    definition, you're disputing the Government's definition of

8    "bodily injury."  But I'm wondering for at least some of the

9    counts, there's the qualifier of significant.  So how --

10           MR. RICHMAN:  Sorry to cut you off.  I think we have

11   the same definition of "serious bodily injury."

12           THE COURT:  I guess I'm just -- what I'm saying is the

13   point you're -- the pinch example, for example, that does a

14   bodily injury require -- I think you said something about one

15   that would ordinarily require medical attention for some

16   reason.

17           MR. RICHMAN:  Right.

18           THE COURT:  Bodily injury is something less obviously

19   than serious or significant bodily injury.  So I'm trying to

20   understand, as it relates to the definition of bodily injury

21   without the qualifier, what do you think the harm is in the

22   Government's definition, understanding that for some of the

23   enhancements I have to find a significant or serious --

24           MR. RICHMAN:  So the only place I'm aware of in this

25   case where just "bodily injury" is used --

```
 1              THE COURT:  Yes.

 2              MR. RICHMAN:  -- is counts 2 and 3.

 3              THE COURT:  Right.

 4              MR. RICHMAN:  And that's where it is the aggravator

 5    that takes it from potentially a misdemeanor to a 20-year

 6    felony.  And that one is just bodily injury.

 7              THE COURT:  But does the physical contact take it from

 8    a misdemeanor to a felony?

 9              MR. RICHMAN:  That takes it from a misdemeanor to an

10    eight-year felony.  But then the --

11              THE COURT:  The bodily injury is a further

12    enhancement?

13              MR. RICHMAN:  Correct.  Although -- yes, yes.  That's

14    accurate.

15              So that statute is the only one we're talking about.

16    We're talking about just the "bodily injury" definition.

17              THE COURT:  Okay.

18              MR. RICHMAN:  And our definition is substantially less

19    than, I think, the agreed definition of "significant bodily

20    injury."  But it is significantly more than the Government's

21    one of no matter how -- any injury, no matter how temporary.

22              And my point is just that any injury, no matter how

23    temporary, couldn't be enough for counts 2 and 3 to make it

24    such a serious crime.  That can't be what Congress intended, to

25    make it such a serious crime.
```

```
1              THE COURT:  I understand that.  But then I go back to

2    the physical contact, meaning by virtue of just engaging in any

3    type of physical contact the statute significantly penalizes

4    that as well.

5              MR. RICHMAN:  But then it does this two and a half

6    times as serious for, you know, any injury no matter how

7    temporary.  That's just my point.  That doesn't seem -- I think

8    any injury, no matter how temporary, is no more than physical

9    contact.

10             THE COURT:  Right.

11             MR. RICHMAN:  Right.  So this is a much more serious

12   statutory aggravator.  It doesn't make sense that Congress

13   would have suggested that things that we normally think of as a

14   misdemeanor assault would get you all the way up to such a

15   serious felony.

16             THE COURT:  Okay.  And then I know you have an

17   argument -- did you finish your argument on the 1752?

18             MR. RICHMAN:  I did.  I think those were the five

19   issues that I personally wanted to address.  And I think those

20   are probably all the defendants agree, and there may be some

21   that some of my co-defendants want to raise on other issues.

22             THE COURT:  Okay.  Do you want me to hear from the

23   other defendants and then you do one global response or should

24   we take this in pieces?

25             MR. MARSHALL:  Whichever way the Court prefers.
```

```
1              MR. FEITEL:  I think mine is part and parcel with some
2    of the other arguments.
3              THE COURT:  Okay.  Let's just deal with the defendants
4    and then we can have a global response from the Government.
5              MR. FEITEL:  Thank you, Your Honor.  And I did share
6    this with Government counsel during the lunch hour.  So they
7    had a chance to think about it.
8              THE COURT:  Okay.
9              MR. FEITEL:  I spent some time red lining the
10   difference between the Government's proposed jury instructions
11   and the defense, and that really gave me a wailing size
12   headache.  So I did take a look, though, at the standard aiding
13   and abetting instruction in the Red Book in this jurisdiction.
14   And it appears that there is a special requirement in cases
15   where a weapon is used.
16              I commend Your Honor to Red Book jury instruction
17   3.200.  It's captioned, "Aiding and abetting," and the
18   subcaption applies specifically to 18 United States Code
19   Section 2, which is the Government's theory for aiding and
20   abetting here.
21              The instruction says:  An aider and abettor is legally
22   responsible for the principal's use of a weapon during an
23   offense if the Government proves beyond a reasonable doubt that
24   the aider and abettor had actual knowledge that some type of
25   weapon would be used to commit the offense.
```

1          You may, but are not required to, infer that the aider

2     and abettor knew that some type of weapon would be used to

3     commit the offense from the surrounding circumstances.  You may

4     consider any statement made, acts done, not done, the

5     reasonable foreseeability that some weapon would be required to

6     commit the offense, and any other facts and circumstances

7     received in evidence that indicate the aider and abettor's

8     knowledge or lack of knowledge.

9          I would ask Your Honor to include this.  I think that

10    given -- I think it applies to all of the counts where a weapon

11    is used.  It is a specific foreseeability requirement with

12    respect to the use of a weapon in this jurisdiction.  I think

13    the rule is that the model jury instructions are sort of

14    presumptively a correct statement of the law, absent some other

15    matter, like a Supreme Court, intervening Court of Appeals

16    decision vacating them.

17         So I do think this imposes the requirement of

18    foreseeability.  The Government is free to argue what they

19    want, I suppose.  My wife said I'm not supposed to make

20    Government arguments when I stand at the lectern.  So the

21    Government can argue from this jury instruction as they choose,

22    but I do think it's a correct statement of the law and it

23    should be considered in connection with each of the offenses

24    charging the use of a weapon in this case.

25         THE COURT:  Okay.

1          MR. FEITEL:  Thank you, Your Honor.

2          THE COURT:  Does any other defendant want to be heard

3     on any disputes about the elements or definitions?

4          MS. HALIM:  Your Honor, I just want to make clear for

5     the record that on behalf of Mr. Randolph I join in the

6     objections raised by Mr. Richman on Mr. Johnson's behalf, and

7     also join in the affirmative arguments made by counsel for

8     Mr. Johnson.

9          MR. BRENNWALD:  We all join.

10         THE COURT:  Does anyone have anything different or

11    additional to what's already been said for any defendant?

12    Okay.

13         MR. MARSHALL:  Sorry, Your Honor.  I apologize in

14    advance if this is a little bit jumbled.

15         THE COURT:  It's okay.  Let me ask you a question.

16    With respect to the Red Book instruction, do you have any

17    problem with that?  Usually, if it's in the Red Book I usually

18    tend to instruct myself or the jury accordingly.

19         MR. MARSHALL:  So I know that's a commonly used one in

20    this District, but the Government would oppose it in part

21    because that is for D.C. Superior Court.  So I think just by

22    default it isn't necessarily binding or necessarily by default

23    applicable here in District Court.

24         The other thing I mentioned more substantively with

25    that particular definition is I think it's just a little bit

1    confusing as applied here in terms of saying that an aider and

2    abettor could be held liable if they have actual knowledge that

3    a weapon is likely to be used, where in this case it's not an

4    inherently dangerous weapon.  It's a dangerous weapon as used.

5          So I think in this case you could either say, well,

6    yeah, someone might have knowledge that the bike rack was about

7    to be used.  Did they have a legal definition of whether or not

8    that bike rack constituted a dangerous weapon as it was about

9    to be used in that context?  I think that's kind of a murky

10   standard that would be applied here.  So I think just by

11   default, not including that, not adding that kind of additional

12   layer onto aiding and abetting liability, at least just for

13   clarity of what's being proved here I think is beneficial.

14         The next one that I think the response is pretty short

15   from us on is Mr. Johnson's issue with the aiding and abetting

16   liability definition that includes the word "encourage."  If

17   the issue is just with the word "encourage," I think leaving

18   that sentence in and striking "encourage," so the sentence

19   would just read:  That is you must find the defendant's act or

20   acts did in some way aid, assist or facilitate others to commit

21   the offense.

22         I think those other verbs seem pretty uncontroversial,

23   unless Mr. Johnson would agree, but the Government would have

24   no problem striking "encourage" from that.

25               THE COURT:  Let me ask that.  Mr. Richman, does that

1   solve your problem?

2          MR. RICHMAN:  I mean, what I heard -- I think I

3   need -- can I have a moment?

4          THE COURT:  Sure.

5      (Off-the-record discussion.)

6          MR. RICHMAN:  Your Honor, we think, first of all,

7   their proposal at Pages 5 to 6 has "encourage" in a number of

8   places.  So, for example, the first sentence in this bottom

9   paragraph on 5, if you strike "encourage" the sentence doesn't

10  make sense.

11         THE COURT:  Wait, I'm sorry, I think I'm in the

12  wrong -- where are you?

13         MR. RICHMAN:  So the PDF page number is 7 but the page

14  number that's written on the bottom of the page is 5.  That's

15  what I'm looking at.

16         THE COURT:  You're in the Government's trial brief?

17         MR. RICHMAN:  No.  I'm in their proposed instructions,

18  which is 301-1.

19         THE COURT:  Wait, I have that pulled up already.  Yes.

20  Okay.  I was in the right document, wrong attachment.

21         Okay, I'm sorry.  You're at Page 5 of --

22         MR. RICHMAN:  So the PDF numbers it's PDF7.

23         THE COURT:  I'm there.

24         MR. RICHMAN:  So at the bottom, that first paragraph

25  starts with:  To show the defendant performed an act or acts in

1   furtherance of the offense charged, the Government must prove
2   some affirmative participation by the defendant, which at least
3   encouraged others to commit the offense.  You can't just strike
4   "encourage" from that.
5           THE COURT:  You would be fine to cut that whole
6   sentence out?
7           MR. MARSHALL:  Yes, Your Honor.  I don't want to
8   concede that this definition is incorrect or inappropriate, as
9   a general matter, but here the Government's not proceeding --
10          THE COURT:  Proceeding under encouragement theory.
11          MR. MARSHALL:  So we would be fine striking in this
12  case, just for expedience.
13          MR. RICHMAN:  So I would say that whole paragraph that
14  goes from that page onto the next page should just be stricken.
15  The rest of it is an accurate statement of the law and the rest
16  of what's in that paragraph, other than "encouragement," is
17  just a restatement of what's already in the rest of the
18  instruction.
19          THE COURT:  I'm just trying to reach consensus that
20  doesn't prejudice anyone and reflects an accurate statement of
21  the law.  If your only objection is that it's duplicative and
22  the Government wants it and it's just me, is there any problem
23  with striking that first sentence and getting rid of
24  "encourage" in the remaining portions of the sentence?
25          MR. MARSHALL:  And Your Honor, I'd note that -- sorry,

```
 1    I'll let Mr. Johnson respond.  We could just strike everything
 2    after "which at least" in that first sentence too.  I think
 3    that would have a similar effect.
 4              THE COURT:  Where are we?
 5              MR. MARSHALL:  So the sentence would just state:  To
 6    show the defendant performed an act or acts in furtherance of
 7    the offense charged, the Government must prove some affirmative
 8    participation by the defendant.
 9              THE COURT:  Yes.  That is, you must find that the
10    defendant's act or acts in some way did aid, assist or
11    facilitate others to commit the offense.
12              MR. MARSHALL:  That's what I had in mind, Your Honor.
13              THE COURT:  Yeah.
14              MR. RICHMAN:  Your Honor, the only objection I have to
15    that is that's just restating what comes before.
16              THE COURT:  Okay.
17              MR. RICHMAN:  I don't think it's wrong.  There's just
18    no need for it.
19              THE COURT:  But getting rid of the "encouragement"
20    addresses your primary concern?
21              MR. RICHMAN:  It does.
22              THE COURT:  So I will make those tweaks but it seems
23    like we're in agreement for the aiding and abetting.
24              Does any other defendant have an objection or problem
25    with what we've suggested?  Okay.  Hearing none.
```

1          MR. MARSHALL:  And then, Your Honor, moving to the

2     objection regarding the "bodily injury" definition, which I

3     understand to just be limited to that very last clause of that

4     definition, stating:  Or any other injury to the body, no

5     matter how temporary.

6          I understand that to be a caveat to the earlier

7     definition of "injury" that appears in that paragraph, that

8     defines an injury as something that is painful or obvious or is

9     a type of which medical attention ordinarily would be sought.

10     So this is just making clear that there's no temporal

11     limitation in terms of how long an injury has to last before it

12     counts as an injury, so long as it meets that definition.

13          So we would argue this isn't providing some

14     alternative, really easily met definition of "injury."  It's

15     just adding some clarification as to whether there's a temporal

16     requirement to injury.

17          MR. FEITEL:  Your Honor, what the Government did is I

18     think they printed out the jury instructions on separate pages

19     that begin numbered as one and then they scanned them all as a

20     whole.  But for the PDF version, if Government counsel can tell

21     us which exact page number for the PDF he's talking about, that

22     would be helpful, because I seem to have lost the trail of

23     where this language is.

24          MR. MARSHALL:  The number that appears at the top of

25     the page.  Is that what you're thinking?

```
1                 MR. FEITEL:  Yeah.

2                 MR. MARSHALL:  I'm on Page 12 right now.

3                 MR. FEITEL:  Thank you.

4                 THE COURT:  Okay.  I see what you're saying.

5                 MR. MARSHALL:  Your Honor, I next want to address --

6                 THE COURT:  Let me ask you this:  What is your

7    objection to Mr. Johnson's proposed language?  Let me pull it

8    up.

9                 MR. MARSHALL:  Apologies, Your Honor.  I'm finding

10   where --

11                THE COURT:  I have too many things pulled up, so I'm

12   cleaning up my desktop here.  Hold on just a minute.

13                Mr. Richman, can you remind me what page your bodily

14   injury reference was on --

15                MR. MARSHALL:  Sorry, Your Honor, I just found it.

16   It's on Page 14 at the bottom of the page.

17                MR. RICHMAN:  (Inaudible)

18                THE COURT:  Can you use your microphone, please.

19                MR. RICHMAN:  That's correct.  It's the bottom of

20   Page 14 of our trial memo.  It's also -- it's identical to the

21   first half of the Government's -- I think it's identical.  It's

22   the second half of the Government's instruction that we think

23   is -- unfairly broadens it.  So we would just ask to use our

24   instruction.

25                THE COURT:  Okay.  Hold on.  When you say the second
```

```
 1   half -- so I'm on the Government's proposed jury instructions,
 2   Page 11 of 50 -- 12 of 50, excuse me.
 3              MR. RICHMAN:  Correct.
 4              THE COURT:  So the term "bodily injury" means an
 5   injury that is painful and obvious or is of a type for which
 6   medical attention ordinarily would be sought.
 7              You have no objection to that language.
 8              MR. RICHMAN:  That's our instruction.
 9              THE COURT:  That's your proposal.
10              MR. RICHMAN:  Correct.
11              THE COURT:  And you just want the -- it includes "a
12   cut, abrasion, bruise."  You want that to be -- if this were
13   going to a jury, you would not want the jury to be instructed
14   on the second sentence?
15              MR. RICHMAN:  Correct.  And when the sources we
16   cited -- the parenting instructions we cited do end where ours
17   ends, at "for which medical attention would ordinarily be
18   sought."  That's the entire instruction.
19              THE COURT:  Painful and obvious or is of a type for
20   which medical attention ordinarily would be sought?
21              MR. RICHMAN:  Correct.
22              THE COURT:  Are you fine to -- let me ask you this,
23   does this -- does this really implicate anything in this case?
24   I don't think -- maybe there are going to be some disputes
25   about whether Officer Edwards or Sergeant Edwards suffered any
```

1    significant or serious bodily injury, but are you proceeding

2    with the bodily injury theory for Officer Cruz?

3                MR. MARSHALL:  No, we're not, Your Honor.

4                THE COURT:  So for Sergeant Edwards, we're not -- I

5    don't think anyone would argue that we're in a pinch situation.

6    So this doesn't feel like it would really change the calculus

7    here in any respect.  Do you disagree with that?  I mean what

8    would be the prejudice in giving this part of the instruction

9    in this case on these facts?

10               MR. RICHMAN:  Your Honor, I think it's a wrong

11   statement of law.  I just --

12               THE COURT:  I see.  That's --

13               MR. RICHMAN:  I don't think it's a right statement of

14   law.

15               THE COURT:  Really, your concerned with the "no matter

16   how temporary" piece?  Because you would agree that it would

17   include "a cut, abrasion, bruise, burn or disfigurement."  That

18   it would include "physical pain" because that's consistent with

19   what you're proposing.  You're not disputing any of these

20   components.  You're just worried about the "no matter how

21   temporary" because it could lead to a result where someone has

22   fleeting pain, and you're saying that wouldn't be sufficient to

23   cause bodily injury.

24               MR. RICHMAN:  Well, basically, I agree with Your Honor

25   but what I would say if -- there's no reason to leave that

```
1    whole second sentence in.  But to the extent those other
2    examples are given, cut, abrasion, bruise, it would have to be
3    of a type related to what's described in the first sentence.
4    In other words, a cut that's not serious enough to ordinarily
5    require medical attention wouldn't be enough.
6            So I wouldn't say it includes all cuts, abrasions, et
7    cetera.  The first sentence really describes the level of
8    severity it needs to be.
9            THE COURT:  Then I'll ask you the same question:  In
10   terms of this case, is it important if -- the defense is
11   objecting and they think it's not an accurate statement of law.
12   Is it important to include that here given your --
13           MR. MARSHALL:  Your Honor, certainly, the Government
14   feels we've exceeded the definition under either of these.  But
15   I think it is material in the sense that we would argue that
16   Officer Edwards suffered multiple injuries that sufficed here.
17   The strike to her face with the bar that caused bruising and
18   redness, we would argue that suffices, and that's made clear by
19   the second sentence here.
20           So perhaps maybe we would just add something like
21   "such bodily injury includes a cut," etc., etc, and then the
22   last phrase could state, "any other such injury to the body,"
23   just to make clear that that second sentence is modifying the
24   first one and not adding additional ways by which, you know,
25   injury can be proven.
```

```
 1          THE COURT:  Mr. Richman, what's your position on that?
 2          MR. RICHMAN:  I just -- I don't understand what that
 3   additional language does then.
 4          THE COURT:  It provides examples of the type of
 5   painful and obvious injuries or injuries that would require
 6   medical attention that would satisfy this instruction.
 7          MR. RICHMAN:  Right.  And Congress included that
 8   language in a different statute relating to a totally different
 9   type of conduct.  They didn't include it here.  I don't think
10   it's necessary or correct.  But as long as it is limited to
11   saying things that fit the first sentence, I don't think that
12   would be wrong.  I just don't think it's necessary and I think
13   the first sentence is the instruction the Court should give.
14          THE COURT:  Okay.  Just so I understand what the
15   Government's agreeing to modify it to say, you would say, "such
16   bodily injury includes a cut, abrasion, bruise, burn or
17   disfigurement, physical pain, illness, impairment of a function
18   of a bodily member, organ or mental faculty."  I mean, the "or
19   any other injury to the body" seems unnecessary.
20          MR. WOODWARD:  Your Honor, I think our concern -- we
21   share, obviously, with Mr. Richman's objection.  Our concern is
22   it's inviting parties in the court to delineate these injuries.
23   Our position is that she suffered an injury as a result of
24   being sprayed in the face with chemicals, bear spray etc.  So
25   why not include that in the definition of things that could
```

1    cause the bodily injury.

2              So I think leaving the definition as Mr. Richman

3    proposes doesn't require us to go through and delineate and

4    have a fight about all the sources of injuries that she

5    suffered from that day.

6              THE COURT:  Okay.

7              MS. HALIM:  Your Honor, for the record, on behalf of

8    Mr. Randolph, I do object to that second sentence being

9    included at all.

10             THE COURT:  Okay.

11             MR. MARSHALL:  Your Honor -- unless Your Honor would

12   like me to respond.

13             THE COURT:  It seems to me that it would be more

14   straightforward to just have the first sentence.  And that I

15   don't, specifically on the facts of this case and the

16   Government's theory, see what the second sentence does or

17   assists the finder in fact of weighing the evidence.  But I'll

18   hear from you if you think it's necessary for some reason.

19             MR. MARSHALL:  Your Honor, I do think it's necessary,

20   particularly given that we expect in closing, as we heard

21   during defendants' Rule 29 motions, they plan to argue that

22   some of Sergeant Edwards's injuries were stress related or

23   something like that, related to her concussion, head

24   injury-related symptoms.  So I think being able to show that

25   there were multiple sufficient injuries under which a trier of

1    fact could find beyond a reasonable doubt that defendants

2    caused is important here.

3          THE COURT:  I think the first sentence allows you to

4    do that because I would be instructing myself that whatever

5    injury has to be one that is painful and obvious or is of a

6    type for which medical attention ordinarily would be sought.

7    And you can argue that, that this is a painful and obvious

8    injury or that is an injury for which she actually did seek

9    medical attention.

10          I don't see any injuries that you're suggesting ore

11   alleging that Officer Edwards suffered that wouldn't -- that

12   you wouldn't be able to make the argument if I didn't include

13   the second sentence.  But if you have an example, I don't want

14   to instruct myself in a way that deprives you of making an

15   argument that you need to prove an element of the offense.  I'm

16   just not seeing where the dispute really is here on the facts

17   of this case.

18          MR. MARSHALL:  I appreciate that, Your Honor.  And I

19   don't question Your Honor's ability to apply the facts in that

20   way in this case.  I think that second sentence is an important

21   clarification that this is a serious burden that the Government

22   has to meet but it's not an incredibly high one in terms of the

23   severity of the injury that has to be proved.

24          I think that first sentence is a little vague in terms

25   of what it describes in terms of injury.  What does it mean for

1    an injury to be obvious?  Does that mean your arm is half

2    severed?  No.  It means a cut or burn or something that is

3    readily apparent.  So I think that second sentence is an

4    important clarification to that.

5             THE COURT:  Okay.  I'll just take a -- I want to look

6    at the pattern instruction cited, and I'll let you know where I

7    end up on that.  But let's move on to the next.

8             So we've resolved aiding and abetting.  I'm going to

9    look at the bodily injury.  I think we have to deal with

10   "inflict."

11            MR. MARSHALL:  That's correct, Your Honor.  So Your

12   Honor, for this and then for the remaining arguments that we'll

13   be responding to for Mr. Johnson, I think the underlying issue

14   is whether or not some additional heightened requirements

15   should be implied within the language of the statute.

16            Here, I think that's what is being done with

17   "inflict."  I think there are several court cases that have

18   just taken the everyday ordinary meaning of "inflict" and found

19   that to be sufficient.  That's the Garcia Camacho case out of

20   the 9th Circuit, and that seems to be what should be

21   straightforwardly done here.

22            I mean, we have Supreme Court cases that counsel for

23   Mr. Johnson cited about a drug overdose, which doesn't seem

24   applicable here.  In that case we would have causes of whether

25   or not it was a drug overdose versus cardiac arrest that caused

1    death, where I think that's just really confusingly applied in

2    this context and would create a strange gap in liability to

3    proving bodily injury here.

4              Where I think the example Your Honor discussed about

5    three people attacking a person with bats, where if two people

6    held the person down while one person struck them with bats,

7    those two people that held them down could be held responsible

8    under that inflict theory, but not if they were using bats and

9    hitting the person along with that person, if you can't prove

10   that.  Which seems like an absurd result here and one that

11   can't have meant to be applied here -- or implied under the

12   statute.

13             THE COURT:  So to be clear, it's the Government's

14   position that this does not require but-for causation?

15             MR. MARSHALL:  Yeah, that's correct, Your Honor.  And

16   we would also disagree that "inflict" as it appears in the

17   statute should carry anything other than its everyday ordinary

18   meaning.

19             THE COURT:  What is your position about what that

20   everyday ordinary meaning is?

21             MR. MARSHALL:  To cause.

22             THE COURT:  To cause.

23             And in your view, what does it mean to cause?  The

24   defense is arguing but-for causation.  Are you saying --

25             MR. MARSHALL:  Well, Your Honor, I think that's a way

```
1    to cause.  But I don't think it's the only way to.  And I don't

2    think there's any justification within the text of the statute

3    or the purposes of the statute that would exclude something

4    like three people attacking an officer with a bat or five

5    people shoving a very heavy, large object toward an officer.

6    That they could somehow evade liability if it's unable to show

7    which of them exactly caused it.

8              THE COURT:  Okay.

9              MR. MARSHALL:  And, Your Honor, I'd next address the

10   dangerous weapon prong.  And here I think the difference in

11   definition is material.  Let me find where defendant's

12   definition was in their instructions.

13             So it's more than just the likely versus capable

14   distinction.

15             THE COURT:  Right.

16             MR. MARSHALL:  It's capable of being used as such or

17   likely to endanger life or inflict great bodily harm.  So

18   that's introducing this new concept of great bodily harm.

19             The Government's instructions cite controlling

20   precedent in the circuit.  US v. Arrington.  Counsel for

21   Mr. Johnson cites a few recent District Court decisions but the

22   Government understands these to be the exceptions to the

23   accepted definition, as set by controlling D.C. Circuit

24   precedent.  And for a more recent example, I would point to

25   Judge Contreras's jury instructions in U.S. v. McAbee, which
```

1    took place just a couple weeks ago.

2            THE COURT:  Mr. Richman, let me ask you.  I'm just

3    looking, for example, at -- I'm on Page 24 of 50 in ECF 301-1.

4    So at this particular instruction it says:  Second, an object

5    is a deadly or dangerous weapon if the object is capable of

6    causing serious bodily injury or death to another person and

7    the defendant carried it with the intent that it be used in a

8    manner capable of causing serious bodily injury or death.

9            And that's a little bit different from what I thought

10   you were objecting to, this idea kind of in theory it's capable

11   of being used in such a way.  The Government is proposing an

12   instruction that would nonetheless also require the defendant

13   to intend to use it in that way that's capable or bringing

14   about the result.

15           Do you object to that?

16       MR. RICHMAN:  Your Honor, I think our -- the problem

17   is, though, that the word "capable" still brings in a very low

18   possibility of it causing that.  So you intend to use it in a

19   way that has a slight chance of causing that result.  We don't

20   think that's using it in a manner that's deadly or dangerous.

21   We think he has to use it in a way likely to cause that result.

22           THE COURT:  Okay.  Can you address the "capable"

23   versus "likely" argument?  Because I understand -- that's the

24   extent -- if "likely" replaced "capable," you'd be fine with

25   what the Government proposes in their proposed instructions?

1              MR. RICHMAN:  Yes, Your Honor.  I don't want to

2    necessarily speak for everybody, but yes.

3              THE COURT:  What is your position on that

4    Mr. Marshall?

5              MR. MARSHALL:  Your Honor, I think the bottom line the

6    Government would draw here is that our definition relies on

7    controlling D.C. Circuit precedent and is the majority view in

8    this District.  And we'd also point to the Robertson decision,

9    which also -- the District Court ruling in Robertson, which

10   also took the same approach.

11             So we don't see a justification to deviate from that

12   circuit precedent from the typical approach to set this higher

13   standard for this without some further justification.

14             THE COURT:  Okay.

15             MR. RICHMAN:  Can I just respond briefly?

16             THE COURT:  Yes.

17             MR. RICHMAN:  I don't think there's any conflict

18   between this and what's found in the circuit cases.  I think

19   this is just a gloss that makes it clear to more correctly

20   state the law.  I don't think any of the circuit cases are

21   saying that our standard is not the right law.  They just don't

22   say it as clearly as I'm asking it to be.

23             I think all -- the three judges that we cited that

24   used the language we're requesting knew of that law and

25   believed that this language likely reflects that law.  So I

1   don't think it's a question of conflict.

2          MR. MARSHALL:  Your Honor, I would argue there is a

3   conflict because our intended decision uses the word "capable"

4   and not the word "likely," and those words clearly have

5   different meanings.

6          THE COURT:  Okay.

7          MR. MARSHALL:  And Your Honor, unless you have further

8   questions on --

9          THE COURT:  No, I don't have any other questions on

10  that.

11          MR. MARSHALL:  I believe the last issue to address is

12  the 1752 knowingly issue.

13          THE COURT:  Yes.

14          MR. MARSHALL:  I'd first like to note just the text of

15  the statute.  "Knowingly" appears several times.  I think the

16  most kind of applicable way it appears is in 1752(a)(1), where

17  it requires or penalizes:  Knowingly entering or remaining in

18  any restricted building or grounds without lawful authority to

19  do so.

20          It uses "knowingly" several times within the statute

21  (a)(1) through (a)(5).  It doesn't use it in 1752(c)(2), where

22  the defendant would have it implied in.  I think it would be a

23  better argument for counsel for Mr. Johnson if the statute read

24  something like:  Knowingly enter or remain in a restricted

25  building or grounds, restricted by virtue of a Secret Service

1    protectee.

2         I think that's maybe a more arguable point that

3    knowingly extends all the way through that clause to include

4    it.  But here it's in a totally different section.  Several of

5    the sections begin with "knowingly."  This one does not.  So I

6    point to the reasoning in the Couy Griffin case, which spells

7    this same reasoning out.  Rejects it as well.

8         So I think this is just another instance where taking

9    the step of implying this heightened standard into the statute,

10   where it's nowhere justified in the text, let alone the

11   purposes where it's clearly a jurisdictional element, a

12   requirement of the statute, that goes little to culpability.  I

13   don't think it's helpful to imagine scenarios where a

14   restricted perimeter is established in a far-off woods

15   somewhere where here we're dealing with the U.S. Capitol.  I

16   think it's plain as the context we're talking about.

17        And so, Your Honor, I just don't see a justification

18   for this.  I know Judge Lamberth in one case did impose this

19   requirement.  I don't -- I'm not sure if he has done that in

20   his other 1752-related cases.  I'm not aware of any other case

21   that's ever set that requirement.  I'm happy to answer further

22   questions on that or any of the others.

23        THE COURT:  I think I understand.  Is it possible for

24   you to send me a Word version of -- or do I even need that?

25   Would it be helpful to have a Word version -- can you send me a

1    Word version of your proposed jury instructions?

2            MR. MARSHALL:  Sure, Your Honor.

3            THE COURT:  And then I have your arguments, so I can

4    just make edits and circulate the final version.

5            MR. MARSHALL:  Thank you, Your Honor.

6            THE COURT:  Do you want to be heard?

7            MR. RICHMAN:  Yes.  Can I --

8            THE COURT:  Yes.  Sure.

9            MR. RICHMAN:  Let me briefly -- just a couple things.

10   First, on that last part about Section 1752 and knowledge about

11   the Vice President's presence.  The Government said it would be

12   different if it said, "knowingly in a restricted building where

13   a protectee is."  That is essentially what the statute says.

