UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | : |
| v. | : Crim. No. 21-537 (JMC) |
| JASON BLYTHE | : |

## **(BRIEF) SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

COMES NOW Defendant, Jason Blythe, through undersigned counsel, Stephen F. Brennwald, Brennwald & Robertson, and submits the following Supplemental Memorandum in Aid of Sentencing to emphasize several arguments:

1. In its sentencing memorandum, the government repeatedly refers to Mr. Blythe in the same breath (or sentences) as the four co-defendants with whom he was tried in this case. Those repeated references could lead the Court to believe that the men knew each other before January 6, 2021, and coordinated their efforts on that date. They did not.

It is clear that Mr. Blythe and the other men did not know each other before January 6, 2021, and did not in fact ever "meet" on that date. They happened to be in the same general space at the same time for a short period of time – 15 seconds, at most.

For about five seconds, Mr. Blythe was between two of the other four men as he approached the bike racks that the other two men, and others, had already lifted off the ground. Then, he was near Mr. Randolph for about 5 to 10 seconds when he and others

tried to pull Randolph away from officer David Cruz after Randolph had climbed over the bike racks.

That is the total extent of Mr. Blythe's interaction with the other men.

2. The guideline enhancement that applies to the soft body armor that Mr. Blythe wore for protection wildly and unfairly increases his guidelines beyond those of his co-defendants (not taking into account their criminal histories), and does not merit the 34-43-month sentence increase the guidelines suggest.   This is especially true given the reason it was worn and the context (a large protest where counter-protestors were expected) in which it was used.

3.  The government's proposed sentence of 108 months is mind-boggling, given significantly lower sentences that have been imposed in cases involving much more serious conduct.

 4.  While Mr. Blythe proceeded to trial, he never denied that he was guilty of the 111(a) offense.  He merely had a disagreement about the applicability of §111(b) to his conduct.  Importantly, he always admitted that he pushed against bike racks that day – the exact conduct for which he was convicted.  He never denied that this behavior constituted "impeding" or "interfering" or "opposing" law enforcement.  He did dispute the argument that he used the bike racks in a way that was capable of causing serious or deadly injury to anyone.

5.   When undersigned counsel, in his initial sentencing memorandum, referred to Mr. Blythe as someone who was 25 at the time, but with a mental age of 14 he did not mean to imply that Mr. Blythe is not intelligent, and the choice of wording was

inaccurate. Counsel meant to explain that Mr. Blythe, while 25 years old at the time of the offense, was not as emotionally mature as someone of that age would be expected to be.

Mr. Blythe is a naturally gentle person who is very soft-spoken. He's not a "tough guy" or someone who would fight with anyone else. He's not malicious or conniving or scheming.

He was clearly caught up in the emotions of the moment at the location of the bike racks, and walked up to the raised bike racks to push them without giving much thought to the significance of his actions. In that sense, he was like a 14-year old who just acts or reacts without possessing the maturity to think one or two steps ahead to the eventual outcome of his behavior.

6. Significantly, this Court did not believe he was attempting to overthrow the government, or prevent the certification of the results of the 2020 election. He was a young kid who drove from Texas to see the former president speak and then reacted rashly for a period of a few seconds at the bike rack. Thereafter, once he was on the West side of the Capitol, he stood around for literally hours watching the events but not actively participating in them in any sort of nefarious way.

He should not have been there at all, but he was about as passive as it was possible to be during his entire time within the West terrace section of the Capitol grounds (once the bike rack incident had taken place).

Defendant thanks this Court for taking this further submission into account.

Respectfully submitted,

/s/

Stephen F. Brennwald, Esq.
Bar No. 398319
Brennwald & Robertson, LLP
922 Pennsylvania Avenue, S.E.
Washington, D.C.  20003
(301) 928-7727
(202) 544-7626 (facsimile)
E-mail:  sfbrennwald@cs.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent by ECF, this 16th day of September, 2024, to all counsel of record.

/s/

Stephen F. Brennwald