UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:21-cr-537 (JMC) |
| | ) | |
| PAUL RUSSELL JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

### MR. JOHNSON'S REPLY TO THE GOVERNMENT'S POSITION ON SENTENCING

Despite the government's assertion that Mr. Johnson played a "uniquely consequential role" in the events of January 6th, ECF No. 417 at 2, nothing distinguishes his conduct from numerous individuals who were convicted of low level felonies or misdemeanors for their presence at the Capitol that day and received non-custodial sentences, other than the 10 seconds or less that he was at the front of the crowd pushing on the bike-rack barricade. *See e.g. United States v. Gerwatoski*, 22-cr-125 (JMC) (imposing probationary sentence with 30 days of home detention, ECF where defendant yanked open doors to the Capitol that an officer had just closed, yelled "let's go" to a crowd directing others inside the building, and stayed inside the Capitol for 3 minutes in close proximity to a shooting.); *United States v. Jeffery Michael Etter*, 23-cr-95 (RBW) (imposing sentence of 3 years of probation with 400 hours of community service where defendant yelled profanities at officers, encouraged a mob entering the Capitol, spent 37 minutes inside the building, and showed a "willingness to assault officers and had to held back[.]" ECF No. 30); *United States v. Steven Billingsley*, 21-cr-519 (TFH) (imposing sentence of 2 years of probation with

1

60 hours of community service where defendant shouted at officers "we're going through that barricade," helped undo a barricade to enter the plaza, breached three barricades, and yelled, among other things, "this is our house" and "this is war," and spoke about his desire to hang two politicians.); *United States v. Jacob Weidrich* 21-cr-581 (imposing sentence of 3 years' probation with 90 days of home detention where the defendant screamed "charge" and "this is our house" among other things, yelled at police through a broken window, was one of the first in a crowd that pushed its way inside the Senate Wing doors past an officer barricade, and stole a flag from the Capitol.).

While the government tries to cast Mr. Johnson as a central figure of January 6 based on his being one of many, many people in the crowd speaking that day, the only salient fact that separates his case from all of the above examples is his choice to approach the bike rack-barricade and push on it. That is the core of the conduct for which this Court should sentence him. The government's attempt to paint Mr. Johnson, based on other actions that day, as a general leading the charge on January 6 fails because it cherry picks facts that simply do not support what the government claims, much less support a dramatic upward variance.

For example, the government posits that Mr. Johnson was "prepared" with reinforced gloves. It was January and cold out, and Mr. Johnson, an avid motorcycle rider*, see* PSR at 148, wore his motorcycle gloves. Unlike other defendants (and defendant's the government cites as comparators), Mr. Johnson did not come to the come to the Capital with any weapons or body armor. Ignoring the obvious fact that

Mr. Johnson came with none of the weapons or body armor that many other brought with them that day, the government seizes on his gloves—the gloves he had that were appropriate for January weather—to allege that he somehow came prepared for more than a rally.

Another example arises where the government states that, in response to entreaties from Mr. Johnson, "several members of the crowd can be seen moving toward the South Lawn[.]" ECF No. 417 at 15. The video (Exhibit 335), however, shows members of a sparse crowd walking in various directions; it is not clear, that *any* of the people walking in any of those directions are listening to or responding to Mr. Johnson.  Again, the government cherry picks from the fact that some people happen to be walking in the direction encouraged by Mr. Johnson to paint him as a general commanding his troops when, in fact, it does not appear that anyone was listening to him.

In turn, the cases the government relies on to support their sentencing request are inapposite.  In *United States v. Schwartz,* 21-cr-178, where the Court issued a 170-month sentence ( a variance below the recommended guideline range of 262 to 327 months), ECF No. 202 at 19, Mr. Schwartz had *38 prior convictions*, at least ten of which included convictions for assaultive conduct. ECF No. 202 at 21-22 (noting convictions for domestic violence, possessing a handgun and threatening to kill his girlfriend, assault with a deadly weapon, and battery, among others).  And, on January 6th , Mr. Schwartz committed four separate assaults ( throwing a chair at officers, and pepper spraying three different groups of officers).  ECF No. 202 at 8-11.

Mr. Schwartz's conduct on January 6th was incomparable to Mr. Johnson's, as are his personal history in characteristics. The two are not "similarly situated." ECF No. 417 at 28.

*United States v. Alberts*, 21-cr-26, is a similarly unpersuasive comparator. Mr. Alberts came to Capitol wearing metal-plated body armor, carrying a fully loaded firearm with hollow point and high-pressure rounds, as well as a gas mask and a fully loaded magazine. ECF No. 168 at 2. Mr. Alberts physically assaulted an officer with his hands, ECF No. 168 at 7, used a wooded pallet as a battering ram against officers, *id.* at 8, was the 15th person to charge up the Northwest steps where a group of individuals forced their way through a bike-rack barricade manned by officers, *id.* at 10, threw a bottle at officers, *id.* at 14, and stayed on the Capitol grounds for over 6 hours. *Id.* at 15. The 84-month sentence issued by Judge Cooper, to a man whose assaultive conduct spanned six hours, all while he carried a loaded firearm, demonstrates how unreasonable the government's 108-month sentencing request is here.

Lastly, in *United States v. Bingert*, where the Court issued a 96-month sentence, the final guideline range was from 135-168 months. ECF No. 193 at 1. What is more, unlike Mr. Johnson, Mr. Bingert had to be forcibly removed from the Capitol twice; officers removed Mr. Bingert from the Upper West Terrace after 5 p.m. and from the West Lawn after dark. ECF No. 193 at 7. And, Mr. Bingert provided uncredible testimony at trial. ECF No. 193 at 9.

Mr. Johnson is cognizant that the conduct this Court will sentence him for is serious. As laid out in his sentencing memorandum, the defense submits that Mr. Johnson's unique personal circumstances, along with the aberrant nature of his conduct, support a sentence far below the applicable guideline range.

Dated: September 17, 2024.

                                            Respectfully submitted,

                                            PAUL RUSSELL JOHNSON
                                            By Counsel,

                                            <u>/s/ Lauren E. S. Rosen</u>
                                            Lauren E. S. Rosen
                                            Todd M. Richman
                                            Assistant Federal Public Defenders
                                            Office of the Federal Public Defender
                                            1650 King Street, Suite 500
                                            Alexandria, Virginia 22314
                                            (703) 600-0800
                                            (703) 600-0880 (fax)
                                            Lauren_Rosen@fd.org
                                            Todd_Richman@fd.org