IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| v. | : | Case No. 21-CR-00537-JMC |
| | : | |
| JAMES TATE GRANT, | : | |
| PAUL RUSSELL JOHNSON and | : | |
| JASON BENJAMIN BLYTHE, | : | |
| | : | |
| Defendants. | : | |

**REPLY TO GRANT'S, JOHNSON'S AND BLYTHE'S SENTENCING MEMORANDA**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, files the following reply to specific legal arguments made by Defendants Grant, Johnson and Blythe in their Memoranda in Aid of Sentencing.

<u>Johnson</u>

Johnson argues that he should qualify for a departure under § 5K2.20 for aberrant behavior. ECF 413 at p. 12. That argument is undermined by *United States v. Dyce,* 91 F.3d 1462 (D.C. Cir. 1996). In *Dyce*, the Court held that such behavior "generally contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." *Id*. at 1470 (joining the Fifth and Seventh Circuits). Here, Johnson and his wife reserved a hotel room for two nights in downtown Washington, D.C. and then drove from their home in Southeastern Virginia to Washington, D.C. on January 5, 2021. On January 6, Johnson attended the Trump Rally and left before it was over to walk to the U.S. Capitol Grounds, wearing all black and armed with reinforced gloves with padded knuckles, a walkie talkie, a backpack and his megaphone. Ultimately, Johnson left the riot at the Capitol, spent the night at the hotel and drove home the next day. Johnson and his wife not only planned their stay in Washington, D.C., but he also must have planned childcare and coverage at his job. As such, Johnson's appearance on U.S. Capitol Grounds on January 6,

2021 was neither "spontaneous" nor "thoughtless." *See id.* (booking a train ticket two days in advance meant that the criminal act did not qualify for an aberrant behavior departure).

Johnson's behavior is even less worthy of an aberrant behavior finding than Dyce. Johnson had multiple opportunities to walk away from the riot and repeatedly chose not to do so. Johnson invoked George Washington and asked where the men were over his megaphone to fire up the crowd before any barrier was breached. Once he arrived at the second barrier, Johnson had the presence of mind to hand off his backpack before joining the fray. Other rioters paused when the barriers went down and Edwards crumpled to the ground; Johnson did not—he continued with the assault on Cruz. Once the second barrier was breached, Johnson paused to disassemble it and move it out of the way, and then tossed other bike racks over a wall to allow his fellow rioters unimpeded access to the West Plaza. He then resumed efforts to incite the crowd on the southwest lawn and urged them to flank police. None of this was spontaneous, and it certainly does not appear to have been thoughtless.

Johnson also argues that his family circumstances warrant "a significant variance." ECF 413 at p. 21. Again, *Dyce* contradicts this argument. 91 F.3d at 1466. As the D.C. Circuit recognized, Congress directed the Sentencing Commission *not* to consider a defendant's family ties and responsibilities when determining a sentence. *Id.* Courts have read that to mean that departures are only warranted if family circumstances are "extraordinary." *Id.* (citing *United States v. Canoy*, 38 F.3d 893, 906 (7th Cir. 1994)). Ultimately, the Court found that Dyce, a single mother with three minor children under the age of four, was not extraordinary. *Id.* at 1467-1468 (collecting cases where being a parent of multiple young children did not warrant a family circumstances variance). As the Fourth Circuit observed in *United States v. Brand*, 907 F.2d 31, 33 (4th Cir. 1990):

> [i]t is apparent that in many cases the other parent may be unable or unwilling to care for the children, and that the children will have to live with relatives, friends, or even in foster homes. . . . [Defendant's] situation, though unfortunate, is simply not out of the ordinary.

Although it is true that Johnson is requesting a variance and not a departure, no variance is warranted here, since any variance should be also be guided by the tenets set out in the Guidelines. *See, e.g., United States v. Serrata*, 425 F.3d 886, 912-913 (10 Cir. 2005) (finding abuse of discretion for applying significant downward variance for family circumstances where "the district court's discretion should be informed by a proper understanding of the Guidelines").