14   It says "knowingly in a restricted building" and then later it

15   tells you what words you should put there for what restricted

16   building means.

17           All the Supreme Court cases we cited talk about how

18   "knowingly" modifies everything after.  And "knowingly" is

19   before every act in the statute.  1752(a) are all the acts.

20   The (c) is in the definitions.  "Knowingly" wouldn't be in the

21   definitions.  That's just not -- doesn't make any sense.

22           The claim that it's a jurisdictional element, I mean

23   it's the offense is being in the presence of a protectee.  It's

24   not just a mere jurisdictional element, like crossing a state

25   line in some federal crime.  So that's on 1752.

1            And then lastly, I want to go back to, I think this is

2       the biggest issue in the entire case, is this issue of multiple

3       causation and the issue of whether it's but-for causation.  As

4       I said, I think Burrage addresses this clearly and I'm going to

5       read a quote from Burrage, which is 571 U.S., and this is 213

6       to -14:  Our insistence on but-for causality has not been

7       restricted to statutes using the term "because of."  We have,

8       for instance, observed that in common talk the phrase "based

9       on" indicates a but-for causal relationship.  It cites Safeco.

10      And that the phrase "by reason of" requires at least a showing

11      of but-for causation.  And a number of cites.

12            And then it cites a number of state court cases with

13      similar language, such as resulting in statutes.

14            Ours is stronger language than any of those things,

15      like "because of" or "resulting in."  Its "inflict."  So

16      because of that I think there's no question that Burrage does

17      not allow the Court to just say, if the Court finds that each

18      of the defendants actions somehow contributed to an event, that

19      that is enough based on -- sort of multiple acting in concert,

20      that's enough to find that each of them inflicted.

21            That's just not the law.  The Court has to find that

22      each of them is the but-for cause.  Or as we said, I think,

23      it's the direct physical cause.

24            THE COURT:  Okay.

25            MR. MARSHALL:  Your Honor, just to briefly respond to

```
1   those two arguments.  I would -- on the 1752 point, I'd note
2   that -- I would agree with counsel for Mr. Johnson that it is
3   the 1752(a) section that outlines the prohibited conduct, and
4   that's where it included "knowingly" and that's what doesn't
5   include that Secret Service protectee language.
6           I would also note the Burrage case that counsel for
7   Mr. Johnson isn't wholly supportive of exclusively but-for
8   causation as the standard.  It says, for instance, quote:
9   Courts have not always required straight but-for causality.
10          And quote:  Multiple sufficient causes that
11  independently but concurrently produce result can be included
12  on occasions as well.
13          So I just want to add those caveats that I don't think
14  Burrage should be read as wholly excluding anything but but-for
15  causality.
16          THE COURT:  Okay.  Does any other defendant want to be
17  heard on any issue related to elements or definitions?
18          MR. WOODWARD:  Briefly, Your Honor, on the question of
19  deadly or dangerous weapon.
20          THE COURT:  Yes.
21          MR. WOODWARD:  I'll actually confess that I hadn't
22  noticed until the Court drew attention to the fact that on
23  Page 24 of the Government's attachment to ECF-301, they are
24  providing a different definition of "deadly or dangerous
25  weapon" for the 1752 counts than they're using for the 111
```

1    counts.

2            That caught my attention because I argued the Klein

3    case on which my colleague is referring and using his

4    definition, and as counsel were debating, it seemed to me that

5    Arrington is really not distinguishable from Klein.  I know

6    Arrington well.  In Arrington, the defendant was seeking to add

7    a fifth element to the dangerous or deadly weapon requirement,

8    which is to say that not only could the object have been used

9    in a manner that was deadly or dangerous, not only did the

10   defendant intend to use the object in a manner that was deadly

11   or dangerous, but, in fact, the defendant actually then used

12   the object in a way that was deadly or dangerous.

13           And the Circuit said, no, if you're carrying an object

14   that can be deadly or dangerous and your intent is to use it in

15   a manner that's deadly or dangerous, you've satisfied the

16   requirements of the statute.

17           In their definition as to 1752, they've now omitted

18   any requirement that the object be used.  And they simply

19   require that these defendants be carrying an object that could

20   be deadly or dangerous without using it in any manner, and

21   they're going to then argue to the Court that they've

22   successfully proved intent to use that object in a way that is

23   deadly or dangerous.

24           My point in all of this is that it becomes unclear

25   which definition -- well, can we rephrase that --

1        THE COURT:  Can I stop you right there.

2        MR. WOODWARD:  Yeah.

3        THE COURT:  Does the Government -- I didn't notice

4   that either.  Can we replace "used" for "carried"?  No.

5        MR. MARSHALL:  Your Honor, the language of 1752

6   differs from Section 111, where it criminalizes using or

7   carrying.  And so that's the reason for the differing

8   definitions there.  And you still have to prove up intent and

9   you can do it in the same way either --

10        THE COURT:  Right, yeah.

11        MR. MARSHALL:  Say, for example -- sorry, Your Honor.

12   I would just note that the Robertson case, for example, is apt

13   here, I think, where they were found to have 1752 liability

14   because of the way he carried it in the building advanced an

15   intent to use a pipe as a deadly weapon.  So that's one example

16   where carrying can be sufficient --

17        THE COURT:  So it's "used" or "carried"?

18        MR. MARSHALL:  That's correct, Your Honor.

19        THE COURT:  So you wouldn't have a problem adding

20   "used" to Page 24?

21        MR. MARSHALL:  If it were to state "used or carried"?

22        THE COURT:  Yes, "used or carried."

23        MR. MARSHALL:  No issue with that, Your Honor.

24        THE COURT:  You object to "carried," Mr. Woodward?

25        MR. WOODWARD:  Exactly right, Your Honor.

1           THE COURT:  I'll look at Robertson again.  But I would
2    be inclined to add "used or carried."  But I'll look at
3    Robertson.  So your argument is "carried" isn't an accurate
4    statement of law with respect to 1752.
5           MR. WOODWARD:  No, because the Government's correct
6    that the statute does --
7           THE COURT:  Because one is talking about assault.  So
8    obviously, you have to use it.  This is talking about impeding,
9    interfering, etc.  So it's conduct that would go toward actions
10   someone may take to accomplish --
11          MR. WOODWARD:  Exactly right.
12          THE COURT:  Right.  So what --
13          MR. WOODWARD:  I certainly think adding "used" is
14   assist -- I'll take a look at Robertson.  I'm candidly not
15   familiar with what the District Court in Robertson did.  But if
16   we're going to treat these as two different statutes then I
17   think then -- as they are, then I'm not sure we should presume
18   that 111 and the definition under 111 applies to 1752.
19          Because it's, of course, a very different thing to use
20   an otherwise harmless object in a manner that is deadly or
21   dangerous than it is to carry that otherwise harmless object.
22          And so here, let's -- you know, let's not mince words.
23   We're talking about -- I believe for everybody except
24   potentially Mr. Samsel, we're talking about the bike racks.
25   They weren't carrying around bike racks.  So the idea that the

1    Government can argue that in pushing and pulling on these bike

2    racks they were, quote, carrying them for purposes of the

3    statute, and inherently, in the pushing and pulling, or put

4    differently, carrying the bike racks, they must have intended

5    to use those bike racks in a manner that was dangerous or

6    deadly is a bridge too far.  So on the facts in this case,

7    carrying is inapplicable.

8              THE COURT:  Okay.

9              MR. MARSHALL:  Your Honor, the Government does not see

10   the harm in including the language that's explicitly in the

11   statute in the definition of dangerous --

12             THE COURT:  Yeah, I think I misunderstood what he was

13   saying.  I think the argument is not that "carried" is

14   incorrect but given your theory it's not --

15             MR. MARSHALL:  Well, Your Honor, for Mr. Samsel, in

16   particular, at certain points he's holding a plank of wood that

17   he then used as a weapon.  So at that point, he's carrying it.

18   We would argue that the fact that he later uses it as a weapon

19   indicates that at one point he was carrying it with the intent

20   to use it as a weapon.

21             THE COURT:  In the element section it says "used or

22   carried."  I'll just add "used or carried" to the bottom, just

23   for consistency.  I think either party is free to ask me to

24   find that the evidence -- well, you won't be asking me to find

25   that the evidence is not sufficient.  But any defendant is free

1    to make arguments that the Government did not sufficiently

2    prove those elements.  But it is in the statute and it's

3    different than the assault statute in terms of what it's

4    prohibiting.  So I'll make that adjustment.

5             MR. FEITEL:  Thank you, Your Honor.  I'll try to be

6    brief.  I just wanted to parse out for Your Honor how I think

7    the requirement of causation applies to 111.  I'd ask Your

8    Honor to consider it.  I think 111 is not a model of

9    legislative clarity.  But as I understand it, it has three

10   components and some of the components have subsections.  I'm

11   talking about 111(a) to begin with, because our clients are

12   charged in the superseding indictment with 111(a) and 111(b).

13            So 111(a) makes anyone who forcibly assaults, resists,

14   supposes, impedes or Interferes with a law enforcement officer

15   during the performance of their duties, subject to simple

16   assault.  It then provides -- that's a one-year misdemeanor.

17            It then provides that there is a punishment of up to

18   eight years where that activity, the forcibly assaulting,

19   resisting and the like involves physical contact with the

20   victim or there was the intent to commit another felony, which

21   in this case the Government alleges are counts 1 and count 10.

22            So as to those particular counts -- to those elements,

23   the regular misdemeanor and the eight-year offense, I believe

24   that there's a proximate cause requirement.  I just want to

25   complete looking at the statute.

1          In the enhanced penalty section under 111(b), it says

2     whoever does the acts described above but uses a dangerous or

3     deadly weapon shall be fined not more than 20 years, as well as

4     someone who inflicts serious bodily injury.

5          As I see the statute, the "inflicting serious bodily

6     injury" has a requirement apart that my colleague argued about,

7     being the proximate -- physical touching.  But for the rest of

8     the statute, I think Your Honor needs to conclude and should

9     conclude that the standard is, in fact, but-for causality.

10         And I'd encourage Your Honor to look at the Burrage

11    case.  It says where there is no contextual indication to the

12    contrary, courts regularly read phrases like "results from" to

13    require but-for causality.  And they go on a little bit.

14         The Government pointed out that there was some

15    language about what happens when there's multiple causes.  But

16    the example that the Supreme Court used is if one person, I

17    think, fatally stabs the victim while the other independently

18    shoots them in the head, a reasonable fact finder could

19    conclude that each was an independent cause of death.

20         What I think Your Honor needs to have as the jury

21    instruction in the Court's mind when you evaluate this evidence

22    is that the Government needs to prove, which I don't think they

23    have at all, that there is proximate but-for cause for each of

24    the defendants to be found liable for all of the other injuries

25    or all the other assaultive theories, except for the "inflict,"

1    which has an even higher standard.  So I think that's the case.

2           And if this proximate cause analysis is correct, I

3    think Your Honor also needs to consider intervening causes, as

4    I laid out in my trial memo.  That's how I see this playing

5    out.  The Government can't be saying that just by being there

6    you're guilty.  Like you put your hand on the bar and somehow

7    you're guilty.

8           Let's imagine five other people are there, and one

9    person lifted it up and then another two people came running

10   like a battering ram at it and knocked the officers down in

11   another factual situation.  I think it would be easier to see

12   that the two that did the battering are the ones who have the

13   but-for cause and the others are not, especially given what

14   foreseeability requires.

15          My only suggestion is Your Honor look at the statute.

16   It makes my little head hurt but I do think it's important to

17   see how this plays out in terms of the hierarchy of charges,

18   because these are not greater and lesser offenses.  My

19   colleague, Ms. Rosen, pointed out my thinking about this was in

20   error.  They're not greater and lesser offenses.  They're

21   actually different offenses that have different elements and

22   different punishments.

23          So I'll leave it at that.

24          THE COURT:  Does any other defendant want to be heard?

25   Okay.  Anything more from the Government on any of these

1    points?

2          MR. MARSHALL:  Your Honor, I hate to drag this

3    discussion out further.

4          THE COURT:  That's okay.  This is important.

5          MR. MARSHALL:  I would just note that we're now pretty

6    far from the definition of "inflict."  We've now gotten into

7    these broader discussions of causation, which I do not think

8    this is the exact forum, Your Honor, to address those.

9          And I think it underscores that using "inflict" to

10   kind of shoehorn in these higher standards of causality is

11   unjustified here, and in no way is the Government proceeding

12   under a theory that defendants are somehow guilty by standing

13   near the bike racks or placing one hand passively on the bike

14   racks.

15         THE COURT:  All right.

16         MR. MARSHALL:  Thank you.

17         MR. RICHMAN:  I'm sorry, I have to respond briefly,

18   Your Honor.

19         We're not trying to shoehorn "inflict" into the

20   statute to increase the burden on the Government.  It is the

21   burden in the statute.  And Burrage talks about, of course,

22   lesser verbs than "inflict."  It does talk about multiple

23   causation, as the Government says, when multiple things happen

24   at the same time.  My colleague also talked about that.

25         And the ultimate holding with respect to that

1    situation is that each defendant can be held guilty for the --

2    can be found guilty for the substantive offense if their

3    conduct is the, quote, independently -- or an, quote,

4    independently sufficient cause.  So if there's multiple, two

5    people could both be guilty for an overdose, but each one has

6    to be independently sufficient.  If one's marijuana and one's

7    Fentanyl, each one's not going to be independently sufficient.

8         That's the standard.  We're not shoehorning anything

9    in.  The statute requires the Court to apply the word "inflict"

10   in looking at what the causation is for bodily injury, and the

11   Government is just trying to expand it into talking about

12   aggregate harm and acts in concert.  None of that has anything

13   to do with the issues before Your Honor.

14        THE COURT:  Okay.  All right.  Okay.  So you will send

15   me a Word version of the proposed jury instructions, and I will

16   make the edits that we've agreed on and make final decisions

17   about the couple remaining matters.  And then we'll be back

18   Thursday at 10:00 a.m. for closings.

19        If there are any demonstratives or any exhibits you

20   want to use in closing, if you-all could confer before we come

21   to Court to work out whether there's any issues or objections

22   with any demonstratives, that would be great.

23        MR. WOODWARD:  Sorry, Your Honor.  Can we start at

24   11:00 on Thursday?

25        THE COURT:  Sure.  Does anyone have an objection?  We

1   will finish Thursday -- let me ask you this.  How long do you

2   expect your closing to take?

3          MR. WOODWARD:  Roughly the same as opening.  So I

4   would put it at maybe 30 minutes.

5          THE COURT:  Mr. Feitel?

6          MR. FEITEL:  If Your Honor is going to hold me to what

7   I say, I would think about 40 minutes.

8          THE COURT:  How many?

9          MR. FEITEL:  About 40 minutes.

10          THE COURT:  For Mr. Johnson?

11          MS. ROSEN:  We would expect 30 or less.

12          THE COURT:  Okay.

13          MS. HALIM:  I think about the same.  Some of the video

14   is tedious but 30 minutes feels right.

15          MR. BRENNWALD:  Thirty-five.  It's like The Price is

16   Right.  You have to go one dollar above or something like that.

17          THE COURT:  Does the Government have a sense of how

18   long its closing will be?

19          MR. MARSHALL:  About an hour, Your Honor.  We would

20   prefer to start at 10:00 a.m., if at all possible.

21          MR. BRENNWALD:  So not to speak out of turn but I

22   believe Mr. Woodward doesn't get back to DCA until 10:15.  So I

23   don't think that's really a choice.

24          THE COURT:  We can start at 11:00.  We will finish on

25   Thursday.  But I do want to give you the heads up.  I want to,

1    obviously, go back and look at everything.  So I'm not planning

2    to deliver a verdict right away.  So we will set a date for me

3    to do that.

4           MR. BRENNWALD:  We talked about that, Your Honor.  I

5    don't know what the Court's going to do, but I know, like, in

6    Judge Kotelly's situation she tried one woman in a non-jury

7    case where she'd already had two jury trials in the same fact

8    pattern.  And she told that lawyer it was going to take two to

9    four weeks.  So I don't want the Court to feel pressured.  The

10   Court will do what it's going to do anyway.  But we understand

11   that.

12          THE COURT:  I just didn't want anyone to think I was

13   going to give a verdict right away on Thursday.

14          MR. BRENNWALD:  Last question I have, Your Honor, is

15   just so we can use that to prepare for closing.  Does the Court

16   expect to send a final jury instructions out sometime tomorrow?

17          THE COURT:  Yes.

18          MR. BRENNWALD:  Okay.  Thank you.

19          THE COURT:  Just one second.

20          One question for the Government.  I think, Ms. Foster,

21   this might be you.  You admitted 1103BB as part of a series?

22   Or no, you didn't admit this because of the stipulation?

23          MS. FOSTER:  Your Honor, I handed that up to the

24   Court, so that the Court could see it, but I haven't moved to

25   admit it and I don't plan --

1          THE COURT:  It's not in.  Okay.  I wanted to make

2     sure.

3          MS. HALIM:  Your Honor, before we adjourn for today,

4     if that's soon coming, could we go through and just verify the

5     exhibits?  I tried very hard to keep track of what was admitted

6     but I'm not positive that I have a hundred percent.

7          MR. WOODWARD:  I think we can do that with

8     Ms. Franklin.

9          THE COURT:  Sure.

10          MS. HALIM:  Okay.  Great.  Thank you.

11          MR. WOODWARD:  I'll volunteer her.

12          THE COURT:  All right.  Thanks, everyone.

13     (Proceedings concluded at 2:56 PM)

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Stacy Johns, certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.


/s/ Stacy Johns                    Date: October 31, 2023

Stacy Johns, RPR
Official Court Reporter

102/17 105/7 105/9
115/17

**DEFENDANT
BLYTHE: [4]** 56/12
56/15 56/18 56/20
**DEFENDANT GRANT:
[3]** 54/23 55/1 55/3
**DEFENDANT
JOHNSON: [5]** 55/6
55/9 55/12 55/14 55/17
**DEFENDANT
RANDOLPH: [4]** 55/23
56/1 56/3 56/6
**DEFENDANT
SAMSEL: [3]** 54/12
54/17 54/19
**DEPUTY CLERK: [3]**
4/2 52/14 62/17
**MR. BRENNWALD:
[21]** 25/11 29/23 30/1
49/25 51/17 51/23 53/2
60/3 60/9 60/11 60/15
60/19 60/22 65/11
65/18 85/9 117/15
117/21 118/4 118/14
118/18
**MR. FEITEL: [17]** 9/24
10/2 10/5 51/1 52/25
58/10 58/12 83/1 83/5
83/9 85/1 90/17 91/1
91/3 112/5 117/6 117/9
**MR. MARSHALL: [47]**
67/24 68/2 68/8 82/25
85/13 85/19 88/7 88/11
88/25 89/5 89/12 90/1
90/24 91/2 91/5 91/9
91/15 93/3 94/13 96/11
96/19 97/18 98/11
99/15 99/21 99/25
100/9 100/16 102/5
103/2 103/7 103/11
103/14 105/2 105/5
106/25 109/5 109/11
109/18 109/21 109/23
111/9 111/15 115/2
115/5 115/16 117/19
**MR. MIRABELLI: [14]**
5/23 9/20 32/13 39/3
45/4 45/21 46/2 46/24
47/8 49/15 56/24 57/12
59/4 60/12
**MR. RICHMAN: [68]**
16/17 16/19 31/18 49/1
49/4 68/12 68/17 68/25
69/8 69/11 70/14 70/17
70/21 70/24 73/7 73/10
74/2 74/9 74/15 74/20
75/7 75/12 76/2 76/4
76/7 77/9 77/13 79/6
80/10 80/17 80/24 81/2
81/4 81/9 81/13 81/18
82/5 82/11 82/18 87/2
87/6 87/13 87/17 87/22
87/24 88/13 89/14
89/17 89/21 91/17
91/19 92/3 92/8 92/10
92/15 92/21 93/10
93/13 93/24 95/2 95/7
101/16 102/1 102/15

**MR. WOODWARD:
[43]** 4/9 4/12 5/1 5/6
5/25 6/2 48/17 48/21
50/9 50/15 50/23 52/23
57/7 57/15 57/22 58/2
58/6 60/25 61/4 61/7
61/20 62/2 62/13 62/16
63/9 63/13 63/15 63/18
63/24 67/2 67/12 95/20
107/18 107/21 109/2
109/25 110/5 110/11
110/13 116/23 117/3
119/7 119/11
**MS. FOSTER: [9]** 5/13
61/24 62/20 63/22
64/18 64/22 65/6 65/9
118/23
**MS. HALIM: [18]** 21/25
22/2 51/8 51/14 53/3
58/18 58/22 59/7 59/11
59/15 59/19 59/23 60/1
85/4 96/7 117/13 119/3
119/10
**MS. ROSEN: [7]** 51/6
53/4 58/15 65/23 66/1
66/7 117/11
**THE COURT: [244]**

**-**

**-14 [1]** 106/6

**.**

**.5 [1]** 59/16

**/**

**/s [1]** 120/8

**0**

**0537 [1]** 1/3
**0819 [1]** 2/10

**1**

**10 [10]** 21/5 22/6 24/14
25/9 27/1 28/11 39/18
69/2 69/8 112/21
**10-minute [1]** 52/6
**10-year [1]** 78/11
**10:00 [1]** 1/5
**10:00 a.m [2]** 116/18
117/20
**10:15 [1]** 117/22
**10th [1]** 76/7
**11 [2]** 16/23 92/2
**1103A [3]** 3/3 5/14 5/17
**1103AA [3]** 3/6 5/14
5/20
**1103B [2]** 3/3 5/17
**1103BB [1]** 118/21
**1103C [2]** 3/3 5/17
**1103D [2]** 3/3 5/17
**1103E [2]** 3/3 5/17
**1103F [2]** 3/3 5/18
**1103G [2]** 3/3 5/18
**1103H [2]** 3/3 5/18
**1103I [2]** 3/4 5/18
**1103J [2]** 3/4 5/18
**1103K [2]** 3/4 5/18

**1103L [2]** 3/4 5/18
**1103M [2]** 3/4 5/18
**1103N [2]** 3/4 5/18
**1103O [2]** 3/4 5/19
**1103P [2]** 3/4 5/19
**1103Q [2]** 3/5 5/19
**1103R [2]** 3/5 5/19
**1103S [2]** 3/5 5/19
**1103T [2]** 3/5 5/19
**1103U [2]** 3/5 5/19
**1103V [2]** 3/5 5/19
**1103W [2]** 3/5 5/19
**1103X [2]** 3/5 5/20
**1103Y [2]** 3/6 5/20
**1103Z [2]** 3/6 5/20
**111 [25]** 6/8 9/14 17/7
18/2 18/15 19/1 19/5
22/5 23/7 34/14 37/5
45/5 45/6 49/11 107/25
109/6 110/18 110/18
112/7 112/8 112/11
112/12 112/12 112/13
113/1
**111A [1]** 6/5
**11:00 [2]** 116/24
117/24
**11:23 [1]** 52/12
**12 [2]** 91/2 92/2
**120 pounds [1]** 28/18
**12:00 [1]** 67/17
**13 [1]** 74/16
**1300 [1]** 2/6
**1365 [2]** 76/10 76/17
**13th [1]** 1/18
**14 [5]** 71/2 76/5 91/16
91/20 106/6
**15 [1]** 35/6
**1505 [1]** 2/6
**1512 [13]** 7/19 9/16
10/15 14/10 39/18 40/2
40/20 71/8 71/9 71/11
71/12 72/11 72/15
**15:27:20 [1]** 59/1
**1650 [1]** 2/9
**17 [1]** 77/13
**1752 [21]** 20/7 23/10
37/9 37/17 77/11 78/15
82/17 103/12 103/16
103/21 105/10 105/19
105/25 107/1 107/3
107/25 108/17 109/5
109/13 110/4 110/18
**1752-related [1]** 104/20
**1776 [1]** 33/11
**18 [3]** 10/18 23/10
83/18
**19129 [1]** 2/12
**1993 [1]** 45/24
**1:00 [1]** 67/15
**1:20 [1]** 60/16
**1:21-0537 [1]** 1/3
**1:30 [3]** 67/15 67/16
67/16
**1:46 mark [1]** 59/15
**1:50 [1]** 59/20
**1:50 mark [1]** 59/19

**2**

**20 [1]** 30/13
**20 feet [1]** 35/6
**20 seconds [1]** 60/6
**20 years [1]** 113/3
**20-year [4]** 75/21 76/20
77/4 81/5
**20001 [3]** 1/15 2/3 2/20
**20003 [1]** 2/15
**20008 [1]** 2/6
**2014 [2]** 69/16 71/17
**2022 [1]** 37/7 71/7
**2023 [2]** 1/5 120/8
**204 [1]** 72/1
**21 [1]** 40/16
**213 [1]** 106/5
**213-894-4242 [1]** 1/19
**215-300-3229 [1]** 2/13
**22314 [1]** 2/10
**231 [1]** 10/18
**24 [3]** 101/3 107/23
109/20
**29 [23]** 6/3 7/19 10/10
10/14 15/9 16/8 22/3
23/25 31/5 31/15 32/14
49/24 58/7 58/13 58/16
59/23 60/23 63/16
63/25 64/1 64/9 72/2
96/21
**29s [1]** 5/25
**2:00 [1]** 30/7
**2:56 [1]** 119/13

**3**

**3.200 [1]** 83/17
**30 [2]** 30/13 117/11
**30 minutes [2]** 117/4
117/14
**30 seconds [1]** 59/9
**301 [1]** 107/23
**301-1 [2]** 87/18 101/3
**301-928-7727 [1]** 2/16
**308 [1]** 41/20
**31 [2]** 1/5 120/8
**312 [1]** 1/18
**3229 [1]** 2/13
**327 [1]** 24/22
**333 [1]** 2/19
**3580 [1]** 2/12
**3:27 p.m [1]** 59/2

**4**

**40 [3]** 24/3 40/16 117/9
**40 feet [1]** 30/13
**40 minutes [1]** 117/7
**400 [1]** 2/3
**4028 [1]** 1/16
**405 [2]** 51/23 60/4
**4242 [1]** 1/19
**476 [1]** 45/24
**4:40 p.m [1]** 43/13
**4th Circuit [1]** 20/13

**5**

**50 [3]** 92/2 92/2 101/3
**500 [1]** 2/9
**508 [1]** 45/23
**5104 [1]** 24/3
**537 [1]** 4/3
**571 [2]** 71/25 106/5
**5th [1]** 76/7

**6**

**6-725 [1]** 1/15
**601 [1]** 1/15
**607 [1]** 37/6
**619-546-6735 [1]** 1/22
**6293 [1]** 1/21
**6637 [1]** 2/7
**6735 [1]** 1/22
**6th [8]** 8/6 8/16 36/7
37/8 43/22 44/20 58/25
69/20

**7**

**703-600-0819 [1]** 2/10
**725 [1]** 1/15
**7447 [1]** 2/4
**7727 [1]** 2/16

**8**

**880 [1]** 1/21
**8807 [1]** 1/22

**9**

**90012 [1]** 1/19
**902.14 [2]** 4/7 4/14
**92101-8807 [1]** 1/22
**922 [1]** 2/15
**9th [1]** 98/20

**A**

**a.m [3]** 1/5 116/18
117/20
**AA [1]** 5/15
**abetted [1]** 73/22
**abetting [24]** 18/7
35/15 37/24 49/7 49/19
68/16 68/18 68/23
69/17 69/25 70/2 70/5
70/11 70/18 73/25 74/1
74/6 83/13 83/17 83/20
86/12 86/15 89/23 98/8
**abettor [4]** 83/21 83/24
84/2 86/2
**abettor's [1]** 84/7
**abettors [1]** 38/14
**ability [1]** 97/19
**able [6]** 12/3 43/7 46/9
47/2 96/24 97/12
**ably [1]** 28/5
**about [113]** 8/2 8/4 8/5
8/10 8/14 8/15 9/9 10/8
11/13 14/16 16/11 17/6
17/21 18/3 26/1 27/4
27/6 28/5 28/23 30/6
31/8 31/22 33/23 34/9
36/5 37/17 38/3 39/18
42/8 42/16 43/19 44/3
43/17 47/18 53/17
54/14 54/21 55/8 55/21

**A**

**about... [73]** 56/14 57/3 60/15 63/3 64/3 64/11 65/13 65/18 67/7 67/8 67/10 67/20 67/21 69/13 69/22 70/2 70/2 70/5 70/6 70/7 70/10 70/13 70/18 71/8 71/13 71/17 72/3 72/3 72/13 72/21 74/12 75/19 76/25 78/1 78/23 79/14 80/14 81/15 81/16 83/7 85/3 86/6 86/8 90/21 92/25 93/20 96/4 98/23 99/4 99/19 101/14 104/16 105/10 105/10 105/17 110/7 110/8 110/23 110/24 112/11 113/6 113/15 114/19 115/21 115/22 115/24 116/11 116/17 117/7 117/9 117/13 117/19 118/4