Johnson argues that this Court should apply U.S. Sentencing Guideline § 2A2.4, and not § 2A2.2. ECF 413 at p. 17-18. That assertion is not supported by very recent case law affirming application of § 2A2.2 in the January 6th context where defendants were found guilty of felony assault and civil disorder. *See United States v. Stevens*, 105 F.4th 473, 474–75, 480–81 (D.C. Cir. 2024) (finding that 18 U.S.C. § 231 is "another felony" for purposes of applying the cross-reference to § 2A2.2 and affirming application of the § 2A2.2 guideline to a rioter's assault where defendant acted "with intent to commit civil disorder under Section 231(a)(3)."); *United States v. Sargent*, 103 F.4th 820, 825 (D.C. Cir. 2024) ("[T]he text, structure, and context of the Guidelines reveal that the term 'aggravated assault' in the § 2A2.2 guideline text unambiguously encompasses Sargent's actions on January 6, 2021[,]" where Sargent was found guilty of felony assault and civil disorder).

Blythe

Blythe argues that the body armor enhancement should not apply to him, because the body armor was meant to defend himself from counter-protesters. ECF 411 at p. 9. In *United States v. Webster*, 102 F.4th 471, 489 (D.C. Cir. 2024), the D.C. Circuit ruled that the body armor enhancement included no *mens rea* requirement and emphasized that the enhancement's definition

3

of use "hinges on protection from violence, not the commission of a crime." Even though Webster maintained that he wore body armor for warmth and possible protection in the crowd, the Court held that "Webster used body armor while committing his assault. *See* U.S.S.G. § 3B1.5(2)(B). He put it on that morning, in part, for protection. He wore it throughout the day, including as he attacked Officer Rathbun. Given those facts, the district court correctly applied the enhancement." *Id*. at 489 (citing other circuits). The Court should apply the same logic here.

Grant

Grant argues that his guideline range has been wrongly calculated, because the PSR applies a 6-level enhancement pursuant to U.S.S.G. § 3A1.2(c)(1). ECF 414 at 9-10. The relevant guideline provisions state:

**§3A1.2. Official Victim**

(Apply the greatest):

(a) If (1) the victim was (A) a government officer or employee; (B) a former government officer or employee; or (C) a member of the immediate family of a person described in subdivision (A) or (B); and (2) the offense of conviction was motivated by such status, increase by **3** levels.

(b) If subsection (a)(1) and (2) apply, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by **6** levels.

(c) If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable—

(1) knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom; or

(2) knowing or having reasonable cause to believe that a person was a prison official, assaulted such official while the defendant (or a person for whose conduct the defendant is otherwise accountable) was in the custody or control of a prison or other correctional facility,

increase by **6** levels.

4

Grant does not appear to dispute that the 3-level enhancement under § 3A1.2(a) applies. Because § 2A2.2 is a Guideline from Chapter 2, Part A of the Guidelines apply, the full 6-level enhancement correctly applies to Grant under U.S.S.G. § 3A1.2(b). The Court need not even consider application of § 3A1.2(c) to find that the addition of 6 levels is proper.[1]

Because this Court need not rely on § 3A1.2(c) to apply the 6-level enhancement, and can instead rely on § 3A1.2(b), which does not require use of a weapon, Grant's double-counting argument, ECF 414 at 11, also fails.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By: /s/ Alexandra F. Foster
ALEXANDRA F. FOSTER, D.C. Bar No. 470096
KYLE R. MIRABELLI, N.Y. Bar No. 5663166
J. HUTTON MARSHALL, D.C. Bar No. 1721890
Detailees to the
Washington D.C. U.S. Attorney's Office
601 D Street N.W.
Washington, D.C. 20530
(619) 546-6735
Alexandra.Foster@usdoj.gov

---

[1] If this Court were to consider application of § 3A1.2(c), Grant objects that there was no finding of serious bodily injury in connection with his assault. This Court found, however, that Grant and his co-defendants "drove Officer D.C. back against the stairs." ECF 345 at 9. As a result of this assault, the bike racks hit the officer and drove him backward. ECF 345 at 26. The same officer testified "about the real fear that he would be trampled and pinned down by the bike racks because of the way that Defendants were using them." ECF 345 at 28. Thus, even if Officer D.C. did not sustain any injury, Grant's assault occurred "in a manner creating a substantial risk of serious bodily injury" for Officer Cruz. *See* Section 3A1.2(c). As such, the PSR did not err in applying this section, and this Court should reject Grant's argument.