**above [4]** 18/22 113/2 117/16 120/5

**above-entitled [1]** 120/5

**abrasion [4]** 92/12 93/17 94/2 95/16

**abrasions [1]** 94/6

**absence [1]** 40/15

**absent [2]** 63/7 84/14

**absolute [2]** 53/8 57/1

**absolutely [3]** 10/3 18/10 23/24

**absolve [1]** 13/23

**absurd [2]** 38/10 99/10

**accept [1]** 62/11

**accepted [1]** 100/23

**accepting [2]** 5/11 62/23

**accepts [1]** 19/3

**accomplice [1]** 69/21

**accomplish [1]** 110/10

**accordingly [1]** 85/18

**accurate [6]** 81/14 88/15 88/20 94/11 110/3 120/4

**acknowledged [5]** 6/4 6/14 6/16 7/15 19/2

**acquit [1]** 12/2

**acquittal [4]** 6/3 22/3 24/1 31/16

**acquitted [3]** 10/12 13/16 15/9

**across [3]** 32/25 38/6 48/3

**act [14]** 10/25 11/22 24/4 25/1 26/10 34/18 45/7 45/10 46/22 86/19 87/25 89/6 89/10 105/19

**acted [5]** 24/10 37/21 39/22 39/24 40/3

**acting [3]** 24/20 25/10 106/19

**action [3]** 1/2 70/7 74/5

**actions [7]** 8/17 34/20

40/14 42/1 73/5 106/18 110/9

**activity [3]** 24/8 73/13 112/18

**acts [13]** 13/17 13/22 24/6 34/18 41/8 84/4 86/20 87/25 89/6 89/10 105/19 113/2 116/12

**actual [5]** 39/4 69/25 70/14 83/24 86/2

**actually [12]** 21/21 32/21 36/1 41/6 57/8 61/1 68/17 69/1 97/8 107/21 108/11 114/21

**add [5]** 94/20 107/13 108/6 110/2 111/22

**adding [5]** 86/11 90/15 94/24 109/19 110/13

**addition [2]** 6/16 20/20

**additional [8]** 22/24 63/11 70/1 85/11 86/11 94/24 95/3 98/14

**address [10]** 20/6 21/4 68/21 77/10 82/19 91/5 100/9 101/22 103/11 115/8

**addresses [2]** 89/20 106/4

**adduced [1]** 15/5

**adjourn [1]** 119/3

**adjustment [1]** 112/4

**admission [2]** 59/2 62/8

**admit [8]** 3/2 3/7 51/9 57/10 62/18 63/8 118/22 118/25

**admitted [8]** 5/16 57/9 57/13 59/5 60/13 61/15 118/21 119/5

**adopt [2]** 27/18 48/18

**adopted [1]** 26/24

**advance [2]** 4/22 85/14

**advanced [2]** 43/16 109/14

**advances [1]** 41/21

**advancing [1]** 40/10

**advice [3]** 53/17 53/20 54/16

**advise [1]** 54/2

**affect [2]** 34/5 34/7

**affecting [1]** 6/12

**affirmative [4]** 70/7 85/7 88/2 89/7

**after [17]** 8/24 11/15 11/17 12/1 22/25 24/18 25/25 31/8 31/19 36/22 44/2 52/2 57/18 57/20 65/15 89/2 105/18

**afternoon [3]** 64/11 67/3 67/19

**again [24]** 19/16 21/1 21/22 24/14 26/22 27/2 27/17 28/5 29/14 36/4 36/15 39/14 53/22 58/8 63/25 66/19 70/4 72/16 73/22 76/4 76/19 76/20 77/13 110/1

**against [24]** 4/16 7/5

4/4 16/22 16/23 17/9 18/5 18/6 18/15 18/15 19/1 20/24 21/23 25/15 25/21 26/8 30/5 39/10 41/19 46/19 47/19 48/12 53/10 66/4

**Agent [2]** 8/1 8/13

**aggravator [3]** 20/24 81/4 82/12

**aggravators [3]** 19/4 20/22 21/3

**aggregate [2]** 72/4 116/12

**ago [1]** 101/1

**agree [9]** 46/11 65/7 75/10 76/21 82/20 86/23 93/16 93/24 107/2

**agreed [4]** 51/11 71/22 81/19 116/16

**agreeing [1]** 95/15

**agreement [3]** 47/24 67/7 89/23

**agrees [1]** 32/2

**aid [2]** 86/20 89/10

**aided [2]** 2/22 73/21

**aider [5]** 83/21 83/24 84/1 84/7 86/1

**aiders [1]** 38/14

**aiding [24]** 18/7 35/15 37/24 49/7 49/19 68/15 68/18 68/22 69/17 69/25 70/2 70/5 70/10 70/18 73/24 74/1 74/5 83/12 83/17 83/19 86/12 86/15 89/23 98/8

**air [1]** 43/2

**akin [1]** 64/23

**al [1]** 4/4

**Alanis [1]** 78/21

**alerting [1]** 14/22

**Alexandra [1]** 1/20

**Alexandria [1]** 2/10

**all [90]** 4/4 4/16 9/17 9/21 9/23 10/23 13/3 15/19 15/22 16/9 16/19 17/2 17/4 18/23 20/15 21/19 22/8 23/9 23/10 24/13 27/14 31/14 31/16 31/21 32/12 32/24 32/25 33/18 34/25 35/16 36/10 36/17 38/13 38/14 41/4 44/24 45/6 46/3 46/11 47/9 47/24 47/25 48/5 48/15 48/21 49/7 50/3 50/4 52/1 52/11 53/7 54/20 55/18 64/18 65/5 65/11 67/4 67/14 68/4 68/21 69/15 69/16 70/10 72/9 73/11 75/2 78/14 78/22 82/14 82/20 84/10 85/9 87/6 90/19 94/6 96/4 96/9 102/23 104/3 105/17 105/19 108/24 113/23 113/24 113/25 115/15 116/14 116/20 117/20

**allegation [1]** 18/17

**allegations [2]** 19/5 44/15

**alleged [2]** 22/16 24/7

**alleges [1]** 112/21

**alleging [1]** 97/11

**allow [2]** 16/4 106/17

**allowed [1]** 66/5

**allowing [1]** 4/19

**allows [1]** 97/3

**almost [1]** 70/15

**alone [3]** 8/18 12/9 104/10

**along [5]** 26/4 45/16 45/17 63/7 99/9

**already [12]** 8/22 26/1 26/24 60/8 63/16 65/16 66/17 67/12 85/11 87/19 88/17 118/7

**also [64]** 6/16 6/17 10/12 14/10 15/16 18/7 18/16 19/1 21/7 22/20 27/1 30/10 34/6 35/14 37/6 37/23 39/12 39/13 39/15 43/10 44/18 45/19 47/22 48/18 49/20 57/15 68/23 69/16 74/13 76/8 76/12 77/14 78/21 85/7 91/20 99/16 101/12 102/8 102/9 102/10 107/6 114/3 115/24

**alternative [1]** 36/2 90/14

**although [4]** 6/13 60/5 66/23 81/13

**always [3]** 37/13 61/21 107/9

**am [4]** 52/12 59/19 60/11 62/3

**Amendment [2]** 14/20 45/22

**AMERICA [2]** 1/2 4/3

**American [1]** 41/15

**among [1]** 31/9

**amongst [1]** 24/23

**analogizing [1]** 41/2

**analysis [2]** 20/5 114/2

**analyst [3]** 4/18 4/19 4/23

**Angel [1]** 2/11

**Angeles [1]** 1/19

**angle [2]** 60/16 60/17

**angled [1]** 17/23

**angry [1]** 42/15

**another [12]** 15/11 34/23 57/9 60/16 66/11 69/14 71/7 101/6 104/8 112/20 114/9 114/11

**another's [1]** 70/8

**answer [5]** 30/20 31/22 46/3 56/9 104/21

**any [100]** 5/22 7/6 8/5 8/17 8/25 12/25 15/4 15/15 19/9 19/23 20/1 21/16 23/2 23/4 23/5 24/8 24/11 25/19 26/13

26/14 26/15 28/7 28/14 28/14 29/8 30/24 31/1 31/14 38/25 46/2 46/19 46/20 50/3 50/10 51/3 51/12 52/18 52/19 53/6 53/11 54/16 55/25 57/11 59/3 62/4 62/15 63/19 64/6 64/12 64/14 66/23 67/20 71/13 72/6 73/19 76/16 76/18 77/1 77/18 79/23 81/21 81/22 82/2 82/6 82/8 84/4 84/6 85/2 85/3 85/11 85/16 88/22 89/24 90/4 92/25 93/7 93/19 94/22 95/19 97/10 100/2 102/17 102/20 103/9 103/18 104/20 104/22 105/21 106/14 107/16 107/17 108/18 108/20 111/25 114/24 114/25 116/19 116/19 116/21 116/22

**anybody [3]** 13/1 49/25 76/20

**anyone [11]** 11/13 14/8 14/20 49/23 50/11 85/10 88/20 93/5 112/13 116/25 118/12

**anything [24]** 8/15 14/16 14/24 15/14 16/14 16/24 27/6 29/2 29/5 29/6 30/12 30/16 31/13 46/20 49/24 64/16 66/5 85/10 92/23 99/17 107/14 114/25 116/8 116/12

**anything's [1]** 29/24

**anyway [4]** 33/2 44/3 65/14 118/10

**anywhere [1]** 13/20

**apart [1]** 113/6

**apologies [2]** 66/19 91/9

**apologize [4]** 49/15 49/18 49/22 85/13

**apparent [1]** 98/3

**Appeals [1]** 84/15

**APPEARANCES [2]** 1/12 2/1

**appears [7]** 15/3 83/14 90/7 90/24 99/16 103/15 103/16

**applicable [3]** 85/23 98/24 103/16

**applied [5]** 35/4 86/1 86/10 99/1 99/11

**applies [5]** 20/5 83/18 84/10 110/18 112/7

**apply [3]** 73/2 97/19 116/9

**apportioning [1]** 70/6

**appreciate [1]** 97/18

**approach [2]** 102/10 102/12

**apt [1]** 109/12

**are [71]** 4/2 4/4 8/21 12/13 13/17 14/13

## A

**are... [65]** 14/19 19/5 20/7 20/7 22/6 23/9 24/4 24/7 27/8 33/1 36/4 36/5 38/4 38/12 38/13 39/8 44/24 44/25 47/11 47/12 50/7 52/5 54/10 55/6 60/10 64/14 64/19 64/24 64/24 64/25 65/20 67/5 67/10 67/11 67/23 68/13 69/1 70/1 73/12 73/14 75/2 75/23 82/20 84/1 84/13 87/12 89/4 92/22 92/24 93/1 94/2 98/17 99/24 102/20 105/19 107/23 110/17 112/11 112/21 114/8 114/12 114/13 114/18 115/12 116/19
**area [31]** 8/25 20/11 21/12 21/14 23/11 23/12 23/13 23/15 23/15 23/18 23/19 27/4 32/23 32/25 33/2 33/3 33/13 33/15 41/11 51/25 77/18 77/25 77/25 78/10 78/17 78/24 79/14 79/16 79/19 80/4 80/4
**arguable [1]** 104/2
**argue [20]** 10/6 10/9 14/7 16/6 19/4 35/11 36/5 58/8 84/18 84/21 90/13 93/5 94/15 94/18 96/21 97/7 103/2 108/21 111/1 111/18
**argued [3]** 26/25 108/2 113/6
**arguing [4]** 5/9 71/9 71/10 99/24
**argument [23]** 14/2 16/20 25/14 30/1 31/19 31/24 31/24 33/6 35/15 37/1 42/19 46/21 63/7 70/2 79/3 82/17 82/17 97/12 97/15 101/23 103/23 110/3 111/13
**arguments [21]** 14/8 16/10 22/10 22/21 25/12 26/24 27/18 32/18 32/20 45/13 48/19 48/21 64/8 72/21 83/2 84/20 85/7 98/12 105/3 107/1 112/1
**arm [1]** 98/1
**armor [1]** 43/17
**arms [1]** 30/11
**around [8]** 8/24 15/15 30/18 42/21 48/23 50/10 50/20 110/25
**arrangements [1]** 66/17
**arrest [2]** 37/3 98/25
**Arrington [4]** 100/20 108/5 108/6 108/6
**articles [1]** 5/2
**articulate [2]** 12/3 6/15

**articulated [2]** 1/17 23/12
**as [158]**
**ascends [1]** 43/10
**ask [20]** 7/9 9/12 12/1 12/6 14/10 16/8 60/3 69/24 72/19 84/9 85/15 86/25 91/6 91/23 92/22 94/9 101/2 111/23 112/7 117/1
**asked [3]** 13/21 17/14 31/20
**asking [10]** 4/23 52/18 52/19 52/20 73/2 75/5 75/6 75/10 102/22 111/24
**asks [2]** 58/8 61/21
**aspect [1]** 15/15
**assault [20]** 10/11 12/5 14/3 16/11 17/8 22/24 26/17 34/15 39/2 39/14 39/16 48/22 72/23 73/15 73/16 76/23 82/14 110/7 112/3 112/16
**assaulting [2]** 40/3 112/18
**assaultive [7]** 11/5 12/22 34/13 40/1 40/18 41/8 113/25
**assaults [2]** 25/15 112/13
**asserted [1]** 61/16
**assist [4]** 48/23 86/20 89/10 110/14
**assisting [1]** 70/8
**assists [1]** 96/17
**associated [1]** 4/18
**assume [3]** 30/24 40/24 62/9
**Assuming [1]** 73/8
**assumptions [1]** 53/12
**attachment [2]** 87/20 107/23
**attack [1]** 44/1
**attacked [1]** 44/3
**attacking [4]** 44/3 72/25 99/5 100/4
**attempt [14]** 26/18 32/3 34/11 34/11 39/13 49/5 49/9 49/10 49/11 49/12 49/16 49/17 49/20 49/22
**attempted [2]** 39/17 39/20
**attempting [1]** 29/20
**attempts [1]** 49/10
**attend [1]** 9/6
**attention [11]** 80/15 90/9 92/6 92/17 92/20 94/5 95/6 97/6 97/9 107/22 108/2
**attorney [3]** 15/16 55/21 56/14
**Attorneys [3]** 1/14 1/17 1/21
**attribute [1]** 19/8
**audible [1]** 29/4

**audio [1]** 59/12
**Augustine [1]** 43/1
**authenticity [1]** 4/12
**authority [2]** 77/20 103/18
**authorized [1]** 80/1
**Avenue [2]** 2/6 2/15 2/19
**avoid [1]** 37/20
**aware [7]** 6/4 6/23 7/20 8/20 27/10 80/24 104/20
**awareness [2]** 8/6 8/9
**away [9]** 12/21 14/6 17/24 38/16 38/18 42/20 42/20 118/2 118/13
**axis [1]** 13/8

## B

**back [31]** 17/22 17/23 17/25 19/18 21/12 21/19 33/6 33/11 33/19 36/10 36/12 41/17 48/2 48/13 52/7 58/3 64/4 65/13 65/21 66/24 66/25 67/3 67/15 67/15 73/24 80/6 82/1 106/1 116/17 117/22 118/1
**backed [1]** 36/21
**backwards [6]** 13/12 17/11 17/17 35/6 35/6 35/8
**banging [1]** 30/5
**Bankruptcy [1]** 2/19
**bar [2]** 94/17 114/6
**barricade [11]** 32/25 33/8 33/16 33/19 35/1 35/2 35/4 35/4 36/11 36/11 37/25
**barricades [4]** 38/15 38/18 38/22 44/1
**barriers [1]** 41/11
**base [1]** 67/20
**baseball [3]** 73/1 73/9 73/12
**based [5]** 5/13 17/4 20/18 106/8 106/19
**basically [4]** 26/5 28/25 37/10 93/24
**basis [2]** 14/13 63/8
**bat [3]** 73/1 73/9 100/4
**Bates [1]** 75/2
**bats [4]** 73/12 99/5 99/6 99/8
**battering [1]** 114/10 114/12
**battle [1]** 40/25
**be [201]**
**bear [2]** 6/14 95/24
**beating [1]** 73/9
**because [59]** 13/16 13/17 16/13 17/1 18/10 18/19 21/2 25/9 25/22 27/8 28/15 29/1 29/24 30/2 30/20 35/3 35/15 35/21 37/19 37/21

**a/17 42/3 42/13 42/20** [unclear]
43/15 44/5 44/9 46/4 52/4 52/18 53/10 54/3 62/9 66/5 67/5 72/20 73/8 74/17 78/25 80/5 85/21 90/22 93/16 93/18 93/21 97/4 101/23 103/3 106/7 106/15 106/16 108/2 109/14 110/5 110/7 110/19 112/11 114/18 118/22
**becomes [1]** 108/24
**been [16]** 5/4 13/18 13/24 13/25 14/22 25/2 25/19 25/19 27/7 27/9 34/8 38/16 41/14 85/11 106/6 108/8
**before [19]** 1/10 8/21 8/25 11/11 11/16 22/13 24/18 26/13 29/2 44/19 50/2 64/12 69/16 89/15 90/11 105/19 116/13 116/20 119/3
**began [2]** 24/18 33/17
**begin [5]** 90/19 104/5 112/11
**beginning [2]** 26/24 41/20
**begins [2]** 11/14
**begun [1]** 11/14
**behalf [13]** 6/2 22/22 31/22 31/25 48/17 58/14 58/17 58/18 59/24 64/1 85/5 85/6 96/7
**behind [4]** 46/19 47/4 47/13 47/17
**being [25]** 4/10 7/4 7/11 8/1 19/13 26/6 28/1 32/23 33/25 34/5 36/10 43/19 47/20 48/6 73/1 86/13 95/24 96/8 96/24 98/16 100/16 101/11 105/23 113/7 114/5
**belabor [2]** 6/5 12/14
**belaboring [1]** 15/20
**believe [19]** 12/5 12/10 12/10 14/13 20/10 24/15 33/14 39/13 49/20 58/23 60/16 68/2 68/4 68/6 75/3 103/11 110/23 112/23 117/22
**believed [1]** 102/25
**BENCH [1]** 1/10
**beneficial [1]** 86/13
**benefit [2]** 15/12 66/9
**BENJAMIN [1]** 1/17
**best [2]** 68/8 79/6
**better [5]** 16/15 60/17 103/23
**between [10]** 57/16 57/17 61/9 61/23 64/6 74/18 75/5 77/16 83/10 102/18
**beyond [10]** 6/21 9/14 18/10 19/9 20/17 21/8

**32/1** 32/16 83/23 97/1
**Bible [1]** 66/4
**bicycle [5]** 6/22 7/4 7/6 7/11 7/17
**Biden [1]** 44/17
**big [1]** 78/19
**biggest [2]** 68/13 106/2
**bike [42]** 11/6 11/12 12/20 13/4 13/10 13/12 13/25 16/1 19/11 19/24 22/23 22/25 23/5 24/9 24/17 25/17 25/22 25/25 26/4 26/6 26/15 28/3 34/19 36/4 38/3 38/5 38/8 46/5 47/1 47/5 47/19 48/6 48/8 86/6 86/8 110/24 110/25 111/1 111/4 111/5 115/13 115/13
**bikes [1]** 13/7
**binding [1]** 85/22
**bit [8]** 32/18 39/18 39/19 67/14 85/14 85/25 101/9 113/13
**black [1]** 13/11
**blame [1]** 48/22
**blocked [1]** 33/1
**blocking [2]** 25/20 43/3
**BLYTHE [24]** 1/7 2/14 25/12 25/16 25/24 26/19 27/6 27/15 28/4 28/8 28/12 29/16 31/13 31/15 35/18 35/20 41/18 43/10 43/13 48/1 51/25 56/7 60/2 60/20 **Blythe's [2]** 30/11 30/21
**bodily [55]** 18/18 18/20 19/14 20/25 22/19 34/23 35/12 36/1 36/18 39/5 39/8 68/19 70/24 70/25 71/1 73/6 74/22 75/17 75/18 75/25 76/2 76/9 76/11 76/17 80/6 80/8 80/11 80/14 80/18 80/19 80/20 80/25 81/6 81/11 81/16 81/19 90/2 91/13 92/4 93/1 93/2 93/23 94/21 95/16 95/18 96/1 98/9 99/3 100/17 100/18 101/6 101/8 113/4 113/5 116/10
**body [12]** 18/16 27/12 28/18 34/21 43/17 51/9 51/24 58/24 60/4 90/4 94/22 95/19
**body-worn [5]** 27/12 51/9 51/24 58/24 60/4
**Book [4]** 83/13 83/16 85/16 85/17
**both [8]** 17/25 34/21 37/17 58/19 74/21 77/17 77/25 116/5
**bottom [7]** 87/8 87/14 87/24 91/16 91/19 102/5 111/22
**bouts [1]** 36/7

**B**

brain [1] 73/18
BRAND [1] 2/2
bravo [1] 15/18
breach [3] 31/9 33/15
43/24
break [4] 44/21 52/3
52/6 64/5
breakdown [1] 44/22
breaking [2] 43/21
67/14
Brennwald [6] 2/14
2/14 25/12 31/21 34/10
51/15
bridge [1] 111/6
brief [7] 22/17 24/23
36/20 49/4 57/19 87/16
112/6
briefly [5] 102/15 105/9
106/25 107/18 115/17
briefs [1] 64/5
bring [2] 4/23 7/19
bringing [2] 13/14
101/13
brings [2] 28/11 101/17
broadens [1] 91/23
broader [4] 35/24 39/7
63/1 115/7
broadly [2] 30/20 30/21
bruise [4] 92/12 93/17
94/2 95/16
bruises [1] 19/8
bruising [1] 94/17
Brunwin [1] 1/17
building [27] 14/25
21/15 21/16 21/18 27/7
29/14 29/15 29/20
29/21 30/4 33/23 33/25
40/10 40/23 41/1 41/4
42/17 42/22 43/16
44/10 44/22 103/18
103/25 105/12 105/14
105/16 109/14
bunch [1] 29/16
burden [10] 4/15 6/8
18/10 20/24 24/13 25/9
53/11 97/21 115/20
115/21
burn [3] 93/17 95/16
98/2
Burrage [11] 71/16
71/25 72/5 74/12 106/4
106/5 106/16 107/6
107/14 113/10 115/21

**C**

CA [2] 1/19 1/22
calculus [1] 93/6
call [3] 51/12 53/6
64/17
called [2] 52/5 71/6
calm [2] 15/3 44/2
Camacho [1] 98/19
came [4] 9/6 28/21
43/16 114/9
camera [4] 51/9 51/24
58/24 60/5
cameras [1] 27/12

can [76] 4/18 4/21 8/7
12/7 12/20 13/9 16/6
16/8 16/15 16/25 27/21
28/13 28/17 28/25 30/8
30/20 31/1 32/3 32/7
36/2 37/20 38/4 38/15
41/21 42/3 45/22 48/16
48/18 50/7 50/12 52/4
55/4 58/3 60/19 60/25
63/10 65/10 67/4 67/15
67/15 67/20 68/14
68/20 69/4 72/25 74/2
74/25 79/2 79/22 83/4
84/21 87/3 90/20 91/13
91/18 94/25 97/7
101/22 102/15 104/25
105/3 105/7 107/11
108/14 108/25 109/1
109/4 109/9 109/16
111/1 116/1 116/2
116/23 117/24 118/15
119/7
can't [14] 20/17 24/12
29/3 29/13 29/17 52/15
65/7 69/21 73/19 81/24
88/3 99/9 99/11 114/5
candidly [1] 110/14
cannot [4] 23/4 25/8
25/9 53/10
capability [1] 75/22
capable [21] 19/13
19/14 19/19 34/22
35/10 47/8 47/9 74/21
75/13 75/14 75/16
100/13 100/16 101/5
101/8 101/10 101/13
101/17 101/22 101/24
103/3
Capitol [34] 7/24 9/1
9/2 9/4 9/9 9/11 14/12
15/22 21/15 21/16
23/20 25/21 25/22
28/13 29/10 29/12
29/13 30/13 31/10
31/23 32/5 32/22 42/2
42/3 42/5 42/6 42/22
43/17 43/25 44/5 44/9
44/10 44/22 104/15
Captain [1] 43/1
captioned [1] 83/17
cardiac [1] 98/25
Carolina [1] 13/7
Caroline [4] 12/6 26/4
39/6 45/14
carried [12] 101/7
109/4 109/14 109/17
109/21 109/22 109/24
110/2 110/3 111/13
111/22 111/22
carry [2] 99/17 110/21
carrying [10] 108/13
108/19 109/7 109/16
110/25 111/2 111/4
111/7 111/17 111/19
case [76] 4/3 8/21 11/3
11/25 13/15 13/23
15/17 16/8 20/21 21/2
25/3 27/14 28/2 30/11

50/19 50/21 51/9 51/12
32/24 34/13 34/21
36/21 37/9 37/12 40/12
50/11 50/14 50/22
50/25 51/2 51/5 51/16
51/18 54/8 54/22 55/8
55/22 56/14 57/6 69/17
71/6 71/6 71/16 71/17
71/23 72/4 72/7 72/11
72/20 78/19 78/19
80/25 84/24 86/3 86/5
88/12 92/23 93/9 94/10
96/15 97/17 97/20
98/19 98/24 104/6
104/18 104/20 106/2
107/6 108/3 109/12
111/6 112/21 113/11
114/1 118/7
Case 21-537 [1] 4/3
cases [19] 5/7 19/16
20/14 27/9 48/16 50/7
63/21 71/4 72/9 78/13
78/21 83/14 98/17
98/22 102/18 102/20
104/20 105/17 106/12
caught [1] 108/2
causal [1] 106/9
causality [8] 12/22
37/13 106/6 107/9
107/15 113/9 113/13
115/10
causation [20] 12/22
36/15 37/8 37/10 37/16
37/19 70/5 71/18 71/23
72/3 99/14 99/24 106/3
106/3 106/11 107/8
112/7 115/7 115/23
116/10
cause [41] 13/16 18/22
18/23 18/25 19/25 20/1
26/14 29/8 35/12 36/1
36/18 36/18 37/22
39/16 71/3 71/10 71/15
71/21 71/24 72/10
72/18 74/1 74/13
74/13 75/17 76/11
93/23 96/1 99/21 99/22
99/23 100/1 101/21
106/22 106/23 112/24
113/19 113/23 114/2
114/13 116/4
caused [11] 6/18 13/2
17/11 19/10 31/10
45/11 73/4 94/17 97/2
98/25 100/7
causes [6] 37/14 71/20
98/24 107/10 113/15
114/3
causing [12] 17/16
19/14 23/4 34/22 35/11
36/12 47/9 75/16 101/6
101/8 101/18 101/19
caveat [1] 90/6
caveats [1] 107/13
CCTV [2] 50/16 57/8
cell [1] 4/13
certain [1] 111/16
certainly [8] 18/24

25/23 26/7 26/10 47/14
74/5 94/13 110/13
certificate [1] 4/14
certification [7] 4/8
4/19 8/10 8/18 25/6
40/19 40/23
certified [2] 42/15
certify [1] 120/3
certifying [1] 44/16
cetera [1] 94/7
chain [1] 63/4
challenge [1] 4/21
challenging [2] 4/7
4/12
Chamber [1] 30/5
chance [3] 10/22 83/7
101/19
change [1] 93/6
changed [2] 66/25 67/2
chanting [2] 30/15
41/22
charge [16] 10/11 11/8
13/14 18/17 18/18 19/1
19/5 22/24 29/12 39/4
39/5 39/5 47/23 49/17
67/6 73/7
charged [18] 11/9
13/13 15/20 16/23 18/7
22/11 26/23 27/1 31/16
37/23 39/13 49/16 72/5
73/8 73/15 88/1 89/7
112/12
charges [6] 23/10 24/3
29/22 67/7 67/9 114/17
charging [1] 84/24
CHASE [1] 1/7
cheering [1] 69/19
chemicals [1] 95/24
cherry [1] 63/5
choice [1] 117/23
choose [2] 52/9 84/21
chose [1] 42/6
chosen [1] 57/2
Christopher [1] 1/17
Circle [17] 6/11 8/24
16/24 17/1 17/3 17/5
21/12 22/13 23/15 24/7
24/9 24/17 24/19 32/8
41/9 41/19 42/1
circles [1] 73/24
circuit [12] 7/20 20/13
25/3 76/8 98/20 100/20
100/23 102/7 102/12
102/18 102/20 108/13
circuits [1] 77/7
circulate [1] 105/4
circumstance [1]
73/25
circumstances [10]
37/14 39/25 40/13
40/17 43/7 44/24 47/21
48/11 84/3 84/6
circumstantial [3] 32/4
32/7 42/2
cite [3] 71/8 71/25
100/19
cited [17] 18/20 18/23
19/16 71/4 72/9 72/11

74/25 75/3 75/23 77/5
78/18 92/16 92/16 98/6
98/23 102/23 105/17
cites [4] 100/21 106/9
106/11 106/12
citing [1] 71/6
civil [23] 10/17 11/2
11/4 11/9 11/12 11/14
11/17 11/18 11/20 12/1
16/19 16/22 16/24
22/11 22/13 22/13
22/15 33/11 33/15
33/20 34/3 34/4 49/19
claim [1] 105/22
claimed [6] 6/13
claims [1] 11/5
clarification [4] 16/21
90/15 97/21 98/4
clarified [1] 7/20
clarify [2] 29/18 38/23
clarity [2] 86/13 112/19
classic [2] 14/19 15/18
clause [2] 90/3 104/3
cleaning [1] 91/12
clear [16] 7/17 17/10
18/13 23/19 23/21 24/6
29/14 29/15 48/24
63/25 85/4 90/10 94/18
94/23 99/13 102/19
clearly [8] 21/10 22/12
25/24 44/5 102/22
103/4 104/11 106/4
client [16] 10/9 10/12
12/2 12/7 13/15 13/19
13/23 14/11 14/16
14/24 15/9 15/20 25/16
26/12 27/20 31/8
client's [1] 26/23
clients [2] 11/5 112/11
climb [1] 42/25
clip [1] 24/23
closed [4] 20/11 32/25
41/11 64/15
closer [1] 21/18
closing [9] 50/19 57/10
65/16 66/24 96/20
116/20 117/2 117/18
118/15
closings [2] 65/12
116/18
clothing [1] 5/2
co [3] 48/19 74/11
82/21
co-defendants [1]
82/21
co-defense [2] 48/19
74/11
COBB [1] 1/10
Code [2] 10/18 83/18
cogent [1] 12/3
collateral [1] 15/12
colleague [4] 108/3
113/6 114/19 115/24
colleagues [1] 10/20
collective [1] 53/1
collectively [1] 52/23
College [4] 8/10 8/19
25/7 44/14

**C**

COLUMBIA [2] 1/1 37/7
combined [1] 37/24
come [13] 5/8 50/4 51/19 52/7 55/4 58/3 65/21 65/22 66/23 67/3 67/15 67/15 116/20
comes [4] 26/1 45/23 69/15 89/15
comfortable [1] 4/14
coming [2] 65/13 119/4
commend [1] 83/16
comments [1] 10/8
commerce [1] 34/7
commit [10] 17/9 18/4 39/1 83/25 84/3 84/6 86/20 88/3 89/11 112/20
committed [1] 11/22
committing [4] 78/4 78/7 78/12 79/17
common [1] 106/8
commonly [1] 85/19
compare [1] 10/22
comparing [1] 41/15
complete [2] 10/22 112/25
completely [1] 25/5
completeness [1] 63/4
components [3] 93/20 112/10 112/10
comport [1] 45/17
compromised [1] 34/1
computer [2] 2/22 10/2
computer-aided [1] 2/22
concede [2] 15/15 88/8
conceding [1] 4/14
concept [1] 100/18
concern [4] 60/6 89/20 95/20 95/21
concerned [2] 47/18 93/15
concerning [2] 4/6 52/8
concerns [1] 40/10
concert [2] 106/19 116/12
conclude [6] 7/11 9/13 11/13 113/8 113/9 113/19
concluded [3] 20/13 20/14 119/13
concrete [1] 21/13
concurrently [2] 37/15 107/11
concussion [2] 36/9 96/23
conditions [1] 66/5
conduct [32] 6/10 11/6 11/13 12/22 15/4 15/10 15/19 17/2 18/3 19/10 21/6 22/12 22/16 22/24 23/7 28/6 28/7 28/9 39/24 40/1 40/18 41/8 69/14 71/24 72/6 72/18 73/13 73/21 95/9 107/3

confer [1] 116/20
confess [2] 66/8 107/21
confident [1] 57/2
confirm [1] 65/1
conflict [3] 102/17 103/1 103/3
confusing [1] 86/1
confusingly [1] 99/1
Congress [2] 14/21 21/9 24/5 24/11 28/7 28/10 29/6 32/3 33/21 34/5 42/9 42/16 44/16 71/11 75/22 77/3 79/24 79/24 80/2 81/24 82/12 95/7
Congressional [5] 14/14 14/18 21/21 40/19 44/11
connected [2] 11/7 13/4
connection [1] 84/23
connotation [1] 8/9
consciousness [2] 73/2 73/4
consensus [1] 88/19
consider [5] 53/20 63/4 84/4 112/8 114/3
considered [1] 84/23
considering [1] 56/8
consistency [1] 111/23
consistent [3] 4/24 21/20 93/18
conspiracy [5] 47/23 72/5 73/7 73/8 73/11
constitute [1] 76/17
constituted [1] 86/8
Constitution [1] 2/19
construed [1] 24/20
consultation [1] 54/7
consumer [1] 76/10
contact [7] 13/21 39/2 81/7 82/2 82/3 82/9 112/19
contending [1] 38/25
context [14] 8/4 8/14 18/21 27/20 37/8 37/17 63/11 69/16 72/20 73/3 73/14 86/9 99/2 104/16
contextual [1] 113/11
CONTINUED [1] 2/1
continues [1] 43/12
contrary [2] 14/19 113/12
contrast [1] 31/7
Contreras's [1] 100/25
contributed [1] 106/18
controlling [3] 100/19 100/23 102/7
conversation [2] 63/1 63/6
convict [5] 30/12 49/5 49/21 73/4 73/19
conviction [4] 32/15 37/5 40/2 45/1
cordoned [1] 78/17
correct [26] 4/8 39/3

54/1 55/3 55/16 55/17 56/1 63/17 71/8 74/12 75/23 77/7 81/13 84/14 84/22 91/19 92/3 92/10 92/15 92/21 95/10 98/11 99/15 109/18 110/5 114/2
correctly [1] 102/19
correspondence [1] 66/11
corroborated [1] 42/10
corrupt [4] 15/1 15/7 31/1 41/8
corruptly [7] 7/21 24/16 24/21 25/2 25/10 39/24 40/3
could [49] 6/9 6/17 9/24 13/1 19/23 21/10 24/20 25/18 28/15 32/4 35/11 38/16 39/15 42/4 42/5 44/7 44/25 46/16 46/20 47/15 48/7 48/10 49/5 49/21 57/19 60/15 65/5 66/3 66/14 73/16 74/5 74/6 77/3 86/2 86/5 89/1 93/21 94/22 95/25 97/1 99/7 100/6 108/8 108/19 113/18 116/5 116/20 118/24 119/4
couldn't [5] 17/19 19/8 71/11 80/2 81/23
counsel [17] 4/4 25/14 26/25 48/19 52/20 57/3 65/1 74/11 83/6 85/7 90/20 98/22 100/20 103/23 107/2 107/6 108/4
count [60] 9/15 10/7 10/15 10/16 10/17 11/10 12/2 12/5 14/10 16/20 16/20 16/22 16/23 16/24 17/1 17/2 17/6 17/7 17/8 18/5 18/15 19/1 20/4 21/4 21/5 21/6 21/22 22/4 22/5 22/6 22/6 22/11 22/12 22/17 22/22 22/22 22/24 23/1 23/8 24/3 24/4 24/13 24/14 25/9 25/14 26/25 28/5 28/11 31/20 33/6 34/16 37/9 38/11 39/4 39/18 45/1 49/12 49/12 49/19 112/21
count 1 [10] 10/7 10/17 12/2 16/20 17/2 17/6 22/11 22/12 25/14 33/6
count 10 [7] 21/5 22/6 24/14 25/9 28/11 39/18 112/21
count 11 [1] 16/23
count 2 [8] 17/7 18/5 20/4 22/4 22/17 34/16 49/12 49/19
count 3 [8] 12/5 19/1 22/5 22/22 22/22 23/8 38/11 49/12

count 4 [1] 22/24
count 8 [6] 22/6 24/3 24/4 24/13 28/5 31/20
country [2] 61/12 62/3
counts [47] 6/5 6/19 9/15 15/19 15/22 16/4 20/6 20/7 20/8 20/20 20/21 20/22 20/24 20/25 22/4 22/5 22/6 23/9 24/1 25/15 26/23 26/23 26/25 27/1 27/22 27/21 31/16 32/19 34/8 49/6 49/13 68/13 68/17 68/17 68/23 70/21 70/21 70/25 81/2 81/23 107/25 108/1 112/21 112/22
counts 1 [3] 22/4 26/23 112/21
counts 2 [14] 6/19 9/15 20/22 20/24 25/15 34/8 49/6 49/13 68/13 68/17 70/21 70/25 81/2 81/23
counts 5 [7] 20/25 22/5 23/9 24/1 27/2 32/19 77/11
couple [8] 19/8 25/25 26/9 29/3 77/6 101/1 105/9 116/17
course [5] 6/23 20/3 34/4 35/8 36/18 36/19 36/23 37/2 37/23 38/1 40/12 45/11 47/4 110/19 115/21
court [89] 1/1 2/18 5/6 6/4 6/23 7/9 7/19 8/20 8/22 9/12 14/13 18/17 20/3 20/14 20/17 20/20 21/1 23/12 23/22 26/17 27/19 31/20 31/25 32/6 36/3 36/5 37/9 37/12 37/16 38/17 40/7 44/12 45/8 46/2 49/1 49/5 49/6 49/21 50/1 50/19 58/7 58/15 58/19 59/8 60/7 61/7 61/8 64/23 65/2 65/3 66/2 69/17 70/19 71/7 71/13 71/17 71/22 75/1 78/8 78/13 79/9 82/25 84/15 84/15 85/21 85/23 95/13 95/22 98/17 98/22 100/21 102/9 105/17 106/12 106/17 106/17 106/21 107/22 108/21 110/15 113/16 116/9 116/21 118/9 118/10 118/15 118/24 118/24 120/9
Court's [5] 30/20 57/19 65/20 113/21 118/5
courtesy [2] 66/13 66/18
courthouse [3] 1/18 27/9 69/19
courtroom [2] 12/15 38/5

courts [4] 37/12 71/13 107/9 113/12
Couy [2] 32/20 104/6
covered [1] 45/4
covers [1] 49/7
CR [1] 40/16
create [1] 99/2
created [1] 33/24
crime [5] 37/14 49/11 81/24 81/25 105/25
criminal [13] 1/2 4/3 12/22 13/17 13/22 13/23 14/3 14/14 49/8 49/9 71/14 78/14 78/20
criminalizes [1] 109/6
critical [1] 26/3
cross [1] 7/15
cross-examination [1] 7/15
crossed [1] 22/25
crossing [1] 105/24
crowd [21] 24/24 33/8 33/9 33/10 33/15 33/23 41/13 41/14 41/18 41/21 41/22 41/22 42/13 42/15 42/23 43/2 43/5 43/6 44/2 45/15 45/16
crush [1] 43/5
crushed [1] 38/21
Cruz [21] 6/9 16/11 17/19 18/8 19/2 19/6 19/8 19/23 22/23 23/3 23/8 35/7 38/12 38/15 38/19 38/25 39/6 39/9 39/13 47/16 93/2
Cts [1] 2/19
culpability [1] 104/12
culpable [1] 35/21
Curcio [2] 8/1 8/14
cut [9] 80/10 88/5 92/12 93/17 94/2 94/4 94/21 95/16 98/2
cuts [1] 94/6

**D**

D.C [6] 1/8 25/2 66/4 85/21 100/23 102/7
dangerous [57] 6/21 6/23 6/25 7/1 7/3 7/8 7/12 15/22 15/24 16/2 16/7 19/12 19/13 20/5 20/23 22/20 23/6 25/17 26/16 27/3 27/18 27/20 34/20 34/22 36/3 39/1 46/6 46/12 46/13 46/22 47/10 47/21 48/10 68/20 74/10 74/15 78/10 86/4 86/4 86/8 100/10 101/5 101/20 107/19 107/24 108/7 108/9 108/11 108/12 108/14 108/15 108/20 108/23 110/21 111/5 111/11 113/2
Daniel [1] 40/6
data [1] 4/6
date [5] 42/7 42/8 59/1

**D**

date... [2] 118/2 120/8
**David [7]** 35/7 38/11 38/15 38/19 39/6 39/9 39/13
**Davidson [1]** 17/22
**day [16]** 1/10 7/24 9/3 9/9 19/9 21/7 23/21 27/25 28/8 30/2 32/5 34/6 44/10 50/2 62/4 96/5
**days [1]** 44/19
**DB1 [3]** 3/10 60/11 60/14
**DC [5]** 1/15 2/3 2/6 2/15 2/20
**DCA [1]** 117/22
**dcd.uscourts.gov [1]** 2/20
**deadly [50]** 6/21 6/23 6/25 7/2 7/3 7/8 7/12 15/21 15/24 16/2 16/7 19/12 19/13 20/4 20/22 22/20 23/5 25/17 26/16 27/3 27/17 27/20 28/1 34/20 34/21 36/3 46/6 46/12 46/23 47/10 48/10 68/20 74/10 74/15 101/5 101/20 107/19 107/24 108/7 108/9 108/10 108/12 108/14 108/15 108/20 108/23 109/15 110/20 111/6 113/3
**deal [3]** 50/12 83/3 98/9
**dealing [2]** 22/15 104/15
**deals [2]** 37/7 38/11
**death [8]** 34/23 35/11 75/16 75/18 99/1 101/6 101/8 113/19
**debating [2]** 42/13 108/4
**decertify [1]** 44/20
**decided [1]** 30/6
**decision [20]** 53/9 53/12 53/15 53/20 53/21 54/1 54/4 54/5 54/6 54/18 55/2 55/10 55/13 56/2 56/19 57/4 65/20 84/16 102/8 103/3
**decisions [3]** 57/4 100/21 116/16
**deems [1]** 37/8
**default [4]** 68/4 85/22 85/22 86/11
**defendant [49]** 11/22 32/8 33/17 34/24 35/18 35/18 35/20 36/22 36/22 36/24 41/6 41/9 41/12 41/14 41/18 42/11 42/23 43/10 43/13 44/18 48/1 48/7 48/8 52/20 63/8 71/1 71/8 71/10 71/20 74/2 79/21 79/22 85/2 85/11

87/23 88/2 89/6 89/8
89/24 101/7 101/12
103/22 107/16 108/6
108/10 108/11 111/25
114/24 116/1
**defendant's [8]** 40/13 40/17 71/19 71/24 72/17 86/19 89/10 100/11
**defendants [55]** 1/8 4/4 9/18 9/21 11/8 13/23 17/3 17/5 17/13 20/11 29/19 31/21 32/16 32/21 32/24 33/7 34/9 34/14 34/25 35/3 35/16 37/20 38/6 38/8 38/11 38/12 38/19 39/20 40/3 40/22 41/4 42/10 43/13 44/25 45/7 46/5 46/8 47/14 50/11 52/2 52/7 52/14 52/16 56/23 56/25 68/4 82/20 82/21 82/23 83/3 97/1 106/18 108/19 113/24 115/12
**defendants' [3]** 40/1 45/13 96/21
**Defender's [1]** 10/21
**defense [27]** 3/7 4/21 12/4 32/18 36/14 48/16 48/19 50/7 50/13 50/21 50/25 51/5 51/16 52/9 53/6 57/8 57/14 59/6 60/14 63/21 65/1 71/21 71/22 74/11 83/11 94/10 99/24
**defined [3]** 23/13 25/2 79/19
**defines [2]** 77/24 90/8
**definition [46]** 7/22 19/18 68/19 68/20 70/22 74/10 75/8 75/9 75/14 75/15 76/13 76/17 76/25 78/15 79/8 80/7 80/7 80/11 80/20 80/22 81/16 81/18 81/19 85/25 86/7 86/16 88/8 90/2 90/4 90/7 90/12 90/14 94/14 95/25 96/2 100/11 100/12 100/23 102/6 107/24 108/4 108/17 108/25 110/18 111/11 115/6
**definitional [4]** 64/10 67/5 70/13 78/15
**definitions [7]** 67/8 67/11 85/3 105/20 105/21 107/17 109/8
**Deft [5]** 2/2 2/5 2/8 2/11 2/14
**delay [1]** 31/10
**delineate [2]** 95/22 96/3
**deliver [1]** 118/2
**democrats [2]** 8/2 43/23
**demonstrate [1]** 25/9

demonstratives [2]
116/19 116/22
**denied [1]** 32/20
**denoted [1]** 41/10
**deny [1]** 52/4
**Department [1]** 51/10
**depends [1]** 75/7
**deprives [1]** 97/14
**describe [1]** 6/17
**described [3]** 45/7 94/3 113/2
**describes [3]** 43/21 94/7 97/25
**designed [1]** 27/23
**desktop [1]** 91/12
**despite [2]** 43/1 48/22
**details [1]** 44/13
**determining [1]** 37/16
**deviate [1]** 102/11
**did [44]** 4/5 5/8 6/14 12/25 14/24 17/9 17/10 18/4 18/11 20/1 21/15 22/14 23/23 24/19 25/24 27/20 33/17 34/4 34/6 35/12 36/1 36/17 39/20 45/7 50/3 53/23 53/23 54/14 57/6 75/25 82/17 82/18 83/5 83/12 86/7 86/20 89/10 90/17 97/8 104/18 108/9 110/15 112/1 114/12
**didn't [17]** 9/4 13/20 13/21 18/8 21/7 23/6 35/21 39/16 44/3 47/23 63/6 80/3 95/9 97/12 109/3 118/12 118/22
**Diego [1]** 1/22
**difference [6]** 74/18 74/20 75/5 77/16 83/10 100/10
**differences [1]** 64/10
**different [21]** 11/9 11/17 48/13 71/12 72/12 72/15 77/6 85/10 95/8 95/8 101/9 103/5 104/4 105/12 107/24 110/16 110/19 112/3 114/21 114/21 114/22
**differently [2]** 4/9 111/4
**differing [1]** 109/7
**differs [2]** 69/11 109/6
**direct [10]** 18/22 18/24 32/7 48/4 71/3 71/10 72/10 72/18 72/24 106/23
**directed [3]** 18/3 45/8 45/10
**direction [1]** 48/1
**directly [1]** 37/4
**directs [1]** 41/16
**disagree [6]** 46/9 69/4 69/24 75/18 93/7 99/16
**disagreements [1]** 67/10
**discrete [1]** 68/5
**discuss [2]** 65/10 67/20

discussed [2] 45/7
99/4
**discusses [1]** 40/9
**discussion [5]** 61/3 61/23 65/25 87/5 115/3
**discussions [1]** 115/7
**disfigurement [2]** 93/17 95/17
**dismiss [3]** 16/9 18/14 18/18
**dismissal [1]** 10/7
**dismissed [2]** 18/5 21/22
**disorder [20]** 10/18 11/2 11/4 11/10 11/12 11/14 11/17 11/18 11/20 12/1 16/20 16/22 16/24 22/11 33/12 33/16 33/20 34/3 34/4 49/19
**dispersal [1]** 43/11
**disperse [1]** 43/3
**dispute [2]** 67/8 97/16
**disputes [8]** 64/5 64/13 67/5 67/21 67/22 68/13 85/3 92/24
**disputing [2]** 80/7 93/19
**disruptive [1]** 28/8
**distance [1]** 12/21
**distinction [1]** 100/14
**distinguishable [1]** 108/5
**distributed [1]** 71/20
**DISTRICT [11]** 1/1 1/1 1/11 2/19 37/7 85/20 85/23 100/21 102/8 102/9 110/15
**disturbance [3]** 22/13 22/14 22/15
**do [70]** 6/7 9/19 14/2 16/19 26/14 28/18 29/5 29/10 33/2 34/17 47/12 48/9 49/10 50/13 50/24 51/12 51/15 51/17 52/2 52/20 54/2 54/3 54/4 54/13 54/15 54/24 55/11 55/18 56/11 56/16 57/25 58/6 58/18 63/14 64/4 65/6 65/12 66/5 67/18 67/22 76/2 76/12 77/20 77/23 80/21 82/22 82/23 84/17 84/22 85/16 92/16 93/7 96/8 96/19 97/4 101/15 103/19 104/24 105/6 109/9 114/16 115/7 116/13 117/1 117/25 118/3 118/5 118/10 118/10 119/7
**document [1]** 87/20
**does [48]** 4/20 5/21 7/7 8/16 9/17 18/14 20/20 26/12 27/22 29/15 31/25 36/14 49/10 50/11 51/4 51/7 51/21 60/5 63/19 74/6 80/13

117/ 82/5 85/2 85/10
86/25 89/21 89/24
92/23 92/23 95/3 96/16
97/25 98/1 99/14 99/23
104/5 106/16 107/16
109/3 110/6 111/9
113/2 114/24 115/22
116/25 117/17 118/15
**doesn't [17]** 15/3 19/18 32/9 45/17 47/4 77/1 82/7 82/12 87/9 88/20 93/6 96/3 98/23 103/21 105/21 107/4 117/22
**doing [17]** 24/20 27/10 29/8 30/12 30/14 30/16 34/6 36/18 36/19 38/2 45/11 51/19 52/23 55/6 74/3 79/24 80/3
**DOJ [1]** 1/21
**dollar [1]** 117/16
**don't [88]** 4/13 4/15 7/21 8/9 8/14 8/15 10/21 11/14 11/19 14/4 14/6 14/13 14/15 14/24 15/25 16/3 16/6 16/13 19/6 28/25 29/1 30/8 30/10 30/20 30/25 31/1 31/3 31/12 31/13 33/3 34/3 36/15 46/8 49/25 50/3 50/19 51/19 53/6 53/19 53/24 54/8 54/11 55/24 56/9 58/2 61/8 62/22 63/8 64/8 66/13 66/22 67/21 70/4 74/17 75/21 79/11 88/7 89/17 92/24 93/5 93/13 95/2 95/9 95/11 95/12 96/15 97/10 97/13 97/19 100/1 100/1 101/19 102/1 102/11 102/17 102/20 102/21 103/1 103/9 104/13 104/17 104/19 107/13 113/22 117/23 118/5 118/9 118/25
**Donald [1]** 42/1
**done [12]** 7/10 25/1 26/22 63/23 66/14 66/20 70/8 84/4 84/4 98/16 98/21 104/19
**door [1]** 30/5
**doors [1]** 29/15
**doubt [12]** 6/21 7/25 8/13 9/14 18/11 19/9 20/18 21/8 32/1 32/17 83/23 97/1
**down [16]** 12/19 13/2 13/7 13/19 15/2 28/21 29/2 30/12 41/12 44/2 44/21 67/22 74/3 99/6 99/7 114/10
**DR2 [2]** 3/9 59/6
**drag [2]** 43/6 115/2
**dragging [1]** 38/17
**draw [2]** 53/11 102/6
**drawing [1]** 74/24
**drawn [2]** 42/3 76/9
**drew [1]** 107/22

**D**

**drive** [1] 65/13
**driving** [2] 33/19 48/8
**drove** [3] 35/4 38/9
44/8
**drug** [4] 69/15 71/18
98/23 98/25
**drugs** [2] 71/19 71/19
**DS02** [1] 50/17
**DS2** [4] 3/8 57/8 57/13
57/14
**DS3** [1] 62/17
**duplicative** [1] 88/21
**duplicitas** [1] 15/19
**during** [10] 11/2 11/16
11/18 15/11 28/14 41/7
83/6 83/22 96/21
112/15
**duties** [3] 11/1 34/17
112/15

**E**

**each** [17] 40/2 42/10
50/2 52/20 53/5 67/12
73/15 73/16 84/23
106/17 106/20 106/22
113/19 113/23 116/1
116/5 116/7
**earlier** [4] 27/18 28/20
45/5 90/6
**early** [1] 67/15
**easier** [2] 55/5 114/11
**easily** [1] 90/14
**East** [1] 42/21
**eat** [1] 67/12
**ECF** [2] 101/3 107/23
**ECF-301** [1] 107/23
**edge** [1] 21/13
**edits** [2] 105/4 116/16
**EDVA** [1] 2/9
**Edwards** [37] 6/11
7/15 10/12 12/6 12/8
12/13 13/20 14/1 17/8
17/16 17/20 17/24
17/25 18/5 18/9 18/15
22/19 26/4 26/7 26/11
34/16 34/17 35/8 35/12
36/2 36/6 38/2 38/22
39/6 39/11 45/14 48/24
92/25 92/25 93/4 94/16
97/11
**Edwards's** [2] 17/10
96/22
**effect** [2] 39/23 89/3
**egress** [1] 33/25
**eight** [3] 81/10 112/18
112/23
**eight years** [1] 112/18
**eight-year** [2] 81/10
112/23
**either** [11] 7/11 27/11
27/12 29/20 34/14 78/1
86/5 94/14 109/4 109/9
111/23
**election** [3] 14/23
28/24 44/8
**Electoral** [4] 8/10 8/18
25/6 44/14

**element** [19] 11/12
20/15 24/16 29/22 45/5
46/17 70/25 97/15
104/11 105/22 105/24
108/7 111/21
**elements** [16] 10/24
24/13 37/10 64/6 64/13
65/20 67/8 67/11 67/21
78/14 78/22 85/3
107/17 112/2 112/22
114/21
**elevates** [2] 75/20
76/19
**elicited** [2] 7/22 8/1
**Ellipse** [1] 42/5
**else** [6] 13/20 14/24
26/19 49/23 66/21
68/16
**email** [2] 4/6 4/24
**emails** [1] 14/20
**encapsulates** [1] 31/11
**encompass** [1] 68/3
**encourage** [9] 86/16
86/17 86/18 86/24 87/7
87/9 88/4 88/24 113/10
**encouraged** [1] 88/3
**encouragement** [4]
70/13 88/10 88/16
89/19
**encouraging** [5] 33/10
69/13 69/14 69/22
70/13
**end** [3] 42/1 92/16 98/7
**endanger** [1] 100/17
**ends** [3] 73/1 77/20
92/17
**enforcement** [4] 10/25
11/24 40/3 112/4
**engage** [1] 15/4
**engaged** [6] 10/25 11/5
15/18 25/4 34/2 41/7
**engaging** [1] 82/2
**engineer** [1] 13/1
**enhanced** [1] 113/1
**enhancement** [2]
75/20 81/12
**enhancements** [1]
80/23
**enough** [21] 5/10 31/3
32/15 42/25 43/4 45/1
47/1 47/2 48/9 54/14
54/21 55/7 55/20 56/13
69/14 71/20 81/23 94/4
94/5 106/19 106/20
**enter** [2] 40/23 103/24
**entered** [4] 33/3 41/4
44/13 63/20
**entering** [6] 15/21 16/4
40/4 78/16 78/17
103/17
**entire** [2] 92/18 106/2
**entirety** [1] 22/5
**entitled** [1] 120/5
**entrance** [1] 75/20
**entry** [3] 9/2 43/7 77/19
**error** [1] 114/20
**escalated** [1] 33/16
**escape** [1] 34/1

**especially** [4] 23/3
30/10 68/3 114/13
**essentially** [2] 71/2
105/13
**establish** [2] 18/24
20/15
**established** [1] 104/14
**estimation** [1] 62/24
**et** [2] 4/4 94/6
**etc** [4] 94/21 94/21
95/24 110/9
**evacuate** [1] 30/6
**evacuated** [1] 9/4
**evade** [1] 100/6
**evaluate** [1] 19/20
113/21
**even** [29] 10/13 14/5
15/8 16/4 17/19 18/23
19/7 22/8 23/2 23/6
23/16 23/22 24/18
26/20 28/7 28/25 30/3
31/4 36/2 37/1 44/1
46/12 49/20 72/11
76/11 76/15 79/18
104/24 114/1
**evening** [2] 8/9 36/6
**event** [4] 11/7 11/17
14/7 106/18
**events** [8] 8/24 11/12
11/15 12/1 12/17 14/12
22/23 31/8
**Eventually** [1] 33/20
**ever** [1] 104/21
**every** [4] 25/13 38/1
67/6 105/19
**everybody** [4] 12/15
30/13 102/2 110/23
**everyday** [4] 46/13
98/18 99/17 99/20
**everyone** [8] 10/7
52/18 66/19 67/16
67/18 67/19 73/9
119/12
**everything** [4] 64/15
89/1 105/18 118/1
**evidence** [52] 5/14
5/20 5/22 7/23 7/25
8/12 8/23 10/13 11/10
14/12 18/12 20/16 21/8
23/24 24/10 25/4 26/19
27/5 27/14 31/3 32/4
32/7 32/9 32/14 32/15
33/23 34/6 38/17 40/2
42/7 43/14 44/11 44/12
45/19 45/23 50/3 50/16
51/3 51/20 57/14 58/15
59/6 60/14 63/20 67/9
73/20 74/1 84/7 96/17
111/24 111/25 113/21
**exact** [1] 11/20 90/21
115/8
**exactly** [6] 17/14 71/17
78/23 100/7 109/25
110/11
**examination** [1] 7/15
**example** [17] 34/10
40/15 72/24 76/14 78/4
79/6 80/13 80/13 87/8

**especially** 97/13 99/4 100/24
101/3 109/11 109/12
109/15 113/16
**examples** [4] 94/2 95/4
**exceeded** [1] 94/14
**except** [4] 29/2 48/21
110/23 113/25
**exceptions** [1] 100/22
**exclude** [1] 100/3
**excluding** [1] 107/14
**exclusively** [1] 107/7
**excuse** [2] 61/22 92/2
**exhibit** [18] 24/22
41/20 44/13 50/15
50/18 50/21 51/8 51/20
51/23 57/6 57/8 57/14
58/19 59/6 59/13 60/4
60/14 62/15
**Exhibit 308** [1] 41/20
**Exhibit 327** [1] 24/22
**Exhibit 405** [2] 51/23
60/4
**exhibits** [9] 2/24 3/2
3/7 5/17 12/12 63/20
63/20 116/19 119/5
**exist** [1] 22/14
**existed** [2] 11/4 22/13
**expand** [1] 116/11
**expect** [5] 61/16 96/20
117/2 117/11 118/16
**expected** [1] 63/23
**expecting** [1] 66/10
**expedience** [1] 88/12
**expense** [1] 4/18
**expert** [1] 12/25
**explained** [1] 57/1
**explaining** [2] 61/18
62/10
**explains** [1] 62/10
**explanation** [1] 62/23
**explicitly** [3] 32/20
56/9 111/10
**explore** [1] 7/21
**extend** [1] 23/23
**extended** [2] 23/22
66/19
**extending** [1] 66/12
**extends** [1] 104/3
**extent** [5] 11/19 15/6
20/3 94/1 101/24
**extraction** [2] 4/6 4/13
**extreme** [1] 76/12
**extremely** [1] 76/24
**eye** [2] 13/21 36/12

**F**

**face** [4] 14/1 36/11
94/17 95/24
**facilitate** [2] 86/20
89/11
**facility** [1] 10/3
**fact** [41] 4/24 8/17 9/4
9/7 12/23 13/16 14/15
18/8 20/1 20/23 23/6
23/15 23/23 24/22
24/25 25/21 29/15
32/10 32/16 35/12
35/25 36/18 40/8 42/16

**if** [4] 44/25 46/24 47/11
47/20 47/22 48/22
57/18 74/7 96/17 97/1
107/22 108/11 111/18
113/9 113/18 118/7
**facts** [19] 8/21 11/3
11/25 14/2 14/11 16/3
30/19 30/21 45/18
47/12 69/19 73/15 79/9
84/6 93/9 96/15 97/16
97/19 111/6
**factual** [1] 114/11
**factually** [2] 34/4 35/16
**faculty** [1] 95/18
**fail** [1] 15/7
**failed** [3] 6/7 12/23
15/8
**Fair** [1] 5/10
**fall** [2] 17/11 46/20
**falling** [2] 36/12 47/19
**falls** [1] 46/15
**familiar** [1] 110/15
**far** [12] 23/19 23/22
23/23 25/13 29/10
42/19 42/20 66/8 70/14
104/14 111/6 115/6
**far-off** [1] 104/14
**fatally** [1] 113/17
**favorable** [4] 10/13
14/5 22/9 31/4
**federal** [8] 1/18 4/20
10/21 77/22 78/11
78/20 79/18 105/25
**federally** [1] 34/5
**feel** [2] 93/6 118/9
**feels** [2] 94/14 117/14
**feet** [2] 30/13 35/6
**Feitel** [11] 2/5 2/5
16/21 22/10 26/10
45/13 50/24 52/24
54/21 58/9 117/5
**fell** [2] 35/7 35/8
**felony** [9] 75/21 76/20
77/3 78/11 81/6 81/8
81/10 82/15 112/20
**felt** [2] 14/22 36/6
**fence** [3] 17/11 21/12
45/16
**Fentanyl** [1] 116/7
**few** [4] 25/25 28/4 68/5
100/21
**fifth** [3] 2/3 35/18 108/7
**fight** [1] 96/4
**Figueroa** [1] 78/21
**filed** [2] 20/9 77/14
**filing** [1] 70/3
**final** [4] 64/12 105/4
116/16 118/16
**finally** [5] 15/13 18/14
21/4 24/14 56/7
**find** [24] 7/9 9/14 12/6
14/11 14/13 23/22
32/16 36/3 44/7 44/25
45/8 57/16 57/22 58/1
58/3 80/23 86/19 89/9
97/1 100/11 106/20
106/21 111/24 111/24
**finder** [5] 32/16 44/7

**F**

finder... [3] 44/25 96/17 113/18
finding [3] 20/18 32/1 91/9
finds [1] 106/17
fine [7] 53/1 66/6 76/3 88/5 88/11 92/22 101/24
fined [1] 113/3
finish [3] 82/17 117/1 117/24
firearm [3] 79/8 79/9 79/10
first [29] 14/20 16/19 19/6 23/1 31/9 33/8 43/24 43/25 44/1 45/22 68/10 69/15 75/13 87/6 87/8 87/24 88/23 89/2 91/21 94/3 94/7 94/24 95/11 95/13 96/14 97/3 97/24 103/14 105/10
fit [2] 79/10 95/11
five [9] 35/3 35/16 38/6 43/13 44/19 82/18 100/4 114/8 117/15
flag [1] 30/15
Flagpoles [1] 28/1
fleeting [1] 93/22
flesh [1] 79/2
Floor [1] 1/18
Florida [1] 65/13
focus [1] 23/1
focused [1] 46/5
folks [1] 30/5
folks' [1] 25/20
footage [3] 51/24 57/8 60/5
footing [1] 36/10
footnote [2] 72/12 75/3
force [8] 13/1 35/3 37/25 45/7 45/8 46/11 47/2 48/4
forcible [5] 18/3 45/5 45/6 45/9 45/10
forcibly [5] 26/22 34/18 40/4 112/13 112/18
foregoing [1] 120/3
foreseeability [4] 84/5 84/11 84/18 114/14
foreseeable [3] 13/18 45/14 45/16
forgive [1] 9/15
form [1] 64/23
former [3] 9/7 9/8 23/20
forum [1] 115/8
forward [16] 5/8 16/5 19/7 25/18 26/6 26/9 26/21 33/9 38/24 39/8 41/13 42/16 45/15 49/2 55/19 59/12
Foster [2] 1/20 118/20
found [15] 7/7 10/9 23/4 27/19 29/21 32/4 37/12 73/16 79/22 91/15 98/18 102/18 109/13 113/24 116/2

four [4] 26/2 35/17 68/18 118/9
four seconds [1] 26/2
four weeks [1] 118/9
FPD [1] 2/9
FPD-EDVA [1] 2/9
Franklin [1] 119/8
Frankly [1] 25/18
fraud [1] 44/15
free [3] 84/18 111/23 111/25
Friedman [1] 75/2
front [9] 1/21 12/9 12/13 12/19 15/3 17/21 41/5 41/19 42/21
frustrate [1] 37/22
Fucking [1] 43/22
full [4] 35/23 36/5 48/2 63/6
full-heartedly [1] 36/5
function [2] 34/5 95/17
fundamentally [1] 67/10
further [9] 12/19 26/7 35/2 38/7 81/11 102/13 103/7 104/21 115/3
furtherance [2] 88/1 89/6
future [2] 4/16 5/7

**G**

gain [1] 43/7
gap [1] 99/2
Garcia [1] 98/19
gas [2] 43/2 43/11
gate [1] 41/9
gave [3] 73/15 76/14 83/11
Genco [3] 57/17 61/9 61/10
general [1] 88/9
generally [1] 20/19
generates [1] 47/2
Georgia [7] 8/3 14/21 43/23 44/6 44/8 44/15 44/19
get [19] 9/18 17/16 21/10 21/16 21/18 21/19 27/13 29/20 40/25 41/19 42/15 42/21 42/25 46/6 64/10 73/10 73/22 82/14 117/22
gets [1] 19/18
getting [4] 36/11 47/18 88/23 89/19
girlfriend [1] 57/17
give [10] 10/4 14/6 31/22 53/16 63/6 69/9 72/24 95/13 117/25 118/13
given [13] 47/16 51/2 51/17 51/18 54/16 64/7 65/14 84/10 94/2 94/12 96/20 111/14 114/13
gives [1] 4/22
giving [1] 93/8
global [2] 82/23 83/4

gloss [1] 102/18
go [41] 9/4 16/5 16/13 21/15 27/13 28/15 28/16 28/18 28/19 31/14 33/21 36/8 42/6 44/5 47/21 48/1 48/2 50/10 62/4 64/4 64/12 66/3 66/10 66/17 69/12 70/4 77/17 77/18 77/24 77/25 78/7 78/15 79/4 82/1 96/3 106/1 110/9 113/13 117/16 118/1 119/4
goes [7] 29/9 32/8 44/21 69/23 70/24 88/14 104/12
going [65] 10/2 10/6 10/9 12/14 16/10 19/7 22/4 22/17 23/21 25/12 26/21 28/15 28/16 28/17 30/3 30/12 30/25 33/6 35/22 35/24 38/10 38/20 38/24 41/1 41/3 42/17 43/8 43/16 44/10 45/12 48/3 48/15 50/20 51/3 53/11 59/11 59/16 61/5 61/17 62/17 62/21 64/19 65/12 66/14 71/11 72/19 72/24 73/18 78/7 78/24 79/13 79/25 80/6 92/13 92/24 98/8 106/4 108/21 110/16 116/7 117/6 118/5 118/8 118/10 118/13
gone [2] 10/17 25/13
good [14] 4/5 9/24 10/5 16/17 16/18 21/25 22/1 25/11 53/25 61/13 61/21 62/5 67/19 69/20
got [8] 16/13 19/23 21/11 33/20 42/14 63/23 78/6 78/10
gotten [2] 30/4 115/6
government [108] 3/2 4/22 5/7 5/17 5/21 5/25 6/7 6/20 6/25 7/22 8/12 9/18 10/14 11/3 11/5 11/7 11/10 12/23 12/25 14/4 14/5 14/25 15/4 15/7 15/17 18/7 19/7 20/10 21/3 22/9 24/12 25/8 25/16 29/12 31/5 32/2 32/22 32/12 39/20 49/5 50/6 50/17 51/1 51/9 51/10 51/21 52/3 56/22 57/9 57/23 57/24 60/4 60/5 61/1 61/5 61/17 62/15 63/2 63/5 63/19 65/23 66/3 67/24 68/9 71/5 71/7 71/18 72/2 72/11 73/17 74/22 77/20 79/16 83/4 83/6 83/23 84/18 84/20 84/21 85/20 86/23 88/1 88/22 89/7 90/17 90/20 94/13 97/21 100/22 101/11 101/25 102/6

105/1 109/9 111/9 111/9 112/1 112/21 113/14 113/22 114/5 114/25 115/11 115/20 115/23 116/11 117/17 118/20
Government's [37] 4/15 10/19 12/12 24/22 36/20 38/24 41/20 46/7 50/12 51/18 51/23 53/11 60/4 62/7 62/19 68/3 69/3 74/19 75/6 75/8 75/9 80/7 80/22 81/20 83/10 83/19 87/16 88/9 91/21 91/22 92/1 95/15 96/16 99/13 100/19 107/23 110/5
grabbed [1] 33/16
grand [1] 66/22
grant [14] 1/6 2/5 10/10 12/18 13/24 15/14 33/9 41/12 44/18 45/14 45/22 54/20 68/6 68/11
granting [1] 15/12
grassy [2] 21/12 21/14
great [9] 41/1 41/2 43/8 43/15 68/10 100/17 100/18 116/22 119/10
greater [7] 15/23 16/4 16/7 22/5 70/17 114/18 114/20
green [1] 13/11
Griffin [2] 32/20 104/6
ground [6] 47/3 48/9 48/12 51/25 74/4 75/5
grounds [11] 24/19 27/7 27/16 32/23 40/4 41/3 43/25 44/9 78/16 103/18 103/25
group [3] 37/21 72/23 79/14
guess [4] 29/23 46/18 65/18 80/12
guidelines [1] 76/9
guilt [1] 53/1
guilty [27] 12/7 14/11 18/19 22/8 23/4 27/21 29/21 30/9 31/5 32/5 32/16 34/14 44/25 69/20 71/11 73/16 77/21 78/24 79/11 79/12 79/22 114/6 114/7 115/12 116/1 116/2
guys [1] 69/20

**H**

had [41] 6/13 8/5 10/22 11/14 11/16 13/12 13/24 13/25 14/22 19/8 25/23 26/1 26/14 28/2 30/3 30/9 31/8 32/2 32/21 33/11 33/21 36/8 41/2 41/14 41/25 43/8 43/15 50/18 51/1 54/20 55/7 55/20 56/13 63/2 66/13 66/19 73/18 83/7 83/24 89/12 118/7

hadn't [1] 107/21
half [6] 44/4 82/5 91/21 91/22 92/1 98/1
Halim [5] 2/11 27/4 28/5 29/9 31/18
halted [1] 40/8
hand [4] 33/20 53/14 114/6 115/13
handcuffs [1] 36/23
handed [1] 118/23
handrail [1] 35/9
handrails [1] 47/13
hangs [1] 32/8
happen [1] 115/23
happened [11] 12/16 19/21 24/8 24/17 26/11 38/22 42/8 44/6 45/13 46/14 50/4
happening [10] 7/23 8/6 9/9 11/21 17/20 18/9 18/12 28/17 29/7 31/3
happens [4] 26/13 77/21 79/17 113/15
happy [4] 46/3 104/21
hard [2] 47/14 119/5
Harley [1] 17/22
harm [8] 36/16 36/18 72/4 80/21 100/17 100/18 111/10 116/12
harmless [2] 110/20 110/21
has [80] 6/7 6/20 7/1 7/7 7/10 7/20 7/22 8/22 10/17 10/22 11/3 11/7 11/11 12/23 13/19 14/4 14/16 14/25 15/4 15/7 16/14 18/7 19/15 19/17 20/13 20/14 25/1 25/2 25/16 26/17 28/6 31/23 32/6 32/25 34/11 35/10 39/20 45/8 46/2 46/13 50/21 51/8 51/10 51/19 54/10 66/25 67/2 68/5 68/6 71/1 71/5 71/8 71/12 71/13 71/15 71/21 72/5 76/11 76/12 78/1 78/10 78/18 79/20 79/21 87/7 90/11 93/21 97/5 97/22 97/23 101/19 101/21 104/19 106/6 106/21 112/9 113/6 114/1 116/5 116/12
hasn't [1] 21/3
hate [1] 115/2
have [176]
have --there's [1] 15/2
haven't [2] 64/14 118/24
having [9] 4/18 5/3 8/20 15/11 15/24 27/7 35/23 50/6 58/12
Hawa [2] 23/17 33/22 40/5 40/9
he [113] 5/9 6/9 6/10 7/16 8/5 8/25 9/3 9/4 12/19 12/19 13/11

**H**

**he... [102]** 13/12 13/13
14/2 14/19 14/22 15/3
15/3 16/21 17/15 17/19
17/20 17/25 19/8 19/8
19/25 20/16 21/7 21/10
21/10 21/11 21/12
21/15 21/16 21/17
21/19 22/7 23/3 24/19
24/20 25/1 25/4 25/25
26/1 26/4 26/6 26/14
26/15 27/21 28/9 28/15
28/19 28/19 28/20
28/22 28/23 28/24
28/25 29/3 29/5 29/7
30/15 30/15 30/15
30/16 30/18 30/25 31/1
31/16 32/2 35/21 35/22
38/20 38/20 42/25 43/4
43/10 43/14 43/14
43/15 43/16 43/22
43/24 44/2 44/3 44/5
44/5 44/9 44/21 45/14
47/18 47/18 48/1 48/2
51/8 54/16 57/17 61/11
61/18 62/10 62/12
62/24 63/3 63/3 71/10
71/11 101/21 104/19
109/14 111/12 111/17
111/18 111/19

**he's [22]** 13/16 13/19
15/1 19/4 21/7 24/23
24/24 24/25 27/1 30/11
31/5 42/15 42/18 42/19
42/20 42/20 48/23
56/16 66/5 90/21
111/16 111/17

**head [12]** 13/19 17/12
35/9 36/6 36/13 46/10
46/15 46/21 74/4 96/23
113/18 114/16

**headache [1]** 83/12

**heads [1]** 117/25

**hear [8]** 9/17 9/20 14/8
29/18 31/21 32/12
82/22 96/18

**heard [14]** 21/11 21/20
29/1 36/5 38/3 49/24
67/22 71/5 85/2 87/2
96/20 105/6 107/17
114/24

**hearing [2]** 14/15 89/25

**hearsay [3]** 61/25
62/20 62/22

**heartedly [1]** 36/5

**heave [1]** 43/4

**heave-hos [1]** 43/4

**heavy [3]** 38/3 38/4
100/5

**heightened [2]** 98/14
104/9

**held [5]** 86/2 99/6 99/7
99/7 116/1

**helmet [1]** 43/17

**Help [1]** 75/4

**helpful [7]** 53/18 65/4
65/8 67/4 90/22 104/13
64/25

**her [22]** 6/12 6/17 12/9
12/13 14/4 17/11 17/12
18/25 26/8 26/13 26/15
28/23 31/19 34/17 35/9
36/10 36/12 36/13 40/9
94/17 96/23 119/11

**here [51]** 7/11 7/21
14/21 15/10 22/4 22/18
27/10 30/8 31/2 32/24
34/25 35/11 40/11
46/15 47/12 47/12
47/24 48/14 57/10
58/22 59/9 64/19 65/14
69/9 83/20 85/23 86/1
86/10 86/13 88/9 91/12
93/7 94/12 94/16 94/19
95/9 97/2 97/16 98/16
98/21 98/24 99/3 99/10
99/11 100/10 102/6
104/4 104/15 109/13
110/22 115/11

**hierarchy [1]** 114/17

**high [2]** 19/15 97/22

**higher [5]** 20/24 21/1
102/12 114/1 115/10

**him [23]** 13/18 13/21
15/2 15/2 15/24 17/22
17/23 17/24 28/18
28/21 29/1 29/2 39/14
39/15 39/16 43/12 44/2
44/8 45/17 45/17 47/17
54/14 65/13

**himself [1]** 43/20 43/21

**hindsight [1]** 66/9

**hinge [2]** 15/23 15/24

**his [26]** 8/16 13/19
25/1 26/7 28/21 28/22
28/25 29/1 29/8 30/11
30/19 30/22 36/24
41/15 41/16 41/24
42/13 42/24 43/3 47/16
57/17 61/11 63/8 66/4
104/20 108/3

**hit [3]** 17/11 35/8 46/21

**hits [2]** 46/15 48/12

**hitting [4]** 28/1 36/13
74/4 99/9

**hold [6]** 53/9 53/10
58/2 91/12 91/25 117/6

**holding [3]** 74/3 111/16
115/25

**honest [1]** 28/22

**honestly [1]** 30/8

**Honor [179]**

**Honor's [1]** 97/19

**HONORABLE [1]** 1/10

**hoody [1]** 17/22

**hope [2]** 5/7 65/14

**hoping [1]** 9/22

**horizontal [1]** 13/8

**hos [1]** 43/4

**hosted [1]** 9/7

**hour [4]** 44/4 64/3 83/6
117/19

**hours [4]** 28/14 28/14
31/9 41/5

**house [6]** 5/3 15/15
28/7 30/5 41/17 42/5

**how [32]** 19/24 29/10
33/23 38/3 38/4 55/6
61/11 62/3 75/7 76/18
76/18 76/25 77/1 77/1
77/2 80/9 81/21 81/21
81/22 82/6 82/8 90/5
90/11 93/16 93/20
105/17 112/6 114/4
114/17 117/1 117/8
117/17

**however [1]** 53/14

**hundred [1]** 119/6

**hundreds [1]** 7/14

**hung [2]** 21/12 21/19

**hunting [2]** 78/5 78/8

**hurt [3]** 27/23 37/2
114/16

**Hutton [1]** 1/14

**I**

**I'd [13]** 12/1 12/6 14/10
16/8 60/6 64/11 69/1
88/25 100/9 103/14
107/1 112/7 113/10

**I'll [31]** 10/4 16/9 16/15
22/3 23/1 31/22 32/12
52/2 57/23 58/3 58/12
58/25 61/7 63/25 64/2
64/17 65/8 89/1 94/9
96/17 98/5 98/6 107/21
110/1 110/2 110/14
111/22 112/4 112/5
114/23 119/11

**I'm [77]** 5/10 8/20 9/15
10/2 10/5 10/6 10/8
12/14 14/8 16/10 22/17
23/14 25/12 28/15
28/15 28/16 28/17 31/2
32/4 40/15 45/4 46/3
48/15 49/1 50/20 52/18
53/1 53/11 53/22 57/2
57/16 57/22 59/11
59/16 62/21 63/24
65/17 66/18 68/12 69/6
72/19 72/24 74/24
75/10 79/2 80/8 80/12
80/12 80/19 80/24
84/19 87/11 87/11
87/15 87/17 87/21
87/23 88/19 91/2 91/9
91/11 92/1 97/15 98/8
101/2 101/3 102/22
104/19 104/20 104/21
106/4 110/14 110/17
112/10 115/17 118/1
119/6

**I've [5]** 10/3 26/24
56/25 56/25 64/15

**idea [5]** 12/16 37/20
53/25 101/10 110/25

**ideal [1]** 66/23

**identical [5]** 69/3 70/1
70/15 91/20 91/21

**identifiable [2]** 18/4
45/9

**identified [3]** 12/10
17/12 17/17

**identifies [1]** 17/2

**identify [3]** 67/24 64/8
67/4

**illness [1]** 95/17

**imagine [3]** 12/14
104/13 114/8

**impacting [1]** 49/24

**impairment [1]** 95/17

**impede [12]** 11/21
21/21 24/5 24/11 28/6
28/9 32/3 34/15 36/17
39/15 39/21 39/22

**impedes [1]** 112/14

**impeding [5]** 11/6
11/23 21/9 29/21 110/8

**implicate [1]** 92/23

**implicit [1]** 47/24

**implied [3]** 98/15 99/11
103/22

**implying [1]** 104/9

**important [14]** 27/8
27/24 39/12 41/24 49/3
50/5 78/3 94/10 94/12
97/2 97/20 98/4 114/16
115/4

**impose [3]** 36/17 39/15
104/18

**imposes [1]** 84/17

**impossible [2]** 7/16
18/10

**improbable [1]** 20/2

**improper [1]** 8/11

**improperly [1]** 8/2

**impute [2]** 8/9 8/16

**inapplicable [1]** 111/7

**inappropriate [1]** 88/8

**Inaudible [1]** 91/17

**incident [7]** 11/1 11/18
11/19 13/24 19/24
24/17 51/24

**incidents [1]** 41/8

**inciting [1]** 41/14

**inclined [1]** 110/2

**include [9]** 84/9 93/17
93/18 94/12 95/9 95/25
97/12 104/3 107/5

**included [6]** 27/21
64/25 95/7 96/9 107/4
107/11

**includes [6]** 69/13
86/16 92/11 94/6 94/21
95/16

**including [5]** 9/2 13/10
33/14 86/11 111/10

**incorporated [1]** 75/1

**incorporating [1]**
22/20

**incorrect [3]** 35/22
88/8 111/14

**increase [1]** 115/20

**incredibly [1]** 97/22

**independent [2]** 53/21
113/19

**independently [11]**
37/15 54/7 71/24 73/14
74/13 107/11 113/17
116/3 116/4 116/6
116/7

**Indian [1]** 2/12

**indicate [2]** 31/13 84/7
67/4

**indicated [1]** 53/5

**indicates [2]** 106/9
111/19

**indicating [2]** 30/23
73/5

**indication [2]** 52/25
113/11

**indictment [8]** 17/4
23/8 24/6 24/6 39/4
39/7 50/8 112/12

**indifference [1]** 76/12

**individual [1]** 46/25

**individually [1]** 73/21

**individuals [1]** 9/6 73/5

**indulgence [1]** 57/19

**infer [2]** 40/18 84/1

**inference [1]** 42/2

**inferences [2]** 22/8
53/12

**inferred [1]** 40/13

**inflict [30]** 18/20 18/21
26/18 26/20 34/11
36/14 36/16 39/5 39/8
68/19 70/22 71/1 71/12
71/14 72/8 72/9 72/17
98/10 98/17 98/18 99/8
99/16 100/17 106/15
103/25 115/6 115/9
115/19 115/22 116/9

**inflicted [4]** 34/20 73/5
73/21 106/20

**inflicting [3]** 23/4 73/20
113/5

**inflicts [1]** 113/4

**informative [1]** 106/18

**informed [2]** 55/24
56/16

**inherently [3]** 46/13
86/4 111/3

**initial [1]** 35/22

**initially [1]** 56/8

**injure [1]** 27/23

**injured [8]** 6/9 6/10
6/18 38/2 47/3 47/7
47/11 73/1

**injures [1]** 47/5

**injuries [12]** 13/2 16/12
18/25 94/16 95/5 95/5
95/22 96/4 96/22 96/25
97/10 113/24

**injury [98]** 18/16 18/18
18/20 19/6 19/15 19/23
20/1 20/1 20/23 20/23
20/25 22/19 23/4 26/15
26/18 26/20 34/12
34/23 35/11 35/12 36/1
36/19 39/1 39/8 39/17
45/11 46/16 47/9 47/12
68/19 70/24 70/25 71/1
73/6 73/18 73/20 73/21
74/22 75/17 75/18
75/25 76/2 76/9 76/11
76/17 76/18 77/2 80/6
80/8 80/11 80/14 80/18
80/19 80/20 80/25 81/9
81/11 81/16 81/20
81/21 81/22 82/6 82/8

**I**

**injury... [35]** 90/2 90/4 90/7 90/8 90/11 90/12 90/14 90/16 91/14 92/4 92/5 93/1 93/2 93/23 94/21 94/22 94/25 95/16 95/19 95/23 96/1 96/24 97/5 97/8 97/8 97/23 97/25 98/1 98/9 99/3 101/6 101/8 113/4 113/6 116/10
**injury-related [1]** 96/24
**inquire [3]** 52/1 52/7 66/1
**inquired [1]** 56/25
**inquiries [2]** 52/16 52/21
**inquiring [1]** 53/23
**inquiry [1]** 56/22
**inside [17]** 14/25 15/22 29/6 29/11 29/13 30/9 30/24 30/25 31/23 33/24 40/25 41/1 42/8 42/17 43/9 43/16 44/10
**insistence [1]** 106/6
**insofar [1]** 6/8 7/22 61/21
**Inspector [2]** 40/5 40/9
**instance [3]** 104/8 106/8 107/8
**instead [1]** 38/19
**instruct [2]** 85/18 97/14
**instructed [1]** 92/13
**instructing [1]** 97/4
**instruction [26]** 69/2 69/11 71/2 72/16 74/16 76/4 76/8 76/11 77/6 83/13 83/16 83/21 84/21 85/16 88/18 91/22 91/24 92/8 92/18 93/8 95/6 95/13 98/6 101/4 101/12 113/21
**instructions [28]** 10/20 10/23 64/7 64/13 64/17 64/17 67/25 68/3 69/1 69/12 69/23 70/1 70/14 76/8 77/17 83/10 84/13 87/17 90/18 92/1 92/16 100/12 100/19 100/25 101/25 105/1 116/15 118/16
**intend [16]** 39/15 50/11 50/13 50/21 50/24 51/4 51/12 51/15 53/6 54/11 55/24 56/16 58/6 101/13 101/18 108/10
**intended [16]** 8/17 11/22 16/3 26/19 28/9 29/5 36/16 36/16 39/21 51/18 77/3 77/3 80/2 81/24 103/3 111/4
**intending [2]** 39/14 39/16
**intense [1]** 36/6
**intent [26]** 14/17 15/1 15/7 16/2 21/8 21/20 21/20 21/21 24/5 24/11

injury... [35] 90/2 90/4 ...

40/11 40/12 40/18 42/10 45/23 101/7 108/14 108/22 109/8 109/15 111/19 112/20
**intentional [1]** 26/18 27/22 34/11
**intentions [1]** 25/6
**interest [4]** 41/1 41/3 43/8 43/15
**interested [3]** 53/23 54/10 65/3
**interfere [4]** 29/11 31/14 34/15 39/15
**Interferes [1]** 112/14
**interfering [3]** 11/23 25/20 110/9
**interpret [1]** 75/8
**interpreting [1]** 20/15
**interprets [2]** 75/8 75/15
**interstate [1]** 34/7
**intervening [6]** 13/17 13/22 26/10 37/22 84/15 114/3
**interview [2]** 8/13 8/14
**intimidate [2]** 34/15 36/17
**introduce [1]** 15/8
**introduced [1]** 63/2
**introduces [1]** 70/25
**introducing [1]** 100/18
**inviting [1]** 95/22
**involve [3]** 15/19 27/22 37/14
**involved [1]** 40/22
**involves [1]** 112/19
**involving [3]** 10/11 16/7 16/11
**iron [2]** 64/12 67/20
**is [393]**
**isn't [6]** 7/17 79/19 85/22 90/13 107/7 110/3
**isolate [1]** 67/5
**issue [27]** 5/7 8/20 18/16 20/3 27/19 34/19 40/11 52/4 67/13 68/6 68/9 70/17 70/19 70/21 74/9 74/24 77/16 86/15 86/17 98/13 103/11 103/12 106/2 106/2 106/3 107/17 109/23
**issues [7]** 68/5 68/14 68/18 82/19 82/21 113/13 116/21
**it [309]**
**it's [128]**
**item [1]** 19/13
**items [1]** 5/2
**its [9]** 6/7 7/2 22/5 24/12 25/8 62/8 99/17 106/15 117/18
**itself [5]** 6/22 7/5 36/11 47/5 48/11

**J**

**jacket [1]** 13/12

**Jackson [1]** 36/21
**JAMES [1]** 1/6
**January [10]** 8/6 8/16 36/7 37/8 42/7 43/22 44/20 58/25 59/1 69/20
**January 6, 2021 [2]** 42/7 59/1
**January 6th [7]** 8/6 8/16 36/7 37/8 43/22 58/25 69/20
**JASON [1]** 1/7
**JIA [1]** 1/10
**job [2]** 53/19 69/20
**Johns [5]** 2/18 2/20 120/3 120/8 120/9
**JOHNSON [44]** 1/6 2/8 11/9 12/11 16/22 16/23 17/8 18/4 18/6 18/11 18/16 18/19 18/24 19/1 19/3 19/12 19/22 20/4 21/5 21/23 25/14 31/18 31/22 31/25 33/9 41/14 42/11 51/4 55/4 58/14 66/3 67/25 68/5 68/11 85/8 86/23 89/1 98/13 98/23 100/21 103/23 107/2 107/7 117/10
**Johnson's [5]** 19/10 21/6 85/6 86/15 91/7
**join [12]** 15/25 16/10 16/20 22/10 22/18 24/14 25/12 31/19 48/18 85/5 85/7 85/9
**joined [1]** 9/10
**joins [3]** 35/18 35/23 48/2
**joint [3]** 24/18 37/7 70/5
**jointly [3]** 37/25 65/5 73/13
**Joseph [1]** 1/14
**judge [14]** 1/11 7/7 7/10 20/13 32/20 40/16 40/21 43/8 66/11 66/13 71/7 100/25 104/18 118/6
**judges [4]** 74/25 75/2 75/23 102/23
**judgment [4]** 6/3 22/3 22/7 24/1
**judicial [1]** 44/12
**jumbled [1]** 85/14
**jumping [1]** 41/12
**juncture [2]** 10/10 22/9 58/16
**jurisdiction [2]** 83/13 84/12
**jurisdictional [3]** 104/11 105/22 105/24
**jury [25]** 9/13 10/19 32/15 34/21 39/5 64/7 64/16 67/25 68/3 83/10 83/16 84/13 84/21 85/18 90/18 92/1 92/13 92/13 100/25 105/1 113/20 116/15 118/6 118/7 118/16
**just [155]**

**justification [4]** 102/11 102/13 104/17 102/11 102/13 104/17
**justified [1]** 104/10

**K**

**keep [2]** 61/9 119/5
**keeping [1]** 74/3
**kept [1]** 30/3
**kind [22]** 10/17 15/4 26/15 32/18 35/25 37/7 45/5 45/12 47/24 48/13 63/3 63/5 64/23 69/18 72/15 77/18 78/19 86/9 86/11 101/10 103/16 115/10
**King [1]** 2/9
**Klein [2]** 108/2 108/5
**knew [13]** 9/8 20/11 20/17 20/19 23/24 27/6 27/15 29/7 44/9 47/14 50/2 84/2 102/24
**knocked [2]** 46/15 114/10
**know [40]** 8/4 8/4 8/9 8/15 8/15 10/21 18/8 18/11 20/18 28/15 28/25 32/21 33/3 38/22 40/5 48/8 49/1 49/21 62/3 64/19 65/20 67/21 73/3 73/11 78/8 78/25 79/9 79/19 79/21 80/3 82/6 82/16 85/19 94/24 98/6 104/18 108/5 110/22 118/5 118/5
**knowing [3]** 20/15 35/23 48/2
**knowingly [26]** 23/11 39/23 77/17 77/23 77/24 77/25 78/14 78/20 78/22 78/24 79/4 79/7 79/13 103/12 103/15 103/17 103/20 103/24 104/3 104/5 105/12 105/14 105/18 105/18 105/20 107/4
**knowledge [15]** 8/5 8/10 8/16 30/24 70/8 77/10 79/11 79/20 79/23 83/24 84/8 84/8 86/2 86/6 105/10
**known [3]** 30/25 66/14 66/20
**knows [4]** 26/17 49/7 50/1 61/11
**Kotelly's [1]** 118/6
**Kyle [1]** 1/13

**L**

**lack [2]** 30/23 84/8
**laid [2]** 72/14 114/4
**Lamberth [3]** 20/13 75/2 104/18
**Lane [1]** 2/12
**Lanelle [2]** 23/17 33/22
**language [21]** 37/18 39/4 39/7 71/12 71/25 74/20 75/1 90/23 91/7 92/7 95/3 95/8 98/15

**I**

102/24 102/25 106/13 106/14 107/5 109/5 111/10 113/15
**laptop [1]** 12/7
**large [2]** 24/24 100/5
**largely [1]** 67/7
**last [11]** 20/9 21/4 70/4 77/9 77/15 90/3 90/11 94/22 103/11 105/10 118/14
**lastly [3]** 8/23 15/17 106/1
**lasts [1]** 60/6
**later [7]** 14/7 17/12 17/17 17/21 31/9 105/14 111/18
**Lauren [1]** 2/8
**law [33]** 2/2 2/5 10/25 11/23 12/22 18/13 18/20 22/7 29/23 33/5 34/10 40/3 40/12 44/21 44/23 65/20 69/15 69/21 72/4 84/14 84/22 88/15 88/21 93/11 93/14 94/11 102/20 102/21 102/24 102/25 106/21 110/4 112/14 114/20 115/22
**lawful [3]** 11/1 77/20 103/18
**lawn [2]** 42/19 42/20
**lawyer [7]** 4/10 25/13 53/22 53/23 53/24 54/7 118/8
**lawyer's [1]** 53/16
**lawyers [2]** 53/5 55/8
**layer [1]** 86/12
**lays [1]** 64/24
**lead [1]** 93/21
**leading [1]** 71/16
**leads [1]** 36/2
**learned [2]** 13/6 17/21
**least [10]** 6/8 15/23 21/2 28/7 31/24 80/8 86/12 88/2 89/2 106/10
**leave [3]** 20/21 93/25 114/23
**leaves [1]** 21/1 76/16
**leaving [2]** 86/17 96/2
**lecturn [1]** 84/20
**led [1]** 33/8
**ledge [2]** 28/20 30/17
**left [7]** 8/25 12/20 13/2 25/1 35/3 41/25 64/4
**legal [2]** 20/9 64/6 64/17 86/7
**legally [1]** 83/21
**legislative [1]** 112/9
**legislators [2]** 14/20 14/21
**legislature [1]** 44/19
**lend [1]** 28/18
**less [9]** 14/1 19/9 21/8 35/20 59/8 65/7 80/18 81/18 117/11
**lesser [1]** 16/6 27/21 64/24 64/25 114/18 114/20 115/22
**let [16]** 8/18 16/15

**L**

let... [14] 50/10 72/19 85/15 86/25 89/1 91/6 91/7 92/22 98/6 100/11 101/2 104/10 105/9 117/1
let's [9] 29/11 52/6 67/3 72/23 83/3 98/7 110/22 110/22 114/8
level [2] 23/6 94/7
liability [10] 13/24 14/14 37/21 73/11 73/23 86/12 86/16 99/2 100/6 109/13
liable [2] 86/2 113/24
Lieutenant [1] 40/7
life [2] 6/17 100/17
lift [4] 35/22 45/17 46/10 47/2
lifted [7] 13/12 28/3 33/18 35/17 38/8 47/22 114/9
lifting [3] 34/25 37/25 47/25
ligament [1] 36/24
light [5] 10/13 14/5 22/8 31/4 63/20
like [35] 9/6 14/17 16/12 27/13 28/24 37/3 47/6 47/17 58/19 60/6 64/11 64/19 68/22 70/6 70/19 71/14 84/15 89/23 93/6 94/20 96/12 96/23 99/10 100/4 103/14 103/24 105/24 106/15 112/19 113/12 114/6 114/10 117/15 117/16 118/5
likely [17] 19/16 19/17 19/17 19/20 19/25 74/23 74/24 75/10 75/17 86/3 100/13 100/17 101/21 101/23 101/24 102/25 103/4
Likewise [1] 43/10
limitation [2] 13/14 90/11
limited [2] 90/3 95/10
line [17] 11/6 19/21 20/14 21/12 35/24 38/1 41/10 41/19 41/21 43/22 45/11 47/15 48/3 74/18 78/13 102/5 105/25
lines [4] 21/16 21/19 43/3 63/7
lingering [2] 64/14 64/16
lining [1] 83/9
linked [2] 11/11 38/7
listen [1] 15/11
literally [4] 7/14 7/22 24/24 30/14
little [13] 31/11 32/18 39/18 39/19 59/8 67/14 85/14 85/25 97/24 101/9 104/12 113/13 114/16

Lively [6] 17/14 18/7 19/22 33/14 35/7 38/21
lives [1] 15/16
LLP [1] 2/14
local [1] 78/8
located [1] 23/3
location [1] 30/22
lock [1] 29/15
long [12] 11/21 20/14 36/9 42/25 43/4 43/15 52/25 90/11 90/12 95/10 117/1 117/18
longer [2] 4/7 66/11
longest [1] 43/14
look [15] 19/21 24/6 26/12 30/22 30/22 60/7 83/12 98/5 98/9 110/1 110/2 110/14 113/10 114/15 118/1
looking [11] 13/20 13/25 24/25 30/18 31/4 61/9 79/3 87/15 101/3 112/25 116/10
looks [3] 12/20 13/18 37/17
loop [1] 64/15
Los [1] 1/19
lose [1] 73/2
losing [1] 36/10
loss [1] 73/4
lost [1] 90/22
lot [5] 28/24 31/11 46/10 66/10 72/3
love [1] 62/3
loves [1] 61/11
low [3] 76/13 76/24 101/17
LP [1] 2/2
lunch [4] 64/3 64/5 67/12 83/6

**M**

ma'am [2] 54/12 54/17
made [20] 16/20 22/10 22/18 22/21 25/12 25/14 26/5 27/18 28/19 32/3 54/5 54/6 57/4 59/23 64/9 66/17 70/4 84/4 85/7 94/18
majority [1] 102/7
make [33] 9/17 13/21 20/17 28/17 31/25 32/6 52/16 52/17 52/20 53/7 53/11 53/15 54/4 56/10 63/11 65/19 79/10 81/23 81/25 82/12 84/19 85/4 87/10 89/22 94/23 97/12 105/4 105/21 112/1 112/4 116/16 116/16 119/1
makes [8] 9/20 18/9 42/23 46/12 52/3 102/19 112/13 114/16
making [4] 53/20 72/21 90/10 97/14
Mall [1] 42/5
manner [34] 6/24 7/1 7/3 7/12 7/13 16/1

18/11 19/16 19/25 34/24 35/10 35/13 35/14 35/15 38/13 39/11 46/12 47/2 48/6 74/23 74/23 75/9 75/13 75/14 75/16 75/17 101/8 101/20 108/9 108/10 108/15 108/20 110/20 111/5
many [3] 46/5 91/11 117/8
marched [1] 9/10
marijuana [1] 116/6
mark [3] 59/15 59/19 76/16
marked [1] 41/11
marshal [1] 36/24
Marshall [2] 1/14 102/4
marshals [1] 36/22
material [2] 94/15 100/11
matter [24] 18/2 22/7 45/6 47/4 61/16 62/25 66/12 76/18 76/18 76/25 76/25 77/1 77/2 81/21 81/21 81/22 82/6 82/8 84/15 88/9 90/5 93/15 93/20 120/5
matters [2] 64/14 116/17
maximum [1] 77/4
may [16] 10/8 11/13 11/16 13/11 34/13 37/14 40/12 54/16 64/9 65/23 67/9 73/25 82/20 84/1 84/3 110/10
maybe [7] 35/23 46/9 51/2 92/24 94/20 104/2 117/4
McAbee [1] 100/25
McCaughey [1] 40/16
McCree [1] 40/7
McFadden [6] 7/7 7/10 32/20 40/16 40/21 43/8
me [44] 4/16 9/15 15/11 15/14 28/11 50/10 52/19 52/20 53/5 54/2 54/16 55/24 56/16 58/3 61/22 66/24 69/9 70/19 72/19 75/4 82/22 83/11 85/15 86/25 88/22 91/6 91/7 91/13 92/2 92/22 96/12 96/13 100/11 101/2 104/24 104/25 105/9 108/4 111/23 111/24 116/15 117/1 117/6 118/2
mean [18] 8/7 11/19 13/13 19/18 29/16 46/25 47/5 47/12 74/6 75/9 87/2 93/7 95/18 97/25 98/1 98/22 99/23 105/22
meaning [7] 19/14 77/3 77/18 82/2 98/18 99/18 99/20
meanings [1] 103/5
means [9] 18/21 25/18

55/22 70/18 75/13 78/16 92/4 98/2 105/16
meant [1] 99/11
mechanism [1] 4/17
media [1] 14/17
medical [6] 6/14 80/15 90/9 92/6 92/17 92/20 94/5 95/6 97/6 97/9
medication [1] 36/9
meet [4] 6/7 24/12 25/8 97/22
meets [1] 90/12
megaphone [2] 41/15 42/13
member [1] 95/18
members [3] 9/3 44/16 44/19
memo [10] 18/21 69/2 69/8 70/3 72/3 74/16 76/14 77/14 91/20 114/4
men [1] 79/14
mens [1] 78/13
mental [1] 95/18
mention [1] 30/1
mentioned [3] 29/10 31/7 85/24
mere [2] 30/10 105/24
merely [2] 7/6 26/20
merits [1] 12/23
message [6] 8/1 8/3 57/15 61/5 61/9 62/2
messages [5] 28/21 30/23 30/23 43/2 44/18
met [1] 90/14
metal [1] 35/1
method [1] 68/4
Metropolitan [1] 51/10
microphone [2] 54/13 91/18
mid [2] 52/3 52/6
mid-morning [1] 52/3 52/6
middle [1] 26/5
might [7] 14/1 31/7 46/16 48/11 63/4 86/6 118/21
migraine [2] 6/13 6/18
military [1] 43/17
mince [1] 110/22
mind [3] 31/2 89/12 113/21
mine [1] 83/1
minor [3] 76/21 77/1 77/1
minute [4] 52/6 57/25 60/25 91/12
minutes [6] 52/11 59/8 117/4 117/7 117/9 117/14
Mirabelli [1] 1/13
misappropriation [1] 14/22
misdemeanor [10] 75/21 76/20 76/22 78/7 81/5 81/8 81/9 82/14 112/16 112/23

misspoke [1] 49/16
misstatements [1] 34/9
misunderstood [1] 111/12
Mitchell [1] 45/23
model [2] 84/13 112/8
modifies [1] 105/18
modify [2] 78/22 95/15
modifying [1] 94/23
mom [1] 28/22
moment [8] 11/4 17/16 26/8 41/15 45/2 45/25 65/23 87/3
moments [1] 24/10
months [1] 36/9
months-long [1] 36/9
moot [1] 52/4
more [20] 5/22 9/1 9/6 10/8 11/23 12/3 14/9 76/22 78/21 81/20 82/8 82/11 85/24 96/13 100/13 100/24 102/19 104/2 113/3 114/25
morning [12] 4/5 9/24 16/17 16/18 21/25 22/1 25/11 43/22 50/17 52/3 52/6 71/5
most [7] 10/13 14/5 22/8 25/2 31/4 72/24 103/16
motion [7] 10/10 15/12 16/8 48/16 50/12 58/7 60/23
motions [6] 9/18 49/24 58/16 59/23 64/9 96/21
move [20] 6/3 13/5 13/7 16/3 22/2 28/19 33/10 41/17 42/14 42/21 49/2 50/7 50/16 50/21 51/20 57/6 58/19 59/2 70/19 98/7
moved [4] 13/4 13/5 35/2 118/24
moves [4] 22/7 24/1 31/15 42/23
moving [7] 5/14 39/8 42/16 47/25 60/10 60/11 90/1
MPD [1] 58/24
Mr [11] 23/2 51/4 51/8 52/24 55/4 55/18 58/9 60/2 68/6 117/5 117/10
Mr. [162]
Mr. Blythe [15] 25/12 25/16 25/24 26/19 27/6 27/15 28/4 28/8 28/12 29/16 31/13 31/15 51/25 56/7 60/20
Mr. Blythe's [2] 30/11 30/21
Mr. Brennwald [3] 31/21 34/10 51/15
Mr. Feitel [6] 16/21 22/10 26/10 45/13 50/24 54/21
Mr. Grant [7] 12/18 13/24 33/9 45/14 45/22

**M**

Mr. Grant... [2] 54/20 68/11
Mr. Johnson [37] 11/9 12/11 16/22 16/23 17/8 18/4 18/6 18/11 18/16 18/19 18/24 19/1 19/3 19/12 19/22 20/4 21/5 21/23 25/14 31/18 31/22 31/25 33/9 58/14 66/3 67/25 68/5 68/11 85/8 86/23 89/1 98/13 98/23 100/21 103/23 107/2 107/7
Mr. Johnson's [5] 19/10 21/6 85/6 86/15 91/7
Mr. Marshall [1] 102/4
Mr. Pence [1] 27/6
Mr. Randolph [21] 22/2 22/7 22/11 22/22 22/25 23/11 23/24 24/1 24/4 24/10 24/19 24/23 25/10 51/7 55/20 58/17 58/18 59/21 59/24 85/5 96/8
Mr. Randolph's [3] 23/7 25/5 59/13
Mr. Richman [10] 22/21 23/12 24/15 45/7 85/6 86/25 91/13 95/1 96/2 101/2
Mr. Richman's [1] 95/21
Mr. Samsel [27] 6/2 7/2 7/12 7/23 8/8 8/16 8/24 9/5 12/11 16/23 33/8 41/7 48/17 48/22 50/13 54/9 61/10 61/11 61/13 61/23 62/5 62/23 63/2 63/6 64/1 110/24 111/15
Mr. Samsel's [5] 5/3 6/4 57/5 57/16 62/10
Mr. Strohecker [3] 8/2 8/5 8/8
Mr. Woodward [14] 5/8 15/25 22/18 24/15 52/22 54/9 57/6 58/12 61/23 65/12 66/16 66/24 109/24 117/22
Mr. Woodward's [1] 4/6
Ms. [10] 22/19 27/4 28/5 29/9 31/18 61/9 61/10 114/19 118/20 119/8
Ms. Edwards [1] 22/19
Ms. Foster [1] 118/20
Ms. Franklin [1] 119/8
Ms. Genco [2] 61/9 61/10
Ms. Halim [4] 27/4 28/5 29/9 31/18
Ms. Rosen [1] 114/19
much [11] 9/6 14/6 19/9 19/18 20/24 21/1 21/8 31/11 61/11 62/3

92/17 92/20/16 23/8 25/4 26/13 26/19 27/5 27/14 28/8 29/5 29/6 29/23 31/24 37/18 49/3 49/23 51/6 51/14 51/14 52/5 52/23 53/2 53/3 53/4 57/12 58/15 59/4 60/9 60/12 63/22 66/3 67/2 71/21 73/8 76/18 76/18 76/25 76/25 77/1 77/2 77/19 78/8 78/11 81/21 81/21 81/22 82/6 82/8 82/8 86/24 87/17 89/18 90/4 90/10 92/7 93/3 93/15 93/20 93/25 98/2 103/9 106/16 108/13 109/4 109/23 110/5 113/11 115/11 118/22
non [1] 118/6
non-jury [1] 118/6
none [4] 28/21 50/2 89/25 116/12
nonetheless [3] 18/17 62/8 101/12
normal [4] 72/12 72/13 73/10 73/22
normally [2] 73/7 82/13
North [1] 13/6
Northwest [1] 2/3
not [200]
note [12] 26/3 39/12 41/24 48/18 50/5 58/25 88/25 103/14 107/1 107/6 109/12 115/5
noted [2] 59/9 74/11
nothing [9] 8/4 8/4 9/9 14/16 24/7 24/20 25/1 30/14 67/2
notice [3] 4/22 44/12 109/3
noticed [1] 107/22
noting [1] 10/6
now [15] 7/20 12/7 15/10 33/2 37/8 42/14 58/1 60/10 66/20 78/9 79/17 91/2 108/17 115/5 115/6
nowhere [1] 104/10
nudges [1] 48/13
number [13] 6/12 6/17 8/7 10/24 19/16 71/4 87/7 87/13 87/14 90/21 90/24 106/11 106/12
number 2 [1] 10/24
numbered [1] 90/19
numbers [1] 87/22
numerous [4] 34/25 41/7 41/8 68/23
NW [3] 1/15 2/6 2/19

**O**

object [30] 6/24 7/6 7/8 25/19 34/21 34/22 35/10 35/25 38/12 51/11 51/21 60/5 61/5 61/17 61/25 96/8 100/5 101/4 101/5 101/15 108/8 108/10 108/12

108/13 108/18 108/19 108/22 109/24 110/20 110/21
objecting [2] 94/11 101/10
objection [23] 44/15 52/19 52/23 53/2 53/3 53/4 57/11 57/12 59/3 59/4 60/12 61/8 62/7 62/21 66/3 88/21 89/14 89/24 90/2 91/7 92/7 95/21 116/25
objections [3] 44/14 85/6 116/21
obligation [1] 53/16
observe [1] 8/23
observed [1] 106/8
obstruct [7] 14/18 28/16 29/6 32/3 39/21 39/22 40/18
obstructing [2] 11/23 21/9
obstruction [6] 14/14 21/5 28/12 29/21 31/6 71/9
obtained [2] 5/2 5/4
obvious [9] 27/24 72/14 90/8 92/5 92/19 95/5 97/5 97/7 98/1
obviously [11] 17/3 46/8 55/15 63/10 64/25 65/3 75/19 80/18 95/21 110/8 118/1
occasions [1] 107/12
occurred [5] 6/11 9/1 22/12 22/25 24/7
occurring [2] 40/24 43/5
occurs [1] 57/18
October [2] 1/5 120/8
off [12] 10/6 13/7 24/25 26/7 33/1 41/17 61/3 65/25 78/17 80/10 87/5 104/14
offense [26] 10/24 15/23 16/7 17/9 18/8 22/5 27/21 30/9 70/9 75/20 77/22 79/18 79/23 83/23 83/25 84/3 84/6 86/21 88/1 88/3 89/7 89/11 97/15 105/23 112/23 116/2
offenses [11] 16/6 49/8 64/24 64/24 64/25 69/21 78/14 84/23 114/18 114/20 114/21
offer [2] 12/25 58/15
office [7] 1/14 1/17 1/21 2/5 2/9 10/21 48/5
officer [57] 6/9 6/11 6/18 7/15 10/11 10/12 10/25 12/6 12/8 12/13 12/19 13/20 13/25 16/11 17/8 17/9 17/16 17/19 17/20 17/24 18/5 18/8 18/9 18/15 19/2 19/6 19/7 19/23 22/23 23/3 23/7 26/3 26/7

106/13 106/49 108/19 108/22 109/24 110/20 110/21
108/22 109/24 110/20 110/21
objecting [2] 94/11 101/10
objection [23] 44/15 52/19 52/23 53/2 53/3 53/4 57/11 57/12 59/3 59/4 60/12 61/8 62/7 62/21 66/3 88/21 89/14 89/24 90/2 91/7 92/7 95/21 116/25
officers [23] 7/5 10/25 11/24 19/21 22/14 25/15 28/21 33/1 33/10 33/13 33/14 33/19 34/2 35/6 38/6 38/9 43/6 44/1 46/20 47/15 48/5 58/25 114/10
offices [1] 15/1
official [13] 2/18 8/17 11/1 28/12 31/6 34/17 39/21 39/22 40/8 42/4 42/12 42/17 120/9
okay [100] 4/11 5/5 5/10 5/16 5/21 5/24 9/17 9/22 10/1 10/16 29/14 29/25 48/20 48/25 49/3 49/14 49/23 50/6 50/10 50/13 50/20 50/24 51/7 51/22 52/6 52/13 52/16 57/5 57/11 57/13 57/25 58/5 58/9 58/11 58/14 58/17 58/21 59/3 59/5 59/17 59/22 59/25 60/21 60/24 61/6 62/1 62/19 63/12 64/2 64/3 64/21 65/2 67/3 67/16 67/18 67/19 68/7 69/10 70/16 70/23 74/8 74/14 74/17 75/11 76/6 77/8 77/12 81/17 82/16 82/22 83/3 83/8 84/25 85/12 85/15 87/20 87/21 89/16 89/25 91/4 91/25 95/14 96/6 96/10 98/5 100/8 101/22 102/14 103/6 106/24 107/16 111/8 114/25 115/4 116/14 116/14 117/12 118/18 119/1 119/10
omitted [1] 108/17
once [5] 5/8 14/9 21/11 28/19 70/7
one [74] 8/1 9/25 10/23 11/18 11/21 11/23 12/12 13/21 13/25 14/8 15/2 16/21 16/24 16/24 17/1 23/14 24/3 25/1 28/7 31/11 41/3 45/2 45/15 45/25 46/25 46/25 48/7 48/8 48/8 48/23 50/15 50/18 51/8 51/20 58/24 64/18 65/23 68/6 69/9 71/20 73/19 74/2 74/4 75/7 75/15 76/11 77/5 80/14 81/6 81/15 81/21 82/23 85/19 86/14 90/19 94/24 97/5 97/22 99/6 99/10 100/4/5 104/18 109/15 110/7 111/19 112/16 113/16

**N**

narrate [1] 17/14
narrow [1] 21/2
narrowed [1] 67/22
nation [1] 44/20
natural [2] 39/23 40/24
nature [2] 45/6 46/5
near [4] 21/13 79/25 80/4 115/13
nearly [2] 69/3 70/1
necessarily [5] 31/12 47/11 85/22 85/22 102/2
necessary [6] 27/17 53/19 95/10 95/12 96/18 96/19
need [20] 11/20 31/12 31/25 33/3 50/19 52/1 52/13 52/16 61/8 61/15 64/8 64/10 65/15 65/19 65/19 70/4 87/3 89/18 97/15 104/24
needs [5] 94/8 113/8 113/20 113/22 114/3
negative [1] 53/12
Neither [1] 19/23
never [1] 28/19
new [3] 5/6 78/19 100/18
next [10] 20/6 54/20 67/12 70/19 74/9 86/14 88/14 91/5 98/7 100/9
night [3] 20/9 70/4 77/15
no [84] 1/3 4/7 5/23 7/22 7/25 8/12 8/14 8/23 9/13 10/3 10/5 10/5 13/21 14/8 18/2

multiple [16] 23/18 37/14 47/22 71/17 71/17 71/23 72/3 94/16 96/25 106/2 106/19 107/10 113/15 115/22 115/23 116/4
multiplicitas [1] 15/18
murky [1] 86/9
Museum [2] 13/6 66/4
must [8] 26/22 30/25 41/1 86/19 88/1 89/7 89/9 111/4
mute [1] 59/12
my [40] 10/9 10/12 10/20 12/2 12/6 13/15 13/19 13/23 14/11 14/16 14/24 15/9 15/14 15/20 25/16 26/12 26/23 27/19 28/18 46/18 56/22 60/23 61/4 62/24 74/10 81/22 82/7 82/21 84/19 91/12 108/2 108/3 108/24 113/6 114/4 114/15 114/16 114/18 114/19 115/24
myself [3] 85/18 97/4 97/14

**O**

one... [7]  114/8 115/13 116/5 117/16 118/6 118/19 118/20
one's [3]  116/6 116/6 116/7
one-year [1]  112/16
ones [2]  10/20 114/12
only [28]  7/18 13/16 16/14 16/21 16/23 17/1 17/20 20/11 21/15 35/10 36/16 41/3 48/23 49/9 50/18 50/21 51/1 60/6 60/19 64/4 80/24 81/15 88/21 89/14 100/1 108/8 108/9 114/15
open [2]  12/7 28/22
opened [2]  33/8 41/9
opening [6]  17/9 19/2 21/6 31/8 56/8 117/3
oppose [3]  4/21 34/15 85/20
opposed [2]  25/18 79/5
order [7]  32/1 32/19 39/19 50/8 68/12 79/10 79/20
ordering [1]  16/13
orderly [2]  28/6 28/9
orders [1]  43/11
ordinarily [7]  80/15 90/9 92/6 92/17 92/20 94/4 97/6
ordinary [3]  98/18 99/17 99/20
ore [1]  97/10
organ [1]  95/18
organize [1]  65/15
other [62]  7/18 9/10 11/6 11/8 13/9 13/22 16/22 17/1 25/13 26/9 26/25 27/8 28/2 28/24 29/16 29/19 30/14 30/16 38/7 38/8 38/16 46/14 50/2 50/18 51/12 53/14 60/17 62/23 64/14 64/16 64/22 67/9 67/13 71/13 73/4 74/4 74/6 82/21 82/23 83/2 84/6 84/14 85/2 85/24 86/22 88/16 89/24 90/4 94/1 94/4 94/22 95/19 99/17 103/9 104/20 104/20 107/16 113/17 113/24 113/25 114/8 114/24
others [15]  10/8 12/2 16/11 16/15 26/1 26/5 28/3 44/2 45/16 74/6 86/20 88/3 89/11 104/22 114/13
otherwise [9]  58/6 64/7 69/25 70/15 79/11 79/19 79/22 110/20 110/21
ought [3]  13/15 13/23 15/9
our [43]  7/14 11/5

13/18 18/24 31/22 31/24 31/24 48/19 52/2 52/6 58/7 58/16 60/6 63/24 63/25 65/14 65/15 69/2 69/2 69/8 69/11 69/25 71/1 72/16 74/16 74/16 76/4 76/5 76/14 77/13 81/18 91/20 91/23 92/8 95/20 95/21 95/23 101/16 102/6 102/21 103/3 106/6 112/11
ours [4]  74/23 77/23 92/16 106/14
out [40]  5/6 6/14 8/4 14/19 19/18 23/22 23/23 29/16 31/2 32/8 32/18 33/20 33/21 36/7 39/19 42/19 42/20 51/19 64/13 64/24 66/15 66/21 67/20 72/14 72/20 79/2 88/6 90/18 98/19 104/7 112/6 113/14 114/4 114/5 114/17 114/19 115/3 116/21 117/21 118/16
outlined [1]  23/8
outlines [1]  107/3
outside [12]  14/12 28/13 28/19 29/10 30/10 30/13 30/22 32/9 33/23 42/18 69/19 73/14
over [7]  9/10 13/25 22/25 33/13 44/20 46/10 64/5
overcharging [1]  15/18
overdose [4]  71/18 98/23 98/25 116/5
overlap [1]  10/23
overrun [3]  38/1 42/24 48/6
overview [1]  22/4
own [3]  52/9 54/8 63/8

**P**

p.m [2]  43/13 59/2
PA [1]  2/12
page [26]  64/11 69/7 69/8 69/12 69/23 71/2 74/16 76/5 77/13 87/13 87/13 87/14 87/21 88/14 88/14 90/21 90/25 91/2 91/13 91/16 91/16 91/20 92/2 101/3 107/23 109/20
Page 11 [1]  92/2
Page 12 [1]  91/2
Page 13 [1]  74/16
Page 14 [1]  71/2 76/5 91/16 91/20
Page 17 [1]  77/13
Page 24 [3]  101/3 107/23 109/20
Page 5 [3]  69/12 69/23 87/21
pages [4]  69/2 77/14

67/7 90/18
Pages 3 [1]  77/14
Pages 5 [1]  87/7
Pages 9 [1]  69/2
pain [4]  36/6 93/18 93/22 95/17
painful [6]  90/8 92/5 92/19 95/5 97/5 97/7
paragraph [7]  69/13 69/22 87/9 87/24 88/13 88/16 90/7
parcel [1]  83/1
parent [1]  76/8
parenting [2]  77/6 92/16
Paroline [1]  70/6
parse [1]  112/6
part [20]  18/18 18/20 25/20 26/7 40/17 60/20 62/15 63/1 63/5 69/3 69/11 69/15 70/13 75/13 78/15 83/1 85/20 93/8 105/10 118/21
participate [2]  35/21 43/24
participates [1]  44/22
participation [2]  88/2 89/8
particular [12]  6/12 13/24 23/5 32/22 45/9 48/5 48/8 72/7 85/25 101/4 111/16 112/22
particularly [5]  15/3 33/4 76/15 78/19 96/20
parties [7]  4/18 23/17 64/6 66/9 67/7 72/21 95/22
parties' [1]  68/25
parts [1]  64/12
party [3]  27/12 66/23 111/23
pass [1]  33/2
passing [1]  36/7
passively [1]  115/13
past [3]  21/11 77/18 78/6
pattern [2]  98/6 118/8
PAUL [1]  1/6
PDF [4]  87/13 87/22 90/20 90/21
PDF7 [1]  87/22
Peace [17]  6/11 8/24 16/24 17/1 17/3 17/5 21/11 22/12 23/15 24/7 24/9 24/17 24/18 32/8 41/9 41/19 42/1
penalizes [2]  82/3 103/17
penalty [1]  113/1
Pence [9]  23/20 27/5 27/6 27/7 27/10 27/13 27/13 27/15 31/10
Pennsylvania [3]  2/6 2/15 38/18
people [37]  7/14 12/9 12/9 12/13 13/10 16/3 17/10 17/12 17/15 17/17 20/19 21/17

24/24 26/9 27/1 27/23 28/1 28/2 28/24 29/16 30/3 42/21 42/25 47/22 50/2 62/4 72/25 79/25 80/3 99/5 99/5 99/7 100/4 100/5 114/8 114/9 116/5
percent [1]  119/6
perfectly [2]  13/4 53/1
performance [2]  11/1 112/15
performed [2]  87/25 89/6
performing [1]  34/17
perhaps [4]  8/7 12/2 14/1 94/20
perimeter [1]  104/14
permit [1]  32/15
person [28]  16/14 17/21 27/9 31/23 34/23 37/3 37/3 41/6 47/1 47/3 47/3 48/9 69/19 71/15 73/1 73/9 73/18 74/3 77/17 78/9 99/9 99/6 99/7 99/9 99/9 101/6 113/16 114/9
personal [1]  15/16
personally [1]  82/19
perspective [2]  35/2 35/24
pertains [4]  22/19 22/22 23/7 25/6
pertinent [1]  59/12
ph [2]  78/21 78/22
Philadelphia [1]  2/12
phone [3]  4/13 5/3 57/16
photograph [1]  12/11
phrase [3]  94/22 106/8 106/10
phrases [1]  113/12
physical [20]  13/13 15/21 16/5 18/22 18/25 36/8 39/2 39/17 71/3 72/10 72/18 81/7 82/2 82/3 82/8 93/18 95/17 106/23 112/19 113/7
pick [2]  25/24 46/18
picked [2]  26/1 63/5
picking [1]  46/25
picture [2]  15/2 63/6
pictures [1]  43/20
piece [3]  8/12 68/16 93/16
pieces [1]  7/25 82/24
pinch [4]  76/15 76/15 80/13 93/5
pinching [1]  76/14 76/21
Pinkerton [2]  73/11 73/23
pinned [1]  47/19
pipe [1]  109/15
pitch [1]  13/5
place [9]  11/20 12/1 14/3 14/12 36/23 37/3 50/4 80/24 101/1
placed [2]  25/23 51/25

places [1]  87/8
placing [1]  115/13
plain [1]  104/16
Plaintiff [2]  1/3 1/13
plan [3]  34/1 96/21 118/25
planes [1]  13/5
plank [1]  111/16
planning [2]  8/8 118/1
play [4]  58/19 59/7 60/4 60/15
played [5]  8/13 59/10 59/14 59/18 59/20 60/18
playing [1]  114/4
plays [1]  114/17
Plaza [1]  17/2
please [1]  91/8
plenty [2]  27/8 27/25
PM [2]  67/17 119/13
point [32]  6/5 9/4 11/13 12/14 12/15 15/20 19/9 23/2 24/8 25/1 26/21 28/8 28/14 28/14 29/7 30/17 51/19 59/12 59/15 66/16 69/1 80/13 81/22 82/7 100/24 102/8 104/2 104/6 107/1 108/24 111/17 111/19
pointed [2]  113/14 114/19
points [3]  5/6 111/16 115/1
police [24]  10/11 21/19 25/23 29/2 29/12 33/1 35/5 35/24 38/1 40/25 41/10 41/16 41/20 41/21 43/3 43/5 43/12 43/21 44/1 45/11 47/15 48/3 48/5 51/10
portion [2]  17/15 22/23
portions [2]  79/4 88/24
position [16]  20/9 29/19 46/7 62/19 66/10 71/19 95/1 95/23 99/14 99/19 102/3
positive [1]  119/6
possess [1]  79/8
possibility [1]  101/18
possible [4]  19/25 29/24 104/23 117/20
possibly [2]  32/5 75/21
posture [1]  51/18
potentially [7]  33/25 47/9 48/7 73/22 76/19 81/5 110/24
pounds [1]  28/18
powerful [2]  12/3 14/1
practical [1]  75/5
precedent [4]  100/20 100/24 102/7 102/12
precluded [1]  5/9
prefer [1]  117/20
prefers [1]  82/25
prejudice [2]  88/20 93/8
prejudicial [1]  66/23

**P**

premarked [1] 58/23
prepare [1] 118/15
prepared [1] 43/18
preposterous [1] 69/18
presence [5] 6/4 29/8
30/10 105/11 105/23
present [17] 4/4 5/22
9/6 32/22 50/11 50/13
50/25 51/4 51/15 55/25
77/21 78/1 78/2 78/18
78/25 79/1 79/22
President [13] 9/7 9/8
23/20 27/5 27/6 27/10
27/15 30/6 33/4 33/24
44/17 78/8 79/17
President's [1] 105/11
pressing [1] 66/12
pressured [1] 118/9
presume [1] 110/17
presumptively [1]
84/14
pretty [4] 31/11 86/14
86/22 115/5
prevent [3] 79/24 79/25
80/3
previously [1] 57/23
Price [1] 117/15
primary [1] 89/20
principal's [1] 83/22
principals [1] 38/13
printed [1] 90/18
prior [1] 42/1
probable [1] 39/23
probably [8] 28/13
46/11 49/6 52/2 65/7
68/8 73/16 82/20
problem [8] 49/23
85/17 86/24 87/1 88/22
89/24 101/16 109/19
problems [1] 29/8
procedures [2] 50/12
52/4
proceed [2] 48/16 52/9
proceeding [13] 8/18
28/12 31/6 39/21 39/22
40/8 42/4 42/17 50/7
88/9 88/10 93/1 115/11
proceedings [13] 2/22
14/18 21/21 29/11
29/14 30/3 30/24 31/10
31/14 40/19 42/12
119/13 120/4
produce [2] 37/15
107/11
produced [1] 2/22
product [1] 76/10
professional [3] 53/17
66/13 66/18
prohibited [1] 107/3
prohibiting [1] 112/4
prong [2] 34/13 100/10
proof [6] 6/8 28/9 29/5
29/6 31/1 72/17
proposal [3] 70/12
87/7 92/9
proposed [8] 10/19
83/10 87/17 91/7 92/1

proposes [2] 96/3
101/25
proposing [2] 93/19
101/11
prosecution [1] 17/4
prosecutors [1] 5/9
protected [5] 14/20
23/13 23/16 34/5 80/4
protectee [16] 20/8
20/12 32/21 32/22
77/21 78/1 78/10 78/18
78/25 78/25 79/21 80/5
104/1 105/13 105/23
107/5
protectees [1] 80/1
protest [2] 21/11 21/20
protested [1] 42/4
protesters [2] 9/2 9/10
proud [4] 21/7 43/19
61/11 62/3
prove [14] 12/24 18/10
20/16 25/16 36/15
39/20 47/10 88/1 89/7
97/15 99/9 109/8 112/2
113/22
proved [3] 86/13 97/23
108/22
proven [9] 6/20 7/1
14/4 14/25 21/3 23/14
23/15 36/2 94/25
proves [1] 83/23
provide [2] 4/19 4/20
provided [1] 50/16
provides [5] 4/17 40/1
95/4 112/16 112/17
providing [2] 90/13
107/24
proving [1] 99/3
proximate [5] 18/22
112/24 113/7 113/23
114/2
proximity [3] 13/14
29/10 30/11
pull [4] 29/2 43/25 69/4
91/7
pulled [5] 28/21 33/18
38/16 87/19 91/11
pulling [6] 7/16 33/17
43/20 69/6 111/1 111/3
punishment [1] 112/17
punishments [1]
114/22
purpose [5] 11/22
37/23 40/19 62/22 70/8
purposes [3] 100/3
104/11 111/2
pursuant [2] 22/2
23/25
push [9] 21/17 25/18
35/19 35/23 44/1 45/16
46/14 46/19 48/2
pushed [10] 7/4 17/16
25/21 26/6 26/9 28/3
33/18 35/17 36/10
38/19
pushes [1] 26/2
pushing [21] 7/6 7/14

10/25 10/1 11/6 11/10
11/16 13/10 17/14 17/15
17/24 19/22 23/2 26/4
32/24 33/17 35/1 37/25
46/22 47/1 47/14 47/25
72/22 111/1 111/3
put [9] 4/20 16/16 51/1
64/25 66/9 105/15
111/3 114/6 117/4
putting [1] 51/3

**Q**

qualifier [2] 80/9 80/21
Queen [2] 2/12
question [17] 29/9
29/23 30/21 31/20 46/4
46/18 52/19 64/22
72/19 85/15 94/9 97/19
103/1 106/16 107/18
118/14 118/20
questions [7] 46/3
52/18 55/20 61/21
103/8 103/9 104/22
quicker [1] 63/23
quickly [1] 58/4
quite [2] 18/13 69/1
quote [7] 43/8 106/5
107/8 107/10 111/2
116/3 116/3

**R**

Rachel [1] 57/17
rack [27] 6/22 7/4 7/6
7/11 7/17 12/20 13/12
13/25 19/11 19/24
22/23 23/3 23/5 24/17
25/22 25/25 26/4 26/6
26/15 28/3 34/20 47/1
47/5 47/20 48/8 86/6
86/8
racks [21] 11/6 11/12
13/4 13/10 16/1 22/25
24/9 25/17 36/4 38/3
38/5 38/8 46/5 48/6
110/24 110/25 111/2
111/4 111/5 115/13
115/14
radar [1] 10/17
Rahave [1] 78/22
raise [4] 68/5 68/9
68/14 82/21
raised [2] 84/14 85/6
rally [2] 9/7 9/8
ram [1] 114/10
RANDOLPH [38] 1/7
2/11 17/13 17/18 22/2
22/7 22/11 22/22 22/25
23/2 23/11 23/24 24/1
24/4 24/10 24/19 24/23
25/10 33/17 41/18
41/21 41/24 42/23 43/7
51/7 51/8 55/18 55/20
58/17 58/18 58/24 59/2
59/5 59/20 59/21 59/24
85/5 96/8
Randolph 2 [3] 58/24
59/2 59/20
Randolph's [3] 23/7
25/5 59/13

**rather** [1] 79/17
rational [1] 32/15
rea [1] 78/13
reach [1] 88/19
read [6] 37/10 86/19
103/23 106/5 107/14
113/12
readily [1] 98/3
reading [2] 78/14 79/4
reads [1] 62/2
ready [1] 10/1
reality [1] 30/2
really [6] 7/21 15/18
29/1 34/19 37/22 40/11
83/11 90/14 92/23 93/6
93/15 94/7 97/16 99/1
108/5 117/23
realm [1] 76/22
realtime [3] 17/20 18/9
18/11
reason [14] 24/12 25/8
26/13 32/23 76/24 77/5
78/3 78/12 79/21 80/16
93/25 96/18 106/10
109/7
reasonable [16] 6/21
9/13 9/14 18/11 19/9
20/18 21/8 32/1 32/16
44/7 44/7 44/24 83/23
84/5 97/1 113/18
reasoning [2] 104/6
104/7
reasons [6] 9/12 23/18
23/25 31/15 62/22 63/4
rebuttal [1] 63/19
recall [2] 13/11 13/19
receive [1] 4/5
received [6] 5/20 57/14
59/6 60/14 66/11 84/7
recent [5] 4/20 78/13
78/21 100/21 100/24
recently [1] 25/2
recess [3] 52/12 67/17
71/11
recognize [1] 39/19
Recognizing [1] 41/2
record [18] 4/2 25/5
42/8 44/11 48/18 48/24
58/20 58/25 59/11
59/20 61/3 61/24 63/11
63/25 65/25 85/5 87/5
96/7
recorded [2] 2/22
27/12 43/2
records [2] 5/3 6/14
recount [1] 44/8
recovery [1] 36/9
red [6] 74/17 83/9
83/13 83/16 85/16
85/17
redness [1] 94/18
reduce [1] 59/16
refer [1] 63/10
reference [2] 57/10
91/14
references [1] 42/12
referred [1] 26/10
referring [2] 75/22

reflects [3] 59/1 88/20
102/25
regard [1] 22/17
regarding [7] 22/11
22/19 24/16 45/5 64/13
68/15 90/2
regardless [1] 54/2
regular [1] 112/23
regularly [1] 113/12
reiterate [1] 50/1
Rejects [1] 104/7
related [10] 14/15 21/5
64/13 72/9 94/3 96/22
96/23 96/24 104/20
107/17
relates [3] 16/25 68/23
80/20
relating [8] 18/15 18/19
19/2 19/6 19/11 19/24
20/8 95/8
relationship [1] 106/9
relatively [1] 4/20
relevance [1] 61/19
relevant [3] 49/12
61/20 70/8
reliably [1] 5/4
relied [1] 40/17
relies [1] 102/6
religious [1] 79/14
rely [2] 7/25 8/13
relying [1] 76/7
remain [2] 24/19
103/24
remaining [6] 15/21
16/5 88/24 98/12
103/17 116/17
remains [1] 64/16
remarks [3] 22/18
22/20 24/15
remember [1] 27/24
remembered [1] 13/21
remind [1] 91/13
remove [1] 43/12
removed [3] 19/4 23/19
38/16
render [1] 7/7
renew [6] 58/7 58/16
59/23 60/23 63/24
63/25
renewed [1] 63/16
repeat [2] 14/8 64/8
rephrase [1] 108/23
replace [1] 109/4
replaced [1] 101/24
reported [2] 2/18 54/10
Reporter [2] 2/18 120/9
requesting [2] 74/19
102/24
require [15] 10/24
23/10 36/15 74/21
77/17 78/22 80/14
80/15 94/5 95/5 96/3
99/14 101/12 108/19
113/13
required [7] 7/20 37/13
37/16 72/6 84/1 84/5
107/9

# R

**requirement [18]** 12/21
15/6 15/23 20/9 27/3
77/10 83/14 84/11
84/17 90/16 104/12
104/19 104/21 108/7
108/18 112/7 112/24
113/6
**requirements [2]** 98/14
108/16
**requires [12]** 18/2 18/3
19/12 20/10 24/4 45/10
72/6 72/17 103/17
106/10 114/14 116/9
**requiring [1]** 4/23
**requisite [1]** 15/1
**reserve [4]** 14/7 16/9
48/15 64/2
**resist [2]** 34/15 43/12
**resisting [1]** 112/19
**resists [1]** 112/13
**resolve [1]** 67/4
**resolved [2]** 64/15 98/8
**respect [30]** 6/5 6/8
6/19 6/20 7/10 7/18
7/19 9/14 10/7 10/11
10/14 12/5 12/18 14/10
16/19 17/7 23/9 24/13
25/9 26/3 27/19 31/19
58/13 64/6 68/13 84/12
85/16 93/7 110/4
115/25
**respond [9]** 9/19 9/19
49/4 68/9 89/1 96/12
102/15 106/25 115/17
**responded [3]** 33/15
70/3 71/5
**responding [2]** 34/3
98/13
**responds [2]** 61/13
62/5
**response [4]** 72/2
82/23 83/4 86/14
**responsibility [4]** 14/3
19/3 53/16 54/1
**responsible [5]** 7/2
7/13 73/12 83/22 99/7
**rest [12]** 16/9 51/3 51/6
58/6 58/10 58/16 60/23
63/14 88/15 88/15
88/17 113/7
**restart [1]** 29/17
**restatement [1]** 88/17
**restating [1]** 89/15
**rested [1]** 50/7
**resting [1]** 57/20
**restitution [1]** 70/7
**restricted [27]** 23/11
23/12 23/19 27/4 27/16
32/23 33/3 40/4 77/18
77/24 78/1 78/10 78/16
78/24 79/14 79/15
79/16 79/19 79/20
103/18 103/24 103/25
104/14 105/12 105/14
105/15 106/7
**restriction [2]** 27/5
79/16

**rests [2]** 5/23 59/21
**result [14]** 6/10 37/15
40/8 72/7 72/7 72/8
74/23 93/21 95/23
99/10 101/14 101/19
101/21 107/11
**resulting [4]** 72/13
74/21 106/13 106/15
**results [5]** 37/19 44/6
44/8 71/14 113/12
**reviewed [1]** 10/19
**Revolution [1]** 41/15
**Richman [11]** 2/8
22/21 23/12 24/15 45/7
85/6 86/25 91/13 95/1
96/2 101/2
**Richman's [1]** 95/21
**rid [2]** 88/23 89/19
**rifle [1]** 78/6
**right [56]** 9/23 13/3
13/25 17/21 21/13
21/13 26/8 29/2 32/12
35/1 48/15 52/1 52/8
52/11 52/17 53/8 53/14
54/1 54/3 54/6 54/20
54/25 55/16 55/18 56/4
56/10 57/1 62/9 62/11
62/12 65/18 67/14
73/11 79/6 80/17 81/3
82/10 82/11 87/20 91/2
93/13 95/7 100/15
102/21 109/1 109/10
109/25 110/11 110/12
115/15 116/14 117/14
117/16 118/2 118/13
119/12
**riot [3]** 7/7 7/10 40/9
**rioter [1]** 38/17
**rioter's [1]** 35/2
**rioters [2]** 9/3 40/10
**rise [1]** 23/6
**risk [2]** 4/10 33/24
**Rivera [4]** 37/6 71/6
71/8 72/11
**Robert [2]** 2/5 2/5
**ROBERTSON [9]** 2/14
25/3 102/8 102/9
109/12 110/1 110/3
110/14 110/15
**roll [1]** 13/5
**Room [1]** 1/21
**Rosemond [1]** 69/16
**Rosen [2]** 2/8 114/19
**Roughly [1]** 117/3
**routes [1]** 33/25
**row [1]** 41/10
**RPR [2]** 2/18 120/9
**rule [31]** 4/7 4/17 4/20
5/25 6/3 7/19 10/10
10/14 15/9 16/8 22/3
23/25 31/5 31/15 32/1
32/14 44/21 44/22
49/24 58/7 58/13 58/16
59/23 60/23 63/16
63/25 64/1 64/9 72/2
84/13 96/21
**Rule 29 [23]** 6/3 7/19
10/10 10/14 15/9 16/8

22/3 23/25 31/5 31/15
32/14 49/24 58/7 58/13
58/16 59/23 60/23
63/16 63/25 64/1 64/9
72/2 96/21
**Rule 29s [1]** 5/25
**Rule 902.14 [1]** 4/7
**ruled [1]** 8/20
**ruling [2]** 32/6 102/9
**run [2]** 47/3 65/1
**running [2]** 36/22
114/9
**RUSSELL [1]** 1/6
**RYAN [3]** 1/5 4/3 33/16

# S

**Safeco [1]** 106/9
**said [38]** 11/16 14/16
15/25 16/21 17/8 17/15
18/1 19/8 21/6 27/11
28/15 31/9 31/20 31/21
34/11 35/5 37/2 37/9
38/21 41/24 45/13 49/5
49/25 63/2 63/3 69/6
70/2 71/13 71/21 75/12
80/14 84/19 85/11
105/11 105/12 106/4
106/22 108/13
**same [30]** 15/19 17/14
20/3 20/4 20/21 38/12
38/12 38/13 39/10
39/11 39/11 46/21
47/25 50/4 50/4 52/18
55/20 62/14 63/3 64/11
79/13 80/11 94/9
102/10 104/7 109/9
115/24 117/3 117/13
118/7
**SAMSEL [37]** 1/5 2/2
4/4 6/2 7/2 7/12 7/23
8/8 8/16 8/24 9/5 12/11
16/23 17/11 17/18 33/8
33/16 41/7 41/7 41/9
43/19 44/18 48/17
48/22 50/13 54/9 61/10
61/11 61/13 61/23 62/5
62/23 63/2 63/6 64/1
110/24 111/15
**Samsel's [6]** 5/3 6/4
57/5 57/16 62/10 62/17
**San [1]** 1/22
**satisfied [6]** 5/10 5/12
11/4 56/22 57/3 108/15
**satisfies [1]** 4/14
**satisfy [2]** 46/16 95/6
**save [2]** 4/18 15/10
**saw [5]** 12/9 28/20
33/14 38/17 47/14
**say [41]** 5/8 9/21 9/22
12/15 13/1 13/20 15/13
16/11 16/14 28/25 29/1
29/11 29/13 30/8 31/2
31/5 34/2 35/20 38/9
45/15 47/10 48/4 49/9
54/2 70/10 72/10 72/23
73/18 77/1 86/5 88/13
91/25 93/25 94/6 95/15
95/15 102/22 106/17

**saying [16]** 19/17
30/16 34/10 63/7 66/11
69/20 78/16 80/12 86/1
91/4 93/22 95/11 99/24
102/21 111/13 114/5
**says [23]** 11/18 29/3
39/7 72/8 72/11 72/12
72/14 74/22 74/23
76/17 77/1 77/19 77/23
79/9 83/21 101/4
105/13 105/14 107/8
111/21 113/1 113/11
115/23
**scaffolding [1]** 21/18
**scanned [1]** 90/19
**scared [1]** 42/14
**scenario [1]** 48/13
**scenarios [2]** 47/17
104/13
**schedule [1]** 66/25
**scheduling [1]** 65/10
**scheme [1]** 66/22
**school [1]** 29/23
**Schwager [1]** 40/6
**screen [1]** 58/23
**SE [1]** 2/15
**second [19]** 8/12 9/25
16/13 41/10 69/9 76/16
91/22 91/25 92/14 94/1
94/19 94/23 96/8 96/16
97/13 97/20 98/3 101/4
118/19
**seconds [6]** 25/25
25/25 26/2 28/4 59/9
60/6
**Secret [11]** 20/7 20/8
20/12 23/13 23/16
33/22 40/6 78/24 79/25
103/25 107/5
**section [12]** 10/18
40/20 49/8 76/10 77/11
83/19 104/4 105/10
107/3 109/6 111/21
113/1
**Section 111 [1]** 109/6
**Section 1365 [1]** 76/10
**Section 1512 [1]** 40/20
**Section 1752 [2]** 77/11
105/10
**Section 2 [2]** 49/8
83/19
**sections [4]** 38/5 38/9
38/17 104/5
**security [3]** 29/13
33/24 40/10
**see [32]** 8/3 8/7 12/20
13/9 14/24 15/7 16/25
17/20 28/17 29/1 38/4
41/21 43/23 50/10
50/20 51/19 62/22 63/8
74/2 74/25 91/4 93/12
96/16 97/10 102/11
104/17 111/9 113/5
114/4 114/11 114/17
118/24
**seeing [2]** 35/18 97/16
**seek [2]** 62/8 97/8

**seeking [2]** 57/10
108/6
**seem [4]** 82/7 86/22
90/22 98/23
**seemed [1]** 108/4
**seems [6]** 15/17 89/22
95/19 96/13 98/20
99/10
**seen [3]** 8/22 12/15
60/16
**sees [4]** 17/4 35/22
48/1 48/2
**segment [1]** 23/5
**seizure [1]** 5/1
**Senate [2]** 15/1 40/6
**send [4]** 104/24 104/25
116/14 118/16
**sense [7]** 9/17 9/20
82/12 87/10 94/15
105/21 117/17
**sent [1]** 14/19
**sentence [25]** 86/18
86/18 87/8 87/9 88/6
88/23 88/24 89/2 89/5
92/14 94/1 94/3 94/7
94/19 94/23 95/11
95/13 96/8 96/14 96/16
97/3 97/13 97/20 97/24
98/3
**sentencing [2]** 63/10
75/20
**separate [3]** 26/10
52/20 90/18
**separately [4]** 11/9
26/9 79/8 79/15
**Sergeant [9]** 17/14
17/25 17/25 19/22
33/14 38/21 92/25 93/4
96/22
**series [1]** 118/21
**serious [28]** 9/1 20/1
34/23 35/11 35/12 36/1
39/1 47/12 74/21 75/16
75/18 75/20 79/23
80/11 80/19 80/23
81/24 81/25 82/6 82/11
82/15 93/1 94/4 97/21
101/6 101/8 113/4
113/5
**seriously [1]** 73/1
**Service [11]** 20/8 20/8
20/12 23/13 23/16
33/22 40/6 78/24 79/25
103/25 107/5
**session [4]** 24/5 24/11
24/18 33/21
**set [4]** 100/23 102/12
104/21 118/2
**settled [1]** 40/12
**several [10]** 28/13
28/14 41/5 42/12 49/16
49/17 98/17 103/15
103/20 104/4
**severed [1]** 98/2
**severity [2]** 94/8 97/23
**shall [1]** 113/3
**shape [1]** 26/5
**share [3]** 57/23 83/5

**share...** [1] 95/21
**shared** [1] 57/23
**she** [19] 6/13 6/13 6/14
  6/16 7/15 12/9 12/10
  13/20 15/15 33/23 36/7
  36/8 61/10 61/11 95/23
  96/4 97/8 118/6 118/8
**she'd** [1] 118/7
**she's** [2] 15/16 55/24
**shield** [2] 7/7 43/21
**shields** [1] 7/10
**shoehorn** [1] 115/10
  115/19
**shoehorning** [1] 116/8
**shoots** [1] 113/18
**short** [1] 86/14
**shortest** [2] 41/5 41/6
**shorthand** [1] 2/22
**should** [31] 5/9 10/9
  10/10 10/12 16/4 18/5
  18/18 19/4 21/2 21/22
  45/4 53/17 53/20 54/15
  54/22 55/8 55/22 56/14
  63/10 68/12 82/23
  84/23 88/14 95/13
  98/15 98/20 99/17
  105/15 107/14 110/17
  113/8
**shouldn't** [1] 37/10
**shoving** [1] 100/5
**show** [11] 14/17 15/1
  24/23 34/25 43/7 50/18
  50/19 87/25 89/6 96/24
  100/6
**showing** [2] 13/9
  106/10
**shown** [4] 10/3 20/10
  27/9 40/22
**shows** [5] 12/12 25/25
  43/14 51/24 60/20
**side** [4] 35/1 35/3 38/7
  46/14
**sign** [2] 77/19 78/6
**significant** [9] 19/14
  20/25 38/25 46/16 80/9
  80/19 80/23 81/19 93/1
**significantly** [2] 81/20
  82/3
**signs** [2] 32/25 41/11
**silent** [1] 25/5
**similar** [5] 8/21 44/18
  69/1 89/3 106/13
**similarly** [1] 7/9
**simple** [2] 78/4 112/15
**simply** [6] 7/17 8/9
  9/10 18/4 20/17 108/18
**since** [3] 10/3 65/19
  68/3
**sitting** [2] 15/2 66/2
**situation** [6] 30/2 72/23
  93/5 114/11 116/1
  118/6
**size** [1] 83/11
**skin** [1] 76/16
**skull** [1] 17/23
**sliding** [1] 48/12
**slight** [1] 101/19

**slightly** [1] 4/9
**so** [214]
**social** [1] 14/17
**solve** [1] 87/1
**some** [46] 8/9 12/21
  13/13 15/6 16/10 30/3
  30/4 30/17 33/13 34/8
  34/9 37/22 39/7 45/12
  63/7 64/10 67/6 67/10
  70/1 70/3 80/8 80/15
  80/22 82/20 82/21 83/1
  83/9 83/24 84/2 84/5
  84/14 86/20 88/2 89/7
  89/10 90/13 90/15
  92/24 96/18 96/22
  98/14 102/13 105/25
  112/10 113/14 117/13
**somebody** [3] 32/4
  76/15 76/21
**somehow** [6] 35/20
  37/21 100/6 106/18
  114/6 115/12
**someone** [14] 13/3
  13/10 26/18 40/25 46/8
  46/10 46/15 46/19
  46/22 72/25 86/6 93/21
  110/10 113/4
**something** [30] 20/18
  26/11 26/22 27/11
  28/18 30/7 31/2 35/21
  37/4 63/2 64/23 65/5
  66/15 66/21 66/25
  68/16 70/6 74/3 75/25
  76/2 76/19 80/14 80/18
  90/8 94/20 96/23 98/2
  100/3 103/24 117/16
**sometime** [1] 118/16
**sometimes** [1] 21/13
**somewhat** [1] 72/20
**somewhere** [2] 21/10
  104/15
**soon** [4] 8/3 8/7 43/23
  119/4
**sorry** [14] 40/15 45/4
  45/19 49/1 52/13 80/10
  85/13 87/11 87/21
  88/25 91/15 109/11
  115/17 116/23
**sort** [9] 10/16 12/25
  24/25 24/25 26/5 37/22
  70/17 84/13 106/19
**sought** [6] 37/25 90/9
  92/6 92/18 92/20 97/6
**sources** [2] 92/15 96/4
**space** [1] 38/5
**speak** [3] 54/14 102/2
  117/21
**speaks** [1] 7/5
**special** [1] 83/14
**specific** [8] 26/14
  27/19 30/24 39/5 46/25
  73/3 74/7 84/11
**specifically** [10] 7/4
  10/9 24/16 40/9 40/21
  42/11 43/19 44/13
  83/18 96/15
**speech** [3] 9/8 42/1
  45/22

**speed** [1] 59/16
**spelled** [1] 8/2
**spells** [1] 104/6
**spent** [1] 83/9
**spray** [1] 95/24
**sprayed** [1] 95/24
**sprays** [1] 28/2
**spread** [1] 38/6
**Spring** [1] 1/18
**squirming** [1] 36/23
**stabs** [1] 113/17
**Stacy** [5] 2/18 2/20
  120/3 120/8 120/9
**stairs** [1] 35/7 35/9
  46/19 47/13 47/17
  47/19 47/20
**stamp** [1] 59/1
**stand** [3] 30/8 54/11
  84/20
**standard** [24] 6/24
  9/13 10/13 10/14 15/8
  18/22 19/15 21/1 32/13
  71/23 72/5 72/12 72/13
  74/11 77/7 83/12 86/10
  102/13 102/21 104/9
  107/8 113/9 114/1
  116/8
**standards** [1] 115/10
**standing** [8] 15/3 24/23
  24/24 28/20 30/11
  30/14 30/17 115/12
**Stanley** [1] 2/2
**Staples** [3] 78/18 79/7
  79/7
**start** [13] 10/2 10/6
  10/16 29/13 52/15 54/9
  57/5 68/10 68/12 68/22
  116/23 117/20 117/24
**started** [1] 33/11
**starting** [1] 43/20
**starts** [1] 87/25
**state** [7] 44/14 89/5
  94/22 102/20 105/24
  106/12 109/21
**state's** [1] 44/17
**stated** [1] 37/13
**statement** [11] 41/25
  62/10 84/4 84/14 84/22
  88/15 88/20 93/11
  93/13 94/11 110/4
**statements** [4] 41/16
  45/21 56/8 63/8
**STATES** [15] 1/1 1/2
  1/11 1/14 4/3 5/14
  10/18 32/19 36/21
  40/16 42/6 42/9 44/16
  61/24 83/18
**stating** [1] 90/4
**statute** [44] 11/16
  37/11 37/18 37/23 49/7
  49/9 71/9 71/14 72/6
  72/13 72/15 75/19
  76/10 77/24 79/3 79/12
  81/15 82/3 95/8 98/15
  99/12 99/17 100/2
  100/3 103/15 103/20
  103/23 104/9 104/12
  105/13 105/19 108/16

**106/8 117/8 117/8** 117/6
  112/2 112/3 112/25
  113/5 113/8 114/15
  115/20 115/21 116/9
**statutes** [6] 49/9 49/10
  78/20 106/7 106/13
  110/16
**statutorily** [1] 42/8
**statutory** [4] 19/3
  20/22 21/3 82/12
**stayed** [2] 41/4 43/14
**stays** [2] 42/25 43/4
**steal** [2] 14/23 41/23
**stenotype** [1] 2/22
**step** [2] 55/19 104/9
**STEPHEN** [3] 1/7 2/14
  25/11
**steps** [2] 47/4 47/15
**stick** [1] 72/16
**still** [7] 12/12 37/4
  39/17 47/8 47/9 101/17
  109/8
**stipulate** [1] 5/3
**stipulated** [2] 5/1 23/17
**stipulating** [1] 4/25
**stipulation** [2] 5/12
  118/22
**stole** [1] 42/14
**stood** [1] 75/12
**stop** [8] 8/17 15/14
  28/23 31/2 41/22 44/3
  60/19 109/1
**stopping** [1] 59/19
**straight** [1] 107/9
**straightforward** [1]
  96/14
**straightforwardly** [1]
  98/21
**strange** [1] 99/2
**Street** [5] 1/15 1/18
  1/21 2/3 2/9
**stress** [1] 96/22
**stressful** [2] 6/17 47/16
**stricken** [2] 69/24
  88/14
**strict** [1] 37/13
**strike** [6] 70/12 73/3
  87/9 88/3 89/1 94/17
**striking** [4] 86/18 86/24
  88/11 88/23
**Strohecker** [3] 8/2 8/5
  8/8
**strong** [2] 47/1 48/9
**stronger** [3] 51/2 72/7
  106/14
**struck** [2] 36/11 99/6
**struggle** [1] 40/23
**stuck** [3] 8/24 66/18
  66/21
**stumbled** [1] 35/6
**subcaption** [1] 83/18
**subject** [1] 112/15
**submit** [11] 6/22 6/25
  9/5 30/19 30/22 32/9
  61/15 65/2 65/5 75/23
  80/2
**submitted** [3] 10/20
  62/15 67/25

**subsections** [1] 112/10
**substance** [1] 61/10
**substantially** [1] 81/18
**substantive** [2] 69/21
  116/2
**substantively** [2] 73/19
  85/24
**successfully** [1]
  108/22
**such** [20] 4/18 19/25
  27/16 34/17 37/19
  38/20 44/24 47/2 47/13
  49/8 80/4 81/24 81/25
  82/14 94/21 94/22
  95/15 100/16 101/11
  106/13
**suffered** [7] 6/13 36/7
  92/25 94/16 95/23 96/5
  97/11
**sufficed** [1] 94/16
**suffices** [1] 94/18
**sufficiency** [1] 67/9
**sufficient** [15] 32/14
  37/14 40/1 71/24 74/1
  74/13 93/22 96/25
  98/19 107/10 109/16
  111/25 116/4 116/6
  116/7
**sufficiently** [3] 12/16
  15/8 112/1
**suggest** [1] 37/18
**suggested** [2] 82/13
  89/25
**suggesting** [1] 97/10
**suggestion** [1] 114/15
**suggests** [1] 36/14
**Suite** [2] 1/15 2/9
**sum** [1] 61/10
**summarize** [1] 22/3
**summations** [1] 15/11
**Superior** [1] 85/21
**superseding** [1]
  112/12
**Supp** [1] 37/6
**supper** [1] 8/8
**supplement** [1] 77/14
**support** [3] 18/12 32/9
  78/14
**supported** [2] 33/5
  34/4
**supportive** [1] 107/7
**suppose** [1] 84/19
**supposed** [2] 40/24
  84/19
**supposes** [1] 112/14
**Supreme** [11] 20/14
  69/16 71/13 71/16
  71/22 78/13 79/9 84/15
  98/22 105/17 113/16
**sure** [27] 6/1 9/15 14/8
  23/14 28/16 28/17 32/4
  45/3 46/1 52/17 53/7
  54/4 56/10 57/21 61/2
  63/24 65/19 65/24
  68/12 87/4 104/19
  105/2 105/8 110/17
  116/25 119/2 119/9
**surround** [1] 42/22

**S**

surrounding [4] 39/25 40/13 40/17 84/3
survive [1] 16/8
sustain [5] 18/18 32/14 40/2 45/1 62/21
sustained [1] 38/25
sustains [1] 61/8
swelling [1] 36/12
symptoms [2] 36/9 96/24

**T**

take [18] 11/19 14/12 19/17 45/20 52/2 52/6 54/11 57/25 65/8 72/20 81/7 82/24 83/12 98/5 110/10 110/14 117/2 118/8
taken [4] 12/12 52/12 67/17 98/18
takes [3] 12/1 81/5 81/9
taking [5] 18/23 22/8 32/18 74/5 104/8
talk [9] 28/23 54/13 54/21 55/7 55/21 56/13 105/17 106/8 115/22
talked [7] 27/4 28/5 57/3 65/12 72/3 115/24 118/4
talking [15] 15/14 18/3 37/17 39/18 78/23 81/15 81/16 90/21 104/16 110/7 110/8 110/23 110/24 112/11 116/11
talks [5] 33/23 72/13 75/19 76/25 115/21
tampering [1] 76/10
tarp [1] 25/19
TATE [1] 1/6
tear [2] 43/2 43/11
tedious [1] 117/14
tell [7] 6/10 7/16 28/13 28/23 29/3 53/24 90/20
telling [6] 33/1 33/10 41/16 43/2 44/20 54/15
tells [3] 53/24 66/24 105/15
temporal [2] 90/10 90/15
temporary [11] 76/18 76/18 76/25 77/2 81/21 81/23 82/7 82/8 90/5 93/16 93/21
Ten [1] 52/11
Ten minutes [1] 52/11
tend [1] 85/18
term [4] 70/22 79/10 92/4 106/7
terms [11] 14/17 73/3 79/2 86/1 90/11 94/10 97/22 97/24 97/25 112/3 114/17
Terrace [3] 8/25 42/24 43/11
testified [6] 6/9 6/11

47/18
testify [31] 4/19 52/8 52/17 53/8 53/8 53/9 53/13 53/15 53/17 53/25 53/25 54/2 54/5 54/6 54/8 54/18 54/22 54/25 55/2 55/8 55/11 55/22 55/22 55/25 56/2 56/11 56/14 56/17 57/1 57/2 57/2
testifying [3] 54/10 54/15 56/9
testimony [10] 12/8 13/1 13/3 17/10 17/12 17/18 18/23 33/21 35/5 40/7
text [14] 8/1 28/21 30/23 30/23 31/11 37/17 39/7 57/15 62/14 63/4 79/3 100/2 103/14 104/10
texted [2] 31/8 43/22
texts [4] 27/11 43/19 43/20 63/2
than [29] 14/9 16/15 20/24 30/14 30/16 35/2 48/13 51/12 59/8 62/23 63/23 64/16 71/12 72/8 75/17 76/22 80/19 81/19 81/20 82/8 88/16 99/17 100/13 106/14 107/25 110/21 112/3 113/3 115/22
Thank [23] 10/5 16/16 21/24 25/10 31/17 32/11 48/24 49/22 55/17 56/21 59/7 59/25 60/1 63/13 66/7 83/5 85/1 91/3 105/5 112/5 115/16 118/18 119/10
Thanks [2] 67/16 119/12
that [818]
that's [100] 4/21 16/24 17/5 19/13 20/2 21/5 25/22 26/6 27/8 31/24 32/6 33/1 33/4 33/22 40/23 45/9 46/3 46/13 47/9 48/13 49/3 49/6 49/11 50/5 53/19 55/3 55/4 55/13 56/1 59/9 60/19 60/22 61/14 62/6 65/14 66/6 69/15 70/10 71/25 72/4 74/3 74/5 74/12 76/3 77/2 77/18 77/19 77/25 78/3 78/7 78/17 81/4 81/13 82/7 85/19 86/9 87/14 87/14 89/12 89/15 91/19 92/8 92/9 92/18 93/12 93/18 94/4 94/18 98/11 98/16 98/19 99/1 99/15 99/25 100/18 101/9 101/13 101/20 101/20 101/23 104/2 104/21 105/21 105/25 106/20 106/21 107/4 107/4 108/15

109/7 109/13 109/18 111/10 112/16 114/1 114/4 115/4 116/8 117/23 119/4
their [41] 9/18 11/1 14/8 18/9 21/17 34/1 34/20 37/24 39/24 40/18 41/17 42/10 42/11 45/8 46/15 46/21 48/12 52/8 52/8 52/9 52/17 53/16 53/19 57/3 57/4 69/12 69/23 70/3 72/2 73/5 73/12 73/20 75/15 76/11 87/7 87/17 100/12 101/25 108/17 112/15 116/2
their's [1] 69/12
theirs [2] 69/3 76/9
them [37] 4/15 4/23 12/10 14/22 19/23 21/2 24/4 33/1 33/18 35/16 35/17 38/20 41/4 41/16 43/6 44/20 47/4 47/5 48/13 52/15 64/17 68/9 71/5 73/19 74/4 74/4 78/6 78/9 84/16 90/19 99/6 99/7 100/7 106/20 106/22 111/2 113/18
themselves [1] 40/22
then [61] 5/15 7/18 14/23 15/13 17/19 21/11 22/24 24/14 24/18 32/8 33/15 33/18 35/8 35/17 35/17 36/12 41/16 42/19 43/24 44/21 48/1 50/11 52/1 52/7 52/9 52/19 57/22 58/7 61/8 63/3 63/11 64/22 66/25 73/15 77/9 81/10 82/1 82/5 82/16 82/23 83/4 90/1 90/19 94/9 94/21 95/3 98/12 105/3 105/14 106/1 106/12 108/11 108/21 110/16 110/17 110/17 111/17 112/16 112/17 114/9 116/17
theoretical [1] 75/22
theoretically [2] 19/19 75/16
theories [1] 113/25
theory [15] 11/11 12/3 39/9 39/9 49/5 49/12 49/20 83/19 88/10 93/2 96/16 99/8 101/10 111/14 115/12
therapy [1] 36/8
there [100] 6/6 6/11 6/16 6/18 7/13 9/3 10/23 12/13 12/21 13/9 13/13 13/17 14/22 15/6 22/15 23/18 24/3 24/9 24/25 25/23 27/3 27/8 27/15 27/25 27/25 28/6 28/24 29/1 29/13 29/16 30/4 30/11 30/14 30/17 31/3 32/14 32/22 41/6 42/25 43/1 43/6 43/14

43/15 44/7 45/6 46/19 47/13 47/21 47/23 47/24 48/11 49/7 49/8 49/16 49/17 51/19 52/5 52/10 52/17 52/19 60/19 61/14 61/19 62/6 62/10 62/12 62/24 63/3 63/10 64/9 64/14 64/16 66/12 67/6 67/9 67/10 67/13 68/14 68/19 73/25 77/16 79/17 82/20 83/14 87/23 88/22 92/24 96/25 98/17 103/2 105/15 109/1 109/8 112/17 112/20 113/11 113/14 113/23 114/5 114/8 116/19
there's [43] 8/23 10/22 14/16 15/2 18/16 23/23 25/4 26/13 26/19 27/5 27/14 28/8 29/5 29/6 34/6 34/8 37/18 39/6 42/2 42/7 44/11 45/19 47/4 50/3 57/15 68/17 68/18 68/18 68/19 73/20 79/8 80/9 89/17 90/10 90/15 93/25 100/2 102/17 106/16 112/24 113/15 116/4 116/21
thereafter [1] 24/8
thereto [1] 20/5
these [43] 5/9 12/17 14/11 16/1 20/21 32/20 32/21 33/7 34/2 35/3 35/16 37/20 38/4 38/6 38/7 38/8 38/8 38/19 38/20 40/2 41/4 43/7 43/13 44/24 45/6 48/5 48/6 50/2 62/4 62/22 69/18 93/9 93/19 94/14 95/22 100/22 108/19 110/16 111/1 114/18 114/25 115/7 115/10
they [121]
they're [26] 14/15 29/3 38/13 39/12 42/13 42/14 47/7 47/24 47/25 48/12 65/2 67/6 70/15 73/12 78/4 78/5 78/5 78/7 78/9 78/12 79/24 80/1 107/25 108/21 114/20 114/20
they've [8] 12/15 57/2 57/3 70/2 78/5 78/10 108/17 108/21
thing [9] 20/6 43/20 49/4 64/4 77/9 78/23 79/10 85/24 110/19
things [17] 6/12 6/17 8/7 27/13 31/12 58/2 64/10 64/18 66/22 78/17 82/13 91/11 95/11 95/25 105/9 106/14 115/23
think [233]
thinking [5] 28/23

117/17 78/4 90/25 114/19
third [1] 27/12
third-party [1] 27/12
Thirty [1] 117/15
Thirty-five [1] 117/15
this [182]
those [47] 9/6 9/12 11/15 12/1 15/22 16/9 17/12 20/7 20/20 21/3 21/16 22/6 22/14 23/9 23/10 23/25 24/6 24/10 24/13 25/17 27/21 31/15 36/17 44/17 47/19 48/21 48/21 49/10 63/7 68/21 75/2 78/9 82/18 82/19 86/22 89/22 94/1 99/7 103/4 106/14 107/1 107/13 111/5 112/2 112/22 112/22 115/8
though [8] 10/16 18/14 19/4 30/3 37/1 46/13 83/12 101/17
thought [5] 38/20 49/18 65/11 67/6 101/9
thoughts [1] 65/15
thread [1] 62/14
threat [1] 26/18
threaten [1] 26/20
three [11] 12/13 26/2 38/6 72/25 73/12 74/25 75/23 99/5 100/4 102/23 112/9
throng [1] 9/10
through [26] 5/15 8/1 8/13 20/6 20/25 21/2 21/19 27/1 32/8 32/19 36/8 41/14 41/18 41/22 42/10 42/13 42/23 43/11 43/21 45/12 70/4 77/11 96/3 103/21 104/3 119/4
throughout [1] 21/7
thrown [1] 28/1
thumb [2] 36/25 37/4
Thursday [9] 65/12 65/19 66/24 67/1 116/18 116/24 117/1 117/25 118/13
ties [1] 35/14
Tim [1] 35/7
time [28] 10/4 10/24 14/15 22/14 22/15 27/16 29/7 30/18 33/7 33/7 38/13 39/11 41/7 42/24 45/20 50/5 54/14 54/21 55/7 55/21 56/13 57/17 59/1 59/7 64/11 66/20 83/9 115/24
times [4] 42/12 82/6 103/15 103/20
today [4] 65/17 66/14 75/12 119/3
Todd [1] 2/8
together [7] 17/3 17/5 33/18 37/24 38/9 50/4 65/1

**T**

**told [2]** 65/16 118/8
**tomorrow [5]** 64/20 65/19 66/8 66/17 118/16
**too [11]** 14/6 14/6 14/6 17/15 17/25 29/19 39/12 43/15 89/2 91/11 111/6
**took [6]** 14/3 39/19 44/12 71/18 101/1 102/10
**tool [1]** 25/18
**top [4]** 30/17 38/18 43/1 90/24
**tore [1]** 36/24
**totally [3]** 78/9 95/8 104/4
**touch [1]** 67/19
**touching [2]** 23/3 113/7
**toward [3]** 41/16 100/5 110/9
**towards [6]** 17/23 17/24 19/22 41/10 46/22 47/15
**track [1]** 119/5
**trail [1]** 90/22
**training [1]** 47/16
**traitor [1]** 27/13
**trampled [2]** 38/21 47/20
**transcript [5]** 1/10 2/22 23/16 33/22 40/9
**transcription [2]** 2/22 120/4
**transcripts [1]** 40/5
**transmitted [1]** 13/2
**traumatic [1]** 73/18
**treat [1]** 110/16
**treatments [1]** 36/8
**trespassing [2]** 78/5 78/6
**trial [22]** 1/10 12/8 15/5 18/21 36/20 50/12 52/4 53/7 57/9 64/4 64/12 66/10 69/2 69/8 70/3 72/3 74/16 76/14 77/14 87/16 91/20 114/4
**trials [1]** 118/7
**tried [5]** 43/5 44/2 48/23 118/6 119/5
**trier [1]** 96/25
**trip [1]** 46/20
**true [3]** 48/5 49/6 62/11
**Trump [2]** 9/7 9/8
**Trump's [1]** 42/1
**truth [4]** 61/16 61/18 62/11 62/25
**try [5]** 14/17 21/15 43/12 58/3 112/5
**trying [15]** 21/17 21/18 21/18 36/23 37/2 42/15 42/21 57/16 57/22 79/24 79/25 80/19 88/19 115/19 116/11
**tunnel [1]** 43/5
**turn [1]** 117/21

**turned [3]** 9/2 13/12 17/23
**Turning [1]** 7/18
**tweaks [1]** 89/22
**twisted [1]** 37/4
**two [26]** 7/25 12/9 12/9 19/21 24/4 25/15 31/9 38/4 38/8 38/17 52/14 59/8 64/18 73/4 76/16 77/17 82/5 99/5 99/7 107/1 110/16 114/9 114/12 116/4 118/7 118/8
**two hours [1]** 31/9
**two minutes [1]** 59/8
**type [12]** 73/17 78/23 82/3 83/24 84/2 90/9 92/5 92/19 94/3 95/4 95/9 97/6
**typical [2]** 76/21 102/12
**typically [2]** 72/6 76/22

**U**

**U.S [10]** 1/17 1/21 2/19 37/6 40/6 45/24 72/1 100/25 104/15 106/5
**U.S.C [2]** 23/10 24/3
**ultimate [1]** 115/25
**unable [1]** 100/6
**unaware [1]** 38/10
**unbeknownst [1]** 78/9
**unborn [2]** 61/14 62/6
**unclear [1]** 108/24
**unconscious [1]** 46/15
**uncontroversial [1]** 86/22
**undeniable [1]** 12/18
**under [27]** 4/20 6/3 10/13 10/17 11/25 11/25 15/8 20/7 30/21 31/5 31/15 32/13 37/3 37/13 45/5 49/20 73/15 76/17 77/11 88/10 94/14 96/25 99/8 99/11 110/18 113/1 115/12
**undercover [1]** 41/25
**underlying [1]** 98/13
**underneath [1]** 47/19
**underscores [1]** 115/9
**understand [23]** 52/17 54/5 54/24 55/1 55/15 56/4 56/10 56/11 62/7 62/13 63/9 72/21 75/4 80/20 82/1 90/3 90/6 95/2 95/14 101/23 104/23 112/9 118/10
**understanding [4]** 52/8 61/4 68/2 80/22
**understands [1]** 100/22
**understood [5]** 7/23 38/24 53/7 56/7 65/9
**undertaken [1]** 73/13
**unfairly [1]** 91/23
**unit [1]** 17/3
**UNITED [15]** 1/1 1/2 1/11 1/14 4/3 5/14

70/18 32/19 38/21 40/16 42/6 42/9 44/16 61/24 83/18
**unjustified [1]** 115/11
**unless [8]** 30/12 58/7 66/24 73/20 80/1 86/23 96/11 103/7
**unlike [1]** 36/14
**unnecessary [1]** 95/19
**until [8]** 11/15 26/9 29/14 30/4 35/6 43/6 107/22 117/22
**unwieldy [2]** 38/3 38/4
**up [42]** 7/4 13/7 13/13 14/25 17/25 21/17 25/21 25/24 25/25 26/1 26/8 30/5 33/11 36/21 41/12 41/19 42/25 46/18 46/25 47/19 48/2 48/24 55/4 58/3 58/23 65/13 65/22 69/5 69/6 73/1 75/12 82/14 87/19 91/8 91/11 91/12 98/7 109/8 112/17 114/9 117/25 118/23
**upheld [1]** 37/4
**uphold [1]** 20/20
**upholds [1]** 20/4
**upon [2]** 26/18 28/3
**upper [3]** 42/24 43/11 51/25
**upset [1]** 44/6
**upward [1]** 24/25
**us [9]** 31/19 38/21 58/8 64/19 65/11 86/15 90/21 96/3 100/20
**USA [2]** 30/16 30/16
**use [34]** 4/15 7/2 10/3 16/2 16/7 27/17 27/20 27/22 39/1 45/22 46/13 46/18 47/21 64/11 72/10 83/22 84/12 84/24 91/18 91/23 101/13 101/18 101/21 103/21 108/10 108/14 108/22 109/15 110/8 110/19 111/5 111/20 116/20 118/15
**used [58]** 6/22 6/24 7/1 7/11 7/13 15/24 16/1 19/11 19/13 19/15 19/25 26/15 27/4 27/25 34/24 35/10 35/13 35/14 35/16 39/9 39/10 46/11 48/7 73/17 74/22 74/23 75/14 75/15 75/17 76/8 80/25 83/15 83/25 84/2 84/11 85/19 86/3 86/4 86/7 86/9 100/16 101/7 101/11 102/24 108/8 108/11 108/18 109/4 109/17 109/20 109/21 109/22 110/2 110/13 111/17 111/21 111/22 113/16 113/2

**using [17]** 20/22 22/19 23/5 25/17 28/2 38/12 46/22 73/12 75/19 99/8 101/20 106/7 107/25 108/3 108/20 109/6 115/9
**usually [2]** 85/17 85/17

**V**

**VA [1]** 2/10
**vacating [1]** 84/16
**vague [1]** 97/24
**verb [1]** 18/2
**verbs [3]** 36/17 86/22 115/22
**verdict [3]** 64/23 118/2 118/13
**verify [1]** 119/4
**version [6]** 90/20 104/24 104/25 105/1 105/4 116/15
**versus [7]** 4/3 32/19 36/21 40/16 98/25 100/13 101/23
**vertical [1]** 13/7
**very [22]** 17/10 19/15 21/10 22/12 22/17 24/23 24/24 28/5 42/17 46/24 49/4 65/4 67/4 71/12 75/19 76/13 79/23 90/3 100/5 101/17 110/19 119/5
**Vice [11]** 23/20 27/5 27/6 27/10 27/15 30/6 33/4 33/24 78/8 79/17 105/11
**victim [4]** 18/4 45/9 112/20 113/17
**video [12]** 7/5 7/17 13/18 17/15 26/12 50/16 51/9 59/10 59/14 59/18 60/18 117/13
**videos [6]** 12/16 13/9 25/24 27/11 34/25 60/17
**view [2]** 99/23 102/7
**violation [1]** 10/18
**violence [5]** 9/1 15/21 16/5 25/4 43/18
**violent [3]** 15/4 40/22 76/15
**violently [1]** 43/25
**Virginia [1]** 10/21
**virtually [1]** 15/15
**virtue [2]** 82/2 103/25
**visiting [3]** 20/12 23/21 33/4
**voice [2]** 28/25 29/1
**voluntarily [1]** 57/4
**volunteer [1]** 119/11
**vote [4]** 8/11 25/7 42/15 44/14
**votes [1]** 44/17
**vs [1]** 1/4

**W**

**wailing [1]** 83/11
**waist [1]** 48/12

**wait [3]** 69/4 87/11 87/19
**waiting [1]** 52/14
**walk [1]** 78/6
**walked [1]** 41/10
**walkway [1]** 38/18
**want [52]** 4/15 9/19 10/6 14/6 16/14 20/6 21/4 29/18 31/2 49/23 50/1 52/20 53/25 54/2 54/4 54/9 54/25 55/11 55/16 55/18 55/21 56/10 56/11 57/6 57/25 58/2 62/9 68/5 82/21 82/22 84/19 85/2 85/4 88/7 91/5 92/11 92/12 92/13 97/13 98/5 102/1 105/6 106/1 107/13 107/16 112/24 114/24 116/20 117/25 117/25 118/9 118/12
**wanted [17]** 10/16 21/10 31/14 31/21 44/5 46/6 51/20 53/7 56/5 63/11 64/4 66/1 67/19 77/10 82/19 112/6 119/1
**wanting [1]** 28/23
**wants [6]** 14/8 49/1 64/23 67/21 68/10 88/22
**war [3]** 61/13 62/4 62/5
**was [157]**
**Washington [7]** 1/8 1/15 2/3 2/6 2/15 2/20 14/21
**wasn't [15]** 13/13 21/16 21/17 23/14 26/8 30/4 30/15 30/15 30/16 30/16 37/1 37/3 45/15 47/23 71/10
**watched [1]** 9/7
**waving [4]** 30/15 33/9 41/12 45/15
**way [35]** 13/3 16/25 19/20 21/12 21/17 21/19 23/6 26/20 32/8 36/2 39/10 42/24 43/3 68/8 73/10 73/22 82/14 82/25 86/20 89/10 97/14 97/20 99/25 100/1 101/11 101/13 101/19 101/21 103/16 104/3 108/12 108/22 109/9 109/14 115/11
**ways [3]** 13/5 38/16 94/24
**we [191]**
**we'd [2]** 19/4 102/8
**we'll [8]** 5/3 50/18 52/9 57/5 58/10 66/25 98/12 116/17
**we're [29]** 4/12 41/2 51/3 52/14 57/9 59/15 64/3 65/18 66/2 66/2 66/21 67/14 76/7 78/23 81/15 81/16 89/23 93/3 93/4 93/5 102/24

**W**

we're... [8] 104/15 104/16 110/16 110/23 110/24 115/5 115/19 116/8

we've [8] 5/1 60/16 68/14 89/25 94/14 98/8 115/6 116/16

weapon [58] 6/21 6/23 15/22 15/24 16/2 16/8 19/12 19/14 20/5 20/23 22/20 25/17 26/16 27/3 27/18 27/20 27/22 28/2 34/20 34/22 36/4 39/1 39/10 46/6 46/12 46/23 47/11 47/21 48/10 68/20 73/17 74/10 74/15 74/21 75/19 78/11 83/15 83/22 83/25 84/2 84/5 84/10 84/12 84/24 86/3 86/4 86/4 86/8 100/10 101/5 107/19 107/25 108/7 109/15 111/17 111/18 111/20 113/3

weapons [2] 27/25 28/1

wearing [4] 13/11 17/22 43/17 43/17

weave [1] 41/22

weaved [1] 41/18

Wednesday [1] 66/2

weeks [2] 101/1 118/9

weighing [1] 96/17

weight [1] 28/18

well [32] 5/8 8/25 10/20 15/11 15/13 35/17 35/23 39/13 40/7 40/12 48/3 48/21 49/18 49/22 59/24 60/23 61/20 65/10 68/6 73/18 75/7 82/4 86/5 93/24 99/25 104/7 107/12 108/6 108/25 111/15 111/24 113/3

went [10] 13/6 31/19 33/13 35/6 41/25 42/2 42/3 42/5 43/24 48/23

were [70] 5/2 6/12 6/12 6/16 7/14 8/1 8/17 9/3 10/25 13/4 13/9 13/10 16/1 17/5 17/12 17/15 17/16 17/17 17/17 18/17 19/21 22/14 23/18 23/22 26/21 27/12 27/25 27/25 30/4 30/5 31/9 33/25 36/22 38/4 38/6 38/7 38/7 38/10 39/14 39/16 40/22 43/6 46/9 47/13 47/14 47/20 48/6 56/8 61/14 62/6 63/1 64/6 65/11 66/14 67/6 67/7 71/6 71/20 80/3 80/4 82/18 92/12 96/22 96/25 99/8 101/10 108/4 109/13 109/21 111/2

Weren't [5] 34/2 46/19 110/25

West [4] 8/25 17/2 41/5 43/11

whack [1] 46/10

what [128]

what's [14] 34/19 35/22 35/24 40/11 41/1 48/3 74/18 85/11 86/13 88/16 88/17 94/3 95/1 102/18

whatever [5] 11/12 30/17 73/17 77/19 97/4

whatsoever [4] 20/16 24/10 25/5 25/19

when [20] 8/15 9/3 13/6 17/4 19/20 24/5 26/4 30/22 33/16 42/24 52/7 65/21 72/13 72/22 84/20 91/25 92/15 113/15 113/21 115/23

Whenever [1] 10/1

where [62] 11/20 21/10 23/3 23/20 26/5 26/6 26/7 26/21 27/9 28/20 28/20 30/11 36/21 40/21 40/23 48/11 48/11 51/25 63/2 67/5 67/7 67/10 67/22 69/11 71/8 71/9 71/22 72/24 77/19 79/14 80/25 81/4 83/15 84/10 86/3 87/12 89/4 90/23 91/10 92/16 93/21 97/16 98/6 99/1 99/4 99/5 100/11 103/16 103/21 104/8 104/10 104/11 104/13 104/15 105/12 107/4 109/6 109/13 109/16 112/18 113/11 118/7

whereas [1] 17/2

whether [28] 6/20 6/24 7/6 7/16 8/5 19/11 31/23 34/19 37/16 53/17 53/18 53/18 54/15 54/21 55/8 55/21 56/14 64/19 64/22 66/2 71/23 86/7 90/15 92/25 98/14 98/24 106/3 116/21

which [82] 4/17 5/7 6/17 7/13 9/15 10/14 12/11 16/1 17/7 17/24 18/2 18/22 19/5 19/15 19/22 20/7 21/1 22/6 23/20 28/11 30/25 31/16 35/14 35/15 36/4 38/23 44/11 48/7 49/7 49/8 50/15 51/24 58/22 59/2 62/1 62/24 69/16 69/23 70/6 71/6 72/14 72/17 73/3 75/10 75/13 76/10 77/6 77/11 77/25 78/15 78/17 78/18 79/7 83/19 87/18 88/2 89/2 90/2 90/9 90/21 92/5 92/17 92/20 94/24 96/25 97/6 97/8 98/23

while [3] 34/16 99/6 113/17

White [1] 42/4

who [21] 8/5 9/6 9/10 13/1 13/10 17/10 19/21 29/7 30/5 31/8 31/9 33/24 40/25 41/6 50/21 67/21 68/10 72/21 112/13 113/4 114/12

who's [4] 25/13 30/13 30/14 69/19

who've [1] 75/1

whoever [3] 29/12 49/10 113/2

whole [9] 30/18 41/22 43/20 45/15 62/2 88/5 88/13 90/20 94/1

wholly [3] 8/3 107/7 107/14

whom [2] 107/2

why [9] 4/21 61/14 61/18 62/6 62/10 62/11 62/24 63/3 95/25

wife [2] 15/14 84/19

will [31] 7/25 8/12 12/2 13/19 15/10 15/25 22/10 22/18 24/14 44/21 51/8 51/11 52/5 52/7 53/9 57/10 59/7 59/23 62/4 65/6 66/8 72/10 72/21 89/22 116/14 116/15 117/1 117/18 117/24 118/2 118/10

willing [1] 40/25

winning [1] 8/3

Wisconsin [1] 45/23

wish [2] 54/8 56/17

wishes [1] 5/22

within [6] 14/2 30/13 79/10 98/15 100/2 103/20

without [11] 10/2 15/20 51/3 52/15 54/15 77/20 79/23 80/21 102/13 103/18 108/20

witness [1] 43/4

witnesses [6] 5/22 51/13 51/14 52/5 53/6 55/25

woman [1] 118/6

women [1] 79/15

won [1] 43/23

won't [6] 5/8 6/5 58/8 65/3 67/13 111/6

wondering [2] 65/18 80/8

wood [1] 111/16

woods [3] 78/5 78/9 104/14

Woodward [16] 2/2 2/2 5/8 15/25 22/18 24/15

08/15

52/22 54/9 54/16 54/17 61/23 65/12 66/16 66/24 109/24 117/22

Woodward's [1] 4/6

word [16] 36/14 49/11 70/25 71/14 72/10 74/24 86/16 86/17 101/17 103/3 103/4 104/24 104/25 105/1 116/9 116/15

wording [1] 75/9

words [6] 29/3 42/11 94/4 103/4 105/15 110/22

work [1] 116/21

worked [3] 37/24 66/14 66/21

worn [5] 27/12 51/9 51/24 58/24 60/4

worried [1] 93/20

worship [1] 79/15

would [161]

wouldn't [7] 93/22 94/5 94/6 97/11 97/12 105/20 109/19

Wright [1] 13/6

writes [1] 61/10

written [1] 87/14

wrong [5] 87/12 87/20 89/17 93/10 95/12

**Y**

yaw [1] 13/6

yeah [9] 58/2 65/22 86/6 89/13 91/1 99/15 109/2 109/10 111/12

year [8] 75/21 76/20 77/4 78/11 81/5 81/10 112/16 112/23

years [2] 112/18 113/3

yelling [1] 42/12

yes [47] 5/13 49/20 50/9 50/23 54/12 54/17 54/19 54/23 55/1 55/3 55/9 55/14 55/17 55/23 56/3 56/6 56/12 56/15 56/18 56/20 56/24 57/7 58/23 63/15 63/18 67/18 68/1 68/15 68/24 70/14 70/20 74/14 81/1 81/13 81/13 87/19 88/7 88/9 102/1 102/2 102/16 103/13 105/7 105/8 107/20 109/22 118/17

yesterday [2] 4/6 4/24

you [225]

you'd [1] 101/24

you're [30] 4/7 4/22 4/24 5/12 10/1 18/3 30/12 38/24 65/16 73/2 75/5 77/21 78/16 78/16 79/13 79/17 80/7 80/13 87/16 87/21 90/25 91/4 93/19 93/19 93/20 93/22 97/10 108/13 114/6 114/7

you've [3] 54/4 66/16

108/15

you-all [4] 4/16 65/5 67/4 116/20

your [239]

**Z**

zero [3] 23/24 24/9 59/20

zone [1] 14/